**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
PRESTON CHARLES and CARLOS E. PABON,  :
on behalf of themselves and on behalf of all      :
similarly-situated individuals,          :
                                                                 :
                                    Plaintiffs,          :          Index No. 16-cv-06868 (KAM)(JO)
                                                                 :
                v.                                          :
                                                                 :
OPINION ACCESS CORP. and JIMMY R.      :
HOFFMAN, in his professional and personal     :
capacities,                                              :
                                                                 :
                                    Defendants.       :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**WIGDOR LLP**

Douglas H. Wigdor
Tanvir H. Rahman

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
dwigdor@wigdorlaw.com
trahman@wigdorlaw.com

*Attorneys for Plaintiffs and the Proposed*
*FLSA Collective and NYLL Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.      BACKGROUND ................................................................................................. 1

      A.     Allegations of the Complaint and Procedural History ........................... 1

II.     THE TERMS OF THE PROPOSED SETTLEMENT ....................................... 4

      A.     Settlement Consideration ....................................................................... 4

      B.     Attorneys' Fees and Litigation Costs .................................................... 4

      C.     Incentive Awards ................................................................................... 5

      D.     Timing of Settlement Payments ............................................................ 5

      E.     Settlement Allocation Formula .............................................................. 6

      F.     Settlement Claims Administrator and Notice to Class Members ........... 7

      G.     Eligible Employees ............................................................................... 8

      H.     Release of Claims ................................................................................. 8

III.    ARGUMENT ..................................................................................................... 8

      A.     Class Action Settlement is Appropriate ................................................ 8

            1.     Procedure for Class Action Settlement ...................................... 8

      B.     The Proposed Settlement Should Be Preliminarily Approved ............. 10

      C.     The Settlement in Fair, Reasonable and Adequate ............................... 11

            1.     Litigation Would Be Complex, Costly and Long (*Factor 1*) ................... 12

            2.     The Reaction to the Settlement (*Factor 2*) ................................ 13

            3.     Sufficient Discovery Has Occurred to Responsibly Settle (*Factor 3*) ....... 13

            4.     Plaintiffs Would Face Real Risks at Trial (*Factors 4 and 5*) ................... 15

            5.     Maintaining the Class Through Trial Would Not Be Simple (*Factor 6*) ... 16

6.      Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Factor 7*) ........................................................................................................17

7.      The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Factors 8 and 9*) ...............17

D.      Provisional Certification Of The Rule 23 Class Is Appropriate ...........................19

1.      Numerosity..................................................................................................20

2.      Commonality................................................................................................21

3.      Typicality ....................................................................................................21

4.      Adequacy of Plaintiffs ...............................................................................22

E.      Certification is Proper Under Rule 23(b)(3) ........................................................22

1.      Common Questions Predominate ...............................................................22

2.      A Class Action Is A Superior Mechanism .................................................23

IV.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ...........24

V.      THE PROPOSED NOTICE, CLAIM FORM AND AWARD DISTRIBUTION ARE FAIR .........................................................................................................................25

VI.     CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

Amchem Prods. Inc. v. Windsor,
521 U.S. 591 (1997)............................................................................................ 22

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
222 F.3d 52 (2d Cir. 2000)................................................................................ 22

Cagan v. Anchor Sav. Bank FSB,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)........................................ 18

City of Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974)............................................................................... 11

Clark v. Ecolab, Inc.,
Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2009 WL 6615729
(S.D.N.Y. Nov. 27, 2009) .............................................................................. 10, 11

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
502 F.3d 91 (2d Cir. 2007).............................................................................. 22, 23

Diaz v. E. Locating Serv. Inc.,
No. 10 Civ. 4082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ......................... 19

Frank v. Eastman Kodak Co.,
228 F.R.D. 174 (W.D.N.Y. 2005).............................................................. *passim*

Gen. Tel. Co. of SW v. Falcon,
457 U.S. 147 (1982)........................................................................................ 21

Green v. Wolf Corp.,
406 F.2d 291 (2d Cir. 1968)............................................................................... 23

In re Austrian & German Bank Holocaust Litig.,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................ 12, 13, 15, 17

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................... 11

In re Warfarin Sodium Antitrust Litig.,
391 F.3d 516 (3d Cir. 2004)............................................................................... 13

Johnson v. Brennan,
No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................... 19

Khait v. Whirlpool Corporation,
    No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................... 23

Marriott v. Cnty. of Montgomery,
    227 F.R.D. 159 (N.D.N.Y. 2005) ................................................................................... 23

McBean v. City of New York,
    228 F.R.D. 487 (S.D.N.Y. 2005) .................................................................................. 23

Novella v. Westchester County,
    443 F. Supp. 2d 540 (S.D.N.Y. 2006) ........................................................................... 20

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................ 18

Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,
    698 F.2d 150 (2d Cir. 1983) ......................................................................................... 21

Puglisi v. TD Bank, N.A.,
    No. 13 Civ. 637 (LDW)(GRB), 2015 WL 574280 (E.D.N.Y. Feb. 9, 2015) ................... 11

Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,
    237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................................... 20

Reyes v. Buddha-Bar NYC,
    No. 08 Civ. 02494 (DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ......................... 21

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993) ......................................................................................... 21

Torres v. Gristede's Corp.,
    No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ........................ 23

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
    396 F.3d 96 (2d Cir. 2005) ..................................................................................... 10, 11

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002) ............... 9, 11, 12

Named Plaintiffs Preston Charles and Carlos Pabon, and Opt-in Plaintiff Freddy Graciano (together, "Plaintiffs"), on behalf of themselves and a class of similarly-situated individuals that they seek to represent (the "Class" or "Class Members"), along with Defendants Opinion Access Corp. ("OAC" or the "Company") and Jimmy R. Hoffman (together, "Defendants," and with Plaintiffs, the "Parties"), jointly move for preliminary approval of the proposed Settlement Agreement and Release ("Settlement Agreement," attached as Ex. 1).[1]  The Parties respectfully request that the Court enter the attached proposed order (the "Proposed Order," attached as Ex. 2) preliminarily approving the proposed Settlement, certifying the proposed class and collective, appointing Wigdor LLP as Class Counsel,[2] appointing Dahl Administration, LLC ("Dahl") as settlement claims administrator, approving the proposed notice of settlement (the "Proposed Notice" or "Notice," attached as Ex. 3) and the proposed claim form (the "Claim Form," attached as Ex. 4), and approving the proposed settlement notice and payment distribution procedure.

## I.    BACKGROUND

### A.    Allegations of the Complaint and Procedural History

Plaintiffs are former Interviewers at OAC, a marketing research and quantitative data collection service formerly located in Long Island City, New York.  The Named Plaintiffs filed this action on December 13, 2016, alleging that OAC violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") with respect to all Interviewers.  Ex. 5 (the Complaint).  Plaintiffs allege that Defendants failed to pay Plaintiffs and the class of OAC Interviewers they sought to represent (referred to herein as the "NYLL Class"):  (i) minimum wages for all hours worked; (ii) overtime wages for hours worked in excess of 40 hours per

---

[1]    All exhibits and paragraphs are referred to herein as "Ex. __" and "¶ __," respectively, and attached to the Declaration of Tanvir H. Rahman in Support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement ("Rahman Decl.").

[2]    Capitalized terms not defined herein are defined as set forth in the Agreement.

week; (iii) straight-time wages for all hours worked; and (iv) "call-in" pay.  Plaintiffs also allege that Defendants failed to provide Plaintiffs and the NYLL Class accurate wage statements.  Id. at ¶¶ 12-61.

Plaintiffs allege that they and all other Interviewers, as well as Trainees, *i.e.* those individuals who participated in OAC's Interviewer training program but never worked at least one day as an Interviewer for OAC, were not paid any wages, including minimum wages, during their mandatory training period.  Id. at ¶ 14, 17.  Plaintiffs also allege that OAC, which compensated Interviewers based on the amount of hours they were logged into OAC's computer terminals, failed to pay them and the NYLL Class for all hours worked by failing to account for time spent, *inter alia*, waiting to be seated at computer terminals after arriving to work, and waiting to log back into their computers if their computers needed to be restarted.  Plaintiffs also allege that OAC would dock Interviewers time for "breaks" that were never actually taken.  Id. at ¶¶ 18-22.  Furthermore, Plaintiffs also alleged that they and the NYLL Class would routinely be sent home after reporting to work, but would not be paid any "call-in" pay or other wages.  Id. at ¶¶ 25-27.  Plaintiffs also allege that Defendants failed to account for certain non-discretionary, production-based bonuses into their and the NYLL Class's regular rate of pay when determining overtime wages, resulting in a shortfall in overtime wages.  Id. at ¶¶ 23-24.  Accordingly, as a result of these violations, Plaintiffs allege that they and the NYLL Class were also not provided with accurate wage statements.  Id. at ¶ 28.

Shortly after the suit was commenced, Plaintiffs requested permission to file a motion for conditional certification of an FLSA collective.  See Dkt. No. 11.  At a February 2017 court conference, the Court (J. Orenstein) determined that there was no need for motion practice and ordered that notice be disseminated to putative collective members, absent a settlement.  ¶ 8;

Dkt. No. 15.  Within days, the Parties agreed to engage in private mediation in an attempt to resolve the claims at issue on a class-wide basis.  ¶ 9.[3]  The Parties agreed to engage in a robust, but focused, pre-mediation discovery process, so that both Parties would come to any mediation with a full appreciation for and sense of the strengths and weaknesses of the claims and potential damages.  ¶ 10.  The Parties also agreed to utilize noted labor and employment law mediator Hunter Hughes, Esq.  ¶ 11.

On or about February 22, 2017, Plaintiffs requested certain targeted information and documents, which Plaintiffs believed would assist with and be productive in the resolution efforts.  ¶ 12.  Likewise, on or about March 3, 2017, Defendants issued targeted, pre-mediation discovery requests on Plaintiffs.  Id.  Ultimately, the Parties exchanged, *inter alia*, the following documents and information:

- Relevant employment policies, handbooks, internal memoranda and training manuals;
- Plaintiffs' payroll and time records;
- A statistically significant sampling of payroll and time records for putative class members;
- Lists of new Interviewer hires and Trainees over the Class Period;
- Documents sufficient to identify the number of Interviewers who have worked at OAC each day over the Class Period; and
- The New York Department of Labor's ("NYSDOL") file in connection with two prior actions against OAC for alleged unpaid wages to Interviewers, both of which resulted in settlements.

¶ 14.  Defendants also provided Plaintiffs with a summary of what they believed was their damages exposure, based on an analysis of a statistically significant sampling of data.  ¶ 15.[4]

---

[3]     In furtherance of mediation efforts, the Parties agreed to toll the statute of limitations on the FLSA claims of putative collective members pending the outcome of mediation, and entered into a tolling agreement so-ordered by the Court.  Dkt. No. 16.

[4]     The Parties initially scheduled the mediation to take place on August 2, 2017.  However, by early July 2017, it became apparent that, due to the relatively old data systems maintained by OAC, Defendants would be unable to produce all of the requisite documentation in time for the Parties to substantively review in advance of the scheduled August 2, 2017 mediation date, and thus engage in meaningful settlement conversations at mediation.  Consequently, the Parties ultimately agreed to adjourn the August 2, 2017 mediation to December 12, 2017.  ¶ 13.

Based on a thorough review of the documents and information exchanged between the Parties, and with the input of Plaintiffs at each step of the process, Class Counsel prepared a comprehensive pre-mediation brief, which contained detailed damages calculations, charts and legal analysis.  ¶¶ 16, 22.  Ultimately, the Parties attended a full-day mediation with Mr. Hughes on December 12, 2017 and were able to agree in principle upon the framework of a class-wide resolution, consequently executing a term sheet to that effect.  ¶ 23; Ex. 6.  A Settlement Agreement reflecting those terms has now been executed by all Parties.  Ex. 1.

## II.   THE TERMS OF THE PROPOSED SETTLEMENT

### A.   Settlement Consideration

Defendants have agreed to pay $1,500,000.00 (the "Gross Settlement Fund" or "Maximum Settlement Amount") to resolve this action on a class basis.  Ex. 1 at § 1.17, 1.21. The Gross Settlement Fund is the maximum amount that Defendants shall be required to pay into the Qualified Settlement Fund, from which:  (i) all Class Members who file Claim Forms receive their allocated share; (ii) Plaintiffs will receive any incentive awards ("Incentive Award"); (iii) Class Counsel will be compensated and reimbursed for expenses; (iv) the costs of administering the Settlement will be paid; and (v) employer withholdings for FICA Medicare, and all other applicable payroll taxes will be paid.  Id. at § 1.21.

### B.   Attorneys' Fees and Litigation Costs

Class Counsel will apply for an attorneys' fees award plus reimbursement of litigation costs of no more than one-third (33 1/3%) of the Gross Settlement Fund.  Id. at § 6.4(A).  The Court need not decide the attorneys' fees and costs issue now, as such determination is properly made after Class Members have the opportunity to consider the contents of the Settlement Agreement.  Fed. R. Civ. P. 23(h); 54(d)(2).

### C.     Incentive Awards

Plaintiffs are seeking Incentive Awards in recognition of the services they rendered to the Class, which include, *inter alia*:  (i) coming forth and engaging Class Counsel to pursue their claims and the claims of other Class Members; (ii) providing documents and information to Class Counsel; (iii) assisting in the preparation of pleadings; (iv) searching for relevant documents; (v) meeting and communicating with Class Counsel at all phases during the litigation process; (vi) meeting and preparing for mediation; (vii) communicating with other putative class members about their potential claims against OAC; (viii) attending and actively participating in the all-day mediation on December 12, 2017; (ix) undertaking the risk of retaliation by holding their names out in the caption of a publicly-filed Complaint; (x) undertaking the risk of retaliation or other detrimental effects by coming forward in an action against a current or former employer; and (xi) undertaking the risk of being responsible for litigation costs and expenses in the event a favorable litigation outcome did not result.  ¶ 28.  Named Plaintiffs Charles and Pabon seek modest Incentive Awards in the amount of $15,000 each, and Opt-In Plaintiff Graciano seeks an Incentive Award in the amount of $5,000.  Ex. 1 at § 1.19, 6.3(A).  The Court need not approve the Incentive Award requests until after all Class Members have had the opportunity to fully consider the Settlement Agreement.

### D.     Timing of Settlement Payments

Payment of the Settlement shall be made by Defendants in three installments. Defendants shall make payment of the first installment to the Claims Administrator, who will be responsible for distributing settlement payment to Class Members who submit Claim Forms (*i.e.* "Authorized Claimants"), pursuant to the agreed upon allocation formula: within 14 days after the Final Effective Date (defined below):

- This first installment payment will be made within 14 days after the Final Effective Date (defined below), and will consist of an aggregate payment equivalent to: (a) 25% of the total amount owed to Class Counsel as payment of judicially approved fees and costs; (b) 25% of the total amount owed to the Claims Administrator as claims administration fees and costs; and (c) 25% of the total amount owed to Authorized Claimants, which would include 25% of any judicially approved Incentive Awards to Plaintiffs. Defendants will also make an additional payment of $12,500 that will be set aside from errors and omissions. Ex. 1 at § 6.1(B)(1).

- The second installment payment will be made on or before February 1, 2019, and will consist of an aggregate payment equivalent to: (a) 25% of the total amount owed to Class Counsel as payment of judicially approved fees and costs; (b) 25% of the total amount owed to the Claims Administrator as claims administration costs; and (c) 25% of the total amount owed to Authorized Claimants, including 25% of any judicially approved Incentive Awards to Plaintiffs. Defendants will also make an additional $12,500 payment that will be set aside for errors and omissions. Ex. 1 at § 6.1(B)(2).

- The third and final installment shall be made by November 1, 2019, and will consist of an aggregate payment equivalent to the remainder of the total amount owed to: (a) Class Counsel as payment of judicially approved legal fees and costs; (b) the Claims Administrator as claims administration costs; and (c) Authorized Claimants, including any remaining judicially approved Incentive Awards to Plaintiffs. The remainder of the errors and omissions fund will be credited against and paid out as part of the proceeds to the Authorized Claimants. Ex. 1 at § 6.1(B)(3). The Claims Administrator will distribute each of these payments within 14 days after each installment is paid into the Qualified Settlement Fund. Id. at § 6.1(C). Authorized Claimants will have 120 days to redeem their respective settlement checks. Any amounts remaining from unredeemed settlement checks shall be returned to Defendants. Id.

### E.     Settlement Allocation Formula

The portion of the Settlement Fund payable to the Class Members will be divided among

the Class Members according to the following allocation:

1.      All Interviewer Class Members shall each receive 1 point for each day worked during the Settlement Period.

2.      All Trainee Class Members, *i.e.* Class Members who did not work at least one day as an Interviewer during the Settlement Period, shall each receive 20 points.

3.      The Gross Settlement Fund, minus Class Counsel's requested attorneys' fees and litigation costs of $500,000), minus Settlement Claims

Administrator's costs, and minus any judicially-approved Incentive Awards, will be divided by the aggregate number of points accrued by all Class Members (the result of which shall be referred to as the Per Point Value).

4.      Each Class Member's total points will be multiplied by the Per Point Value, inclusive of the employer withholding for FICA, Medicare and all other applicable payroll taxes, and inclusive of judicially-approved Incentive Awards, if any, to determine his or her initial allocated Individual Gross Amount

5.      Plaintiffs' Individual Gross Amounts shall be the sum of their proportionate share of the Gross Settlement Fund per the above formula.

6.      If the aggregate amount of all Authorized Claimants' Individual Gross Amounts does not exceed the Guaranteed Payout, then the Individual Gross Amounts will be upwardly adjusted on a *pro rata* basis such that Guaranteed Payout amount is reached when all Authorized Claimants' Individual Gross Amounts are added together.  If the Court does not approve the fees and costs sought by Class Counsel, then such unapproved amounts shall be redistributed to Authorized Claimants on a *pro rata* basis.

Ex. 1 at § 6.2(B).

**F.      Settlement Claims Administrator and Notice to Class Members**

The Parties have jointly selected Dahl to serve as Claims Administrator to administer the Qualified Settlement Fund.  Ex. 1 at § 3.2(A); ¶ 29.  Within 25 days of the Court's entry of the Order preliminarily approving the Settlement, the Claims Administrator will mail and email the Notice and Claim Form to all putative Class Members, informing them about the terms of the Agreement and advising them of the opportunity to participate in the Settlement, to object to the Settlement or to opt-out of the Settlement within 75 days.  Id. at §§ 3.1(B); 3.3(A, B); 3.4(A); 3.5(A).  The Claims Administrator will take all reasonable steps to obtain the correct mailing address of any Class Member for whom the Notice is returned as undeliverable, including, but not limited to, one skip trace, and attempt a re-mailing to any putative Class Member for whom it obtains a more recent address within two days.  Id. at § 3.3(D, E).  The Claims Administrator will notify counsel of any Notice sent to a putative Class Member that is returned as

undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s).  Id.

### G.  Eligible Employees

All individuals who in New York:  (i) worked for OAC in the position of "Interviewer" for at least one day during the Settlement Period; and (ii) any individual who participated in OAC's training program for "Interviewers" but who did not work as an Interviewer for at least one day as an Interviewer from December 13, 2010 through December 31, 2017 (the "Settlement Period"), and who do not submit a valid Opt-Out Statement, are eligible to participate in the Settlement. Ex. 1 at §§ 1.5; 1.35.

### H.  Release of Claims

The Agreement contemplates the following with regard to releases:

- Each Class Member who does not timely opt-out of the Settlement will release all New York State and local wage-and-hour claims, as described more specifically in the Agreement.  Ex. 1 at §§ 1.30; 7(A);

- Class Members who submit a Claim Form (and become an "Authorized Claimant") will release all New York State and local wage-and-hour claims, and claims under the FLSA, irrespective of whether they ultimately cash or redeem a settlement payment.  Id.;

- Class Members who opt-out of the Settlement will not be subject to a release.  Id. at § 7(A);  and

- Plaintiffs, by virtue of receiving Incentive Awards, will be subject to general release of all claims.  Id. at. §§ 7(B)(C).

## III.  ARGUMENT

### A.  Class Action Settlement Is Appropriate

#### 1.  Procedure for Class Action Settlement

The well-defined class action settlement procedure includes three distinct steps:

1.      Preliminary approval of a proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2.      Dissemination of notice of settlement to all affected class members; and

3.      A fairness hearing where class members may be heard, and where arguments concerning the fairness, adequacy and reasonableness of the settlement may be presented.

See Fed. R. Civ. P. 23(e); see also Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), §§ 11.22, et seq. (4th ed. 2002).  This process safeguards Class Members' procedural due process rights, and enables the Court to fulfill its role as the guardian of class interests.  Through this motion, the parties jointly request that the Court take the first step and approve the following schedule for final resolution of this matter:

1.      No later than ten (10) days of the Preliminary Approval Order being signed by the Court, Defendants will provide the Claims Administrator with a class member list including contact information, the number of days each Class Member worked for OAC as an Interviewer, and whether the Class Member was merely a Trainee and never worked as an Interviewer. Ex. 1 at §§ 1.7; 3.3(A).

2.      Within twenty-five (25) days of preliminary approval, the Claims Administrator will mail and email the Proposed Notice and Claim Form to all Class Members. Id. at §§ 3.3(B), (C).

3.      Class Members will have seventy-five (75) days after the date the Notice is mailed to participate in the Settlement, to object to the Settlement or to opt-out of the Settlement ("the Bar Date"). Id. at § 3.1(B).

4.      A fairness hearing will be held as soon as is convenient for the Court after the Bar Date, but no sooner than 150 days following entry of the Preliminary Approval Order. Id. at § 3.1(B).  No later than fifteen (15) days after the Bar Date, the Claims Administrator shall provide to Class Counsel and Defendants' Counsel:  (a) a list of all Authorized Claimants, (b) a list of all Objectors; and (c) a list of all Class Members who timely submitted an Opt-Out Statement. Id. at § 4.1.  Class Counsel will file a motion for final approval prior to the hearing. Id. at § 4.2.

5.      If the Court grants final approval of the Settlement, a final order and judgment of dismissal with prejudice will be issued ("Final Order"). Id. at

§ 1.14.  If no party seeks reconsideration of or appeals the Final Order, the "Final Effective Date" will be thirty (30) calendar days after the Final Order is entered.  Id. at § 1.15.  Otherwise, the Final Effective Date will be the day after all appeals are finally resolved in favor of final approval.  Id.

6.      Within fourteen (14) days of the Final Effective Date, Defendants will deposit the first installment of the settlement into the Gross Settlement Account established and administered by the Claims Administrator.  Id. at § 6.1(B)(1).  Defendants will deposit the second installment on or before February 1, 2019, and the third installment on or before November 1, 2019.  Id. at §§ 6.1(B)(2), 6.3(B)(3).

7.      Within fourteen (14) days of the payment of each installment payment, the Claims Administrator will send Settlement Checks comprising the Class Members' Individual Settlement Amounts (including Incentive Awards) and Class Counsel's fees and costs.  Id. at § 6.1(C).

**B.      The Proposed Settlement Should Be Preliminarily Approved**

The law favors compromise and settlement of class action suits.  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context").  The approval of a proposed class action settlement is a matter of discretion and "[i]n exercising this discretion, courts should give proper deference to the private consensual decision of the parties."  Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).  Further, "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ."  Id.  This unique ability is particularly true where, as here, the Parties have engaged in focused discovery, extensive negotiations and the mediation process with a highly experienced employment law mediator, which allowed them to thoroughly assess the challenges associated with, *inter alia*, the viability of the claims as well as the certification of the class and/or decertification of any certified class.

10

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Clark, 2009 WL 6615729, at *3 (citing Newberg § 11.25). To grant preliminary approval, the Court need only find that there is "probable cause to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." Puglisi v. TD Bank, N.A., No. 13 Civ. 637 (LDW)(GRB), 2015 WL 574280, at *1 (E.D.N.Y. Feb. 9, 2015).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116. If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### C.    The Settlement Is Fair, Reasonable and Adequate

In evaluating class action settlements, courts generally consider the factors from City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).[5] Although preliminary approval is merely an "initial evaluation" to determine whether the settlement falls within "the range of

---

[5]    The Grinnell factors are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.  See Grinnell, 495 F.2d at 463.

reasonableness," <u>Newberg</u> §§ 11.25, 11.26, it is useful for the Court to consider these criteria.
Here, the <u>Grinnell</u> factors weigh heavily in favor of preliminary approval.

1.      **Litigation Would Be Complex, Costly and Long (*Factor 1*)**

By reaching a settlement before protracted litigation, the Parties avoid significant expense
and delay, and ensure recovery for Class Members.  "Most class actions are inherently complex
and settlement avoids the costs, delays and multitude of other problems associated with them."
<u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

This case is no exception, involving approximately 7,000 Class Members with claims
under both federal and state laws, and a relevant time period spanning nearly seven years.  ¶ 36.
Indeed, since this litigation was commenced, the Parties have engaged in the production, review
and analysis of thousands of pages of relevant documents and detailed spreadsheets (including
time records, payroll records, employment policies, training lists and hiring lists), allowing the
Parties to appreciate the strengths and weaknesses of this case and responsibly engage in
settlement discussions.  ¶ 25.  This was an extremely time- and resource-consuming process.
Continued discovery would be even more costly and time-consuming, and include the review
and exchange of thousands of pages of more documents, including depositions of Defendants'
managerial-level employees/former employees, Plaintiffs and opt-in plaintiffs/class members,
and almost certainly multiple motions to compel and/or for protective orders.  ¶ 26.

Absent settlement, following full discovery, Plaintiffs would move for class certification
(which Defendants would contest), and it is likely that both Parties would move for full or partial
summary judgment.  ¶ 41.  A trial in this action would be lengthy and complex, consuming the
time and resources of all Parties and the Court.  ¶ 43.  Even after a verdict, any judgment is likely
to be appealed.  ¶ 45.  Settlement, however, makes relief available to Class Members in a

12

prompt, efficient and risk-free manner.  ¶ 47.  For these reasons, the first <u>Grinnell</u> factor weighs in favor of preliminary approval.

2.  <b>The Reaction to the Settlement (<i>Factor 2</i>)</b>

Because notice of the Settlement has not been issued formally to Class Members, this factor can be analyzed fully after the Opt-Out Period has expired and Class Members have had the opportunity to opt-out of or object to the Settlement.

3.  <b>Sufficient Discovery Has Occurred to Responsibly Settle (<i>Factor 3</i>)</b>

As detailed above, the Parties have conducted significant targeted discovery, which is more than sufficient to resolve the action responsibly.  The proper question to ask at this stage is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  <u>In re Austrian</u>, 80 F. Supp. 2d at 176.

Here, as detailed above, the targeted discovery that was exchanged meets and, in fact, exceeds this standard.  Class Counsel conducted extensive damages analyses, which involved multiple spreadsheets incorporating numerous factors.  ¶ 16.

To assess the potential value of Plaintiffs' claim arising from Defendants' failure to pay wages for training, Class Counsel reviewed documents reflecting the total number of Interviewers who completed training, and relevant policies and notices concerning Defendants' training process in order to determine the total amount of minimum wages Defendants owed for the time Interviewers and Trainees spent training to become Interviewers.  Based on this review, Class Counsel estimated, at most, the total amount of minimum wage damages from this claim to

13

be approximately **$660,000.00**.  ¶ 18.  To assess the potential value of Plaintiffs' "off-the-clock"

work claim, Class Counsel reviewed documents and data concerning the number of shifts

worked by Interviewers during the Class Period, as well as a representative sampling of payroll

and time records.  Based on this review, Class Counsel estimated, at most, the total amount of

wages owed from this claim to be approximately **$640,000**.  ¶ 19.

      To assess the potential value of Plaintiff's "call-in pay" violation claim, Class Counsel

conducted extensive interviews with Plaintiffs, putative Class Members, and other OAC staff,

reviewed, *inter alia*, documents concerning Defendants' work reporting policies and practices, as

well as the New York Department of Labor's files on OAC, particularly with respect to prior

settlements.  Based on this review, Class Counsel estimated, at most, the total amount of wage

owed for "call-in" pay violations to be approximately **$700,000**.  ¶ 20.

      Lastly, to assess the potential value of Plaintiffs' failure to provide accurate wage

statements claim, Class Counsel reviewed documents concerning the number of Interviewers

hired by OAC over the Class Period, a representative and statistically significant sampling and

wage notices, as well as pay stub and time records.  Based on this review, Class Counsel

estimated that Defendants *could* be subject to as much as **$15 million** in penalties for failing to

provide accurate wage notices should Plaintiffs prevail on this claim entirely.  ¶ 21.[6]

      Based on the above, the Parties entered into settlement negotiations with a strong sense of

and appreciation for Class Members' claims, the risks and exposure Defendants faced, and the

various obstacles to proving the claims and obtaining a favorable judgment.  ¶ 24.  Although

additional information could be obtained in discovery, it is unlikely that further discovery would

---

[6]     For purposes of settlement, Plaintiffs did not include the damages stemming from OAC's alleged failure to pay overtime due to failing to account for non-discretionary bonuses when determining the proper overtime rate of pay because, based on Plaintiffs' review of the representative sampling of payroll and time records, it appeared that it was somewhat rare for Interviewers to work more than 40 hours in a week, inhibiting the scope of damages.

have markedly changed the Parties' analyses. ¶ 27; see Frank, 228 F.R.D. at 185 (approving settlement of case "in relatively *early* stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive") (emphasis added). Against this backdrop, this factor favors preliminary approval.

        4.      **Plaintiffs Would Face Real Risks at Trial  (*Factors 4 and 5*)**

Plaintiffs and Class Counsel believe that the case is strong, but recognize the risks inherent in a trial. ¶ 42. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." In re Austrian, 80 F. Supp. 2d at 177 (internal quotation marks omitted). A trial on the merits would involve significant risks as to liability and damages. ¶ 33. Plaintiffs would have to overcome Defendants' defenses, both as to liability and damages, including, *inter alia*: (i) that OAC's Interviewer training program qualified as a non-compensable "educational or vocational training program," particularly because those who underwent training were not guaranteed jobs and were told that they would not be entitled to wages during their time spent training; (ii) that, even if the training program did not  qualify as a non-compensable training program, any damages would be offset by the $100-$150 sign-on bonus paid to Interviewers upon completion of training; (iii) that any "off-the-clock" or uncompensated work was *de minimis*, and even if it was not *de minimis*, would be unique to each individual Interviewer, and thus not worthy of class treatment; (iv) that Defendants did not violate the "call-in" pay provisions of the NYLL (for which there is scant case law and guidance from the NYSDOL to begin with) because they were within their right to send home any Interviewers who showed up to work late, particularly because this was a *bona fide*  policy that OAC included in its employee

15

handbook and other documentation issued to Interviewers; (v) that to the extent there is any "call-in" pay violation liability, such amount should be offset against any amounts paid by OAC in connection with prior NYSDOL settlements for substantially similar "call-in" claims; (vi) Plaintiffs would not be entitled to "double dip" by collecting both penalties resulting from purportedly receiving inaccurate wage statements, as well as damages from purported wage violations tied to the particular wage statement-related inaccuracies; and (vii) Plaintiffs' inaccurate wage statement claim (for which, again, there is scant case law and guidance on how such claim and its penalties should be interpreted and enforced) would not be worthy of class treatment since it would require individualized inquiries into whether inaccuracies existed in each relevant wage statement.  ¶ 34.

While Plaintiffs believe that they would ultimately establish Defendants' liability, both on an individual and class-wide basis, obtaining this result would require significant factual and legal development, and Defendants would almost certainly contest the treatment of Plaintiffs' claims as a class action because they were too individualized to certify a class.  ¶ 35.  There is also a large risk inherent in asking the jury to analyze thousands of pages of information, including, *inter alia*, payroll records, time records and other documents that have already been produced or would eventually be produced in discovery, in order to calculate potential damages. ¶ 44.  Class Counsel is experienced and realistic, and understands that the outcome at trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  ¶ 46. The proposed Settlement alleviates these uncertainties.

5. **Maintaining the Class Through Trial Would Not Be Simple (*Factor 6*)**

The risk of obtaining NYLL Rule 23 class certification and maintaining it through trial is present.  Plaintiffs would need to maintain certification of the FLSA claims and obtain

certification of the NYLL claims.  ¶ 37.  Such determinations would likely be reached after

extensive and costly discovery and motion practice.  ¶ 38.  Further, in opposing class

certification, Defendants would argue that differences and types of claims among Class Members

preclude certification.  ¶ 39.  Plaintiffs also face challenges in meeting the more stringent

requirements for Rule 23(b)(3) certification.  ¶ 40.  Settlement eliminates the risk, expense and

delay that permeate the class certification process.

### 6. Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Factor 7*)

It is uncertain whether Defendants will be able to withstand a larger judgment, as OAC

has closed down its New York operations as of December 31, 2017.  ¶ 52.  In any event, a

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."  Frank, 228 F.R.D. at 186 (quoting In re Austrian, 80 F. Supp. 2d at 178

n.9).  Here, the Settlement requires Defendants to make a substantial settlement payment, agreed

to following arm's length negotiations, following the Court's final approval.  Ex. 1 at § 6.1; ¶ 30.

Accordingly, this factor also favors preliminary approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Factors 8 and 9*)

Defendants have agreed to settle this case for $1,500,000, inclusive of Class Counsel's

attorneys' fees and costs and claims administration costs.  Ex. 1 at § 1.17.  The Settlement

amount represents a very good and fair value to Class Members, given the attendant risks of

litigation, even though recovery could potentially be greater if Plaintiffs attained class

certification, succeeded on all claims at trial and survived an appeal.  ¶ 31.  The determination of

whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation

yielding a particularized sum.'"  Frank, 228 F.R.D. at 186 (citation omitted).  "Instead, 'there is a

range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" Id. (citation omitted).  "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982); see also Cagan v. Anchor Sav. Bank FSB, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million").

Based on Class Counsel's pre-mediation damages analysis as discussed above, with respect to Plaintiffs' minimum wage, "off-the-clock" and call-in pay violation claims, at best, their recovery would be approximately $2 million.  Class Counsel also calculated that, as to Plaintiffs' failure to provide accurate wage statement claim, the maximum recovery would be $15 million class wide.  However, this calculation does not fully take into account the strengths/weakness of all of the claims as set forth more fully herein, or the likelihood of success.  Moreover, while these amounts exclude liquidated damages, which would, of course, increase damages, Defendants arguably had a number of very viable defenses to each claim, both as to liability, as well as the potential scope of damages.  See supra at § III(C)(3), III(C)(4); ¶ 34.

Of course, assessing the possible recovery in light of the attendant risks of litigation is, by its nature, an inexact mathematical endeavor that necessitates many reasoned assumptions.  While analysis can be done using "best case scenario" assumptions, "worst case scenario" assumptions or any assumptions of risk in between, the conclusion is always somewhat speculative and imprecise.  Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding with litigation, the Settlement amount is

reasonable and represents a very good and fair value to Class Members, warranting preliminary

approval.  ¶ 55.  The total Settlement amount is $1,500,000.  Even when this amount is reduced

by attorneys' fees and expenses, Plaintiffs' requested Incentive Awards and claims

administration costs, the remainder will still be substantial and represents a significant

percentage of the reasonable potential total class-wide recovery calculated by Class Counsel.  ¶

51.  Plaintiffs have been advised of the potential upside of proceeding on the merits, but believe

that the Settlement is in the best interests of the Class Members they represent.  ¶ 53.  Further,

experienced labor and employment mediator Hunter R. Hughes presided over the mediation and

helped bring the Parties to a resolution.  ¶¶ 11, 23.  See Johnson v. Brennan, No. 10 Civ. 4712

(CM), 2011 WL 4357376, at *7-8, 15 (S.D.N.Y. Sept. 16, 2011) (approving FLSA settlement

and noting that the Parties hired a private mediator with experience in wage and hour law); Diaz

v. E. Locating Serv. Inc., No. 10 Civ. 4082 (JCF), 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29,

2010) (approving settlement where parties attended a full-day mediation session with an

experienced class action mediator).

     For these reasons, this factor weights in favor of preliminary approval.

     **D.**     **Provisional Certification Of The Rule 23 Class Is Appropriate**

     For settlement purposes, Plaintiffs seek to certify the following Proposed Class under

Rule 23(e):

> All individuals who in New York (i) worked for OAC in the
> position of "Interviewer" for at least one day during the Settlement
> Period; and (ii) any individual who participated in OAC's training
> program for "Interviewers" but who did not work as an Interviewer
> for at least one day as an Interviewer [from December 13, 2010
> through December 31, 2017].

Ex. 1 at § 1.5.  As discussed below, this Proposed Class meets the requirements for class certification for settlement purposes, and Defendants consent to provisional certification for settlement purposes only.

Provisional class certification and appointment of Class Counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification to all Class Members of the terms of the proposed Agreement and setting a date and time of the final approval hearing.  A class action may be maintained if all of Rule 23(a)'s prongs are met, plus one of Rule 23(b).  Rule 23(a) permits a class action if:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Id. at (b)(3).  "In the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'"  Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted).  The Rule 23 requirements are satisfied.

## 1.  **Numerosity**

There are approximately 7,000 putative Class Members, which is more than sufficient for numerosity.  See, e.g., Novella v. Westchester County, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) (finding a class of 24 to be sufficient).

2.      **Commonality**

The commonality requirement tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147, 157 n.13 (1982). Claims need not be identical, but must share common questions of fact or law.  See Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J., 698 F.2d 150, 153-54 (2d Cir. 1983).

The claims of Plaintiffs and Class Members have common issues, including:  (i) whether Defendants failed to pay them minimum wages during their training; (ii) whether Defendants failed to pay them for all hours worked; (iii) whether Defendants failed to pay them "call-in" pay; and (iv) whether Defendants failed to provide them with accurate wage statements.

3.      **Typicality**

Rule 23 requires that the claims of the representatives be typical of the claims of the class, but "does not require the representative party's claims to be identical to those of all class members."  Frank, 228 F.R.D. at 182.  "Minor variations . . . underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Class Members' claims because Defendants:  (i) applied the same wage practices, policies and structures to all Class Members; (ii) assigned similar job duties to the Class Members; and (iii) did not pay the Class Members all of their wages.  See, e.g., Reyes v. Buddha-Bar NYC, No. 08 Civ. 02494 (DF), 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009) (typicality satisfied where plaintiffs' and class members' claims arose from same factual and legal circumstances, including whether defendants misappropriated mandatory service charges paid by event customers).

4.      **Adequacy of Plaintiffs**

Rule 23(a)(4) requires that "representative parties [] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   To determine adequacy, courts inquire whether: "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  Here, there has been no assertion that Plaintiffs have interests that are antagonistic with those of Class Members.  ¶ 54.  Rather, Plaintiffs have shown their commitment to the Class by, *inter alia*:  (i) participating in the prosecution of this case, including reviewing and approving pleadings; (ii) searching for relevant documents; (iii) answering questions pertaining to the claims and defenses; (iv) meeting and communicating with Class Counsel at all stages; (v) preparing for, attending and actively participating in a mediation; (vi) undertaking the risk of retaliation; and (vii) undertaking the risk of being liable for expenses in the event of an unfavorable outcome.  Id.

E.      **Certification Is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact be present and "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997).

1.      **Common Questions Predominate**

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 173 (N.D.N.Y. 2005). Where claims are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. McBean v. City of New York, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs assert – and Defendants agree for settlement purposes only – that core factual allegations and legal theories predominate over any factual or legal variations among Class Members. See, e.g., Torres v. Gristede's Corp., No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (predominance satisfied where plaintiffs "introduced sufficient proof that Defendants engaged in common practice to deny employees overtime pay").

### 2.     A Class Action Is a Superior Mechanism

Rule 23(b)(3) analysis also calls for examination of whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) provides non-exclusive factors pertinent to judicial inquiry into the superiority of a class action, including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) whether individual class members wish to bring individual actions; and (3) the desirability of concentrating litigation of claims in a particular forum. See Fed. R. Civ. P 23(b)(3).

Class adjudication is superior to individual adjudication because it will conserve judicial resources and be more efficient for Class Members, particularly those who lack the resources to bring their claims individually. See Khait v. Whirlpool Corporation, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010). Here, Plaintiffs and putative Class Members do not have substantial financial resources to prosecute individual actions. ¶ 48. Class Counsel

is also unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  ¶ 49.  Concentrating the litigation in this Court is desirable because Defendants conducted their business within the jurisdiction of this Court, and many putative Class Members reside in this jurisdiction.  ¶ 50.  The class action device will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments if certification were denied.  Id.

## IV.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g) sets forth four criteria the Court should consider in evaluating the adequacy of proposed counsel:  (i) "the work counsel has done in identifying or investigating potential claims in the action;" (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (iii) "counsel's knowledge of the applicable law;" and (iv) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class.  See Fed. R. Civ. P. 23(g)(1)(B).

Wigdor LLP has met these criteria.  Wigdor LLP has done substantial work identifying, investigating and prosecuting Plaintiffs' claims.  Wigdor LLP has substantial experience prosecuting and resolving employment class actions, including wage-and-hour class actions, is well-versed in the substantive law at issue and is well-qualified to represent the interests of the class.  ¶¶ 56-57.  Class Counsel has been approved as class counsel in similar wage-and-hour actions by courts within this Circuit.  See, e.g., Cordero, et al. v. New York Institute of Technology, No. 12 Civ. 3208 (GRB), Dkt. Nos. 60, 72 (E.D.N.Y. Mar. 17, 2016); Alom, et al. v. 13th Street Entertainment LLC, et al., No. 14 Civ. 8707 (SN), Dkt. Nos. 71, 80 (S.D.N.Y. Feb. 2, 2016); Raniere, et al. v. Citigroup Inc., et al., No. 11 Civ. 2448 (RWS), Dkt. Nos. 163, 174 (S.D.N.Y. Sep. 29, 2015); Munir, et al. v. Sunny's Limousine Service, Inc., et al., No. 13 Civ.

01581 (VSB), Dkt. Nos. 145, 155 (S.D.N.Y. Jan. 8, 2015); Adler, et al. v. 20/20 Companies, et

al., No. 09 Civ. 439 (LDW)(ARL), Dkt. Nos. 62, 65 (E.D.N.Y. Sept. 7, 2012).  Finally, as will be

more evident when Plaintiffs file their motion seeking the Court's approval of their requested

attorneys' fees and costs, Wigdor LLP has committed substantial resources in prosecuting and

settling this action.  ¶ 58.  Thus, Wigdor LLP should be appointed as Class Counsel.

## V.   THE PROPOSED NOTICE, CLAIM FORM AND AWARD DISTRIBUTION ARE FAIR

The content of the Proposed Notice and Claim Form fully comply with due process and

Fed. R. Civ. P. 23.  Pursuant to Rule 23(c)(2)(B), a class action notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if desired;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  The Proposed Notice and Claim Form satisfy these requirements.

Additionally, these documents describe the formula by which the settlement allocation to each

Class Member is determined, the terms of the Agreement, the details of the final fairness hearing,

how to object to or opt-out of the Settlement, how to submit a Claim Form, informs Class

Members that they may contact the Claims Administrator with any additional questions and

provides notice of the proposed attorneys' fees and Incentive Awards.  See Ex. 3.  Further, the

Claim Form informs Class Members that they must return the form if they wish to receive a

settlement payment, informs them about the release of claims that they are entering into by submitting a claim form and informs them that they may contact the Claims Administrator with any additional questions.  See Ex. 4.

Lastly, the Settlement Fund distribution is fair.  Class Members will be entitled to receive a Settlement share based on the number of days worked, and whether they were a Trainee or an Interviewer.  Ex. 1 at § 6.2(B).  This method is appropriate because the number of days worked directly correlates with, and provides a reliable approximation for, the amount of damages for unpaid wages under each cause of action.

## VI.    **CONCLUSION**

For the reasons set forth above, the Parties jointly respectfully request that the Court preliminarily approve the Settlement.

Dated: February 27, 2018
           New York, New York                                    Respectfully submitted,

                                                                 **WIGDOR LLP**

                                                                 By: _____
                                                                       Douglas H. Wigdor
                                                                       Tanvir H. Rahman

                                                                 85 Fifth Avenue
                                                                 New York, NY 10003
                                                                 Telephone:  (212) 257-6800
                                                                 Facsimile:   (212) 257-6845
                                                                 dwigdor@wigdorlaw.com
                                                                 trahman@wigdorlaw.com

                                                                 *Attorneys for Plaintiffs and the Proposed*
                                                                 *FLSA Collective and NYLL Class*