**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

PRESTON CHARLES and CARLOS E. PABON,  :
on behalf of themselves and on behalf of all    :
similarly-situated individuals,    :
    :
              Plaintiffs,    :      Index No. 16-cv-06868 (KAM)(JO)
    :
       v.    :
    :
OPINION ACCESS CORP. and JIMMY R.  :
HOFFMAN, in his professional and personal  :
capacities,    :
    :
              Defendants.    :

---------------------------------------------------------- X


# MEMORANDUM OF LAW IN SUPPORT OF JOINT, UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT AND RELEASE AND PAYMENT OF INCENTIVE AWARDS


**WIGDOR LLP**

Douglas H. Wigdor
Tanvir H. Rahman

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
trahman@wigdorlaw.com

*Attorneys for Plaintiffs, the Proposed*
*FLSA Collective, and the Proposed*
*NYLL Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      BACKGROUND ................................................................................................... 1

  A.    Allegations of the Complaint and Procedural History ...................................... 1

II.     THE TERMS OF THE SETTLEMENT ............................................................... 3

  A.    Settlement Consideration ................................................................................. 3

  B.    Attorneys' Fees and Litigation Costs ............................................................... 4

  C.    Incentive Awards ............................................................................................. 4

  D.    Timing of Settlement Payments ....................................................................... 4

  E.    Settlement Allocation Formula ........................................................................ 5

  F.    Release of Claims ............................................................................................ 5

  G. The Notice Process and Positive Reaction From the Putative Class ................. 6

III.    ARGUMENT ....................................................................................................... 7

  A.    The Settlement Class Meets the Legal Standard for Class Certification ........... 7

    1.  Numerosity .................................................................................................. 8

    2.  Commonality ............................................................................................... 8

    3.  Typicality .................................................................................................... 8

    4.  Adequacy of Plaintiffs ................................................................................ 9

  B.    Certification Is Proper Under Rule 23(b)(3) ................................................... 10

    1.  Common Questions Predominate ............................................................... 10

    2.  A Class Action Is a Superior Mechanism .................................................. 11

  C.    The Settlement Is Fair, Reasonable and Adequate ......................................... 12

    1.  The Proposed Settlement is Procedurally Fair ........................................... 12

    2.   The Proposed Settlement is Substantively Fair ................................................13

D.    Plaintiff's Requested Incentive Awards Should be Approved ...........................23

  IV.    CONCLUSION.........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

Amchem Prods. Inc. v. Windsor,
   521 U.S. 591 (1997)............................................................................................ 10

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
   222 F.3d 52 (2d Cir. 2000).................................................................................... 9

Cagan v. Anchor Sav. Bank FSB,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)............................... 21

City of Detroit v. Grinnell Corp.,
   495 F.2d 448 (2d Cir. 1974).............................................................................. 12, 13

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
   502 F.3d 91 (2d Cir. 2007).................................................................................... 10

Crevatas v. Smith Mgmt. & Consulting, LLC,
   No. 15 Civ.  2307 (MEM), 2017 WL 1078174 (M.D. Pa. Mar. 22, 2017)............... 24

Diaz v. E. Locating Serv. Inc.,
   No. 10 Civ. 4082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ................ 22

Edelen v. Am. Residential Servs., LLC,
   No. 11 Civ.  2744 (DKC) , 2013 WL 3816986 (D. Md. July 22, 2013)................... 25

Frank v. Eastman Kodak Co.,
   228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... passim

Gen. Tel. Co. of SW v. Falcon,
   457 U.S. 147 (1982)................................................................................................ 8

Green v. Wolf Corp.,
   406 F.2d 291 (2d Cir. 1968)................................................................................... 11

Gundrum v. Cleveland Integrity Servs., Inc.,
    No. 17 Civ. 55 (TCK)(TLW), 2017 WL 3503328 (N.D. Okla. Aug. 16, 2017)...................... 25

Henry v. Little Mint, Inc.,
    No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014).................................. 24

In re Austrian & German Bank Holocaust Litig.,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................................... 13, 16, 18, 20

In re Warfarin Sodium Antitrust Litig.,
    391 F.3d 516 (3d Cir. 2004)................................................................................................. 15

Johnson v. Brennan,
    No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................... 22, 25

Khait v. Whirlpool Corporation,
    No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).................................. 11

Maley v. Dale Global Techs. Corp.,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................... 14

Marriott v. Cnty. of Montgomery,
    227 F.R.D. 159 (N.D.N.Y. 2005)............................................................................................ 10

Matheson v. T-Bone Rest., LLC,
    No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)................................. 25

McBean v. City of New York,
    228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................................ 11

Novella v. Westchester County,
    443 F. Supp. 2d 540 (S.D.N.Y. 2006)..................................................................................... 8

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ................................................................................................. 21

Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,
    698 F.2d 150 (2d Cir. 1983) ................................................................................. 8

Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,
    237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................... 8

Reyes v. Altamarea Grp., LLC,
    No. 10 Civ. 6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ................................ 26

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,
    No. 94 Civ. 5587 (PKL)(RLE), 2003 WL 21136726 (S.D.N.Y. May 15, 2003) .................... 15

Roberts v. Texaco, Inc.,
    979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................... 23

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993) ............................................................................. 9

Simmons v. Enter. Holdings, Inc.,
    No. 10 Civ. 00625 (AGF), 2012 WL 2885919 (E.D. Mo. July 13, 2012) ............................. 24

Torres v. Gristede's Corp.,
    No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) .............................. 11

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 12

Willner v. Manpower Inc.,
    No. 11 Civ. 02846 (JST), 2015 WL 3863625 (N.D. Cal. June 22, 2015) ............................. 25

Winfield v. Babylon Beauty Sch. of Smithtown Inc.,
    89 F.Supp.3d 446 ................................................................................................ 18

Young v. Tri Cty. Sec. Agency, Inc.,
    No. 13 Civ. 5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) ................................... 24

## **Other Authorities**

Federal Rule of Civil Procedure 23(a) ................................................................. 7

Rule 23 ................................................................................................................. 8

Rule 23(a)(4) ........................................................................................................ 9

Rule 23(b) ............................................................................................................ 7

Rule 23(b)(3) ............................................................................................. 7, 10, 11

Rule 23(e) ........................................................................................................... 12

29 C.F.R. § 785.27 ............................................................................................. 18

Named Plaintiffs Preston Charles and Carlos Pabon, and Opt-in Plaintiff Freddy Graciano (together, "Plaintiffs"), on behalf of themselves and a class of similarly-situated individuals that they seek to represent (the "Class" or "Class Members"), along with Defendant Opinion Access Corp. ("OAC," and with Plaintiffs, the "Parties"), jointly move for final approval of the proposed Settlement Agreement and Release ("Settlement Agreement," attached as Ex. 1)[1] and payment of Incentive Awards.  For the reasons below, the Settlement satisfies all of the criteria for final approval.  Accordingly, Plaintiffs respectfully request that the Court approve the Proposed Final Approval Order attached as Ex. 2.

## I.   BACKGROUND

### A.   Allegations of the Complaint and Procedural History

Plaintiffs are former Interviewers at OAC, a marketing research and quantitative data collection service formerly located in Long Island City, New York.  This action was filed on December 13, 2016.  Plaintiffs allege that OAC violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") with respect to all Interviewers and Trainees (*i.e.* individuals who trained to become Interviewers but did not end up working as Interviewers) (referred to herein as the "NYLL Class") by failing to pay them:  (i) minimum wages for all hours worked, including time spent training to become Interviewers; (ii) straight-time wages for all hours worked; and (iii) "call-in" pay.  Plaintiffs also allege that Defendants failed to provide the NYLL Class with accurate wage statements.  Ex. 3 (Complaint) at ¶¶ 12-61.

Plaintiffs allege that members of the NYLL Class were not paid *any* wages, including minimum wages, during their mandatory training period.  Id. at ¶¶ 14, 17.  Plaintiffs also allege that OAC would compensate Interviewers based on the number of hours they were logged into

---

[1]      All  paragraphs of and exhibits attached to the Declaration of Tanvir H. Rahman in Support of the Parties' Joint Unopposed Motion for Final Approval of Class Action Settlement ("Rahman Decl.") are referred to herein as "¶ __" and "Ex. __",  respectively.

OAC's computer terminals, but would fail to pay them for time spent waiting to be seated and waiting to log back into a computer if their computer needed restarting. Plaintiffs also allege that OAC would dock Interviewers time for "breaks" that were never actually taken. Id. at ¶¶ 18-22. Furthermore, Plaintiffs also alleged that members of the NYLL Class would routinely be sent home after reporting to work, without receiving any "call-in" pay as required by the NYLL. Id. at ¶¶ 25-27. Lastly, as a result of these violations, Plaintiffs allege that they and the NYLL Class were provided with inaccurate wage statements that inaccurately reported their hours worked. Id. at ¶ 28.

Shortly after this suit was commenced, and before Defendants even propounded an Answer, the Parties agreed to engage in private mediation in an attempt to resolve the claims at issue on a class-wide basis. ¶ 27.[2] The Parties agreed to engage in a robust, but focused, pre-mediation discovery process, in order to come to the mediation with a full appreciation for and sense of the strengths and weaknesses of the claims and potential damages. ¶ 28. The Parties also agreed to utilize noted labor and employment law mediator Hunter R. Hughes, Esq. ¶ 29. Ultimately, the Parties exchanged, *inter alia*, the following documents and information:

- Relevant employment policies, handbooks, internal memoranda and training manuals;
- Plaintiffs' payroll and time records;
- A statistically significant sampling of payroll and time records for putative Class Members;
- Lists of new Interviewer hires and Trainees over the relevant statutory period;
- Documents sufficient to identify the number of Interviewers who have worked at OAC each day over the relevant statutory period; and
- The New York State Department of Labor's ("NYSDOL") file in connection with two prior actions against OAC for alleged unpaid wages to Interviewers, both of which resulted in settlements.

---

[2]    In furtherance of mediation efforts, the Parties agreed to toll the statute of limitations on the FLSA claims of putative collective members pending the outcome of mediation and entered into a tolling agreement so-ordered by the Court. See Dkt. No. 16.

¶ 30.  Defendants also provided Plaintiffs with a summary of what they believed was their damages exposure, based on an analysis of a statistically significant sampling of data.  ¶ 32.

Based on a thorough review of the documents and information exchanged between the Parties, and with the input of Plaintiffs at each step of the process, Class Counsel prepared a comprehensive pre-mediation brief, which contained detailed damages calculations, charts and legal analysis.  ¶ 47.  Ultimately, the Parties attended a full-day mediation with Mr. Hughes on December 12, 2017 and were able to agree in principle upon the framework of a class-wide resolution.  ¶ 48.  The Settlement Agreement, the precise terms of which were reached after substantial further arm's length negotiations, was later executed by all Parties.  See Ex. 1.

On February 27, 2018, the Parties jointly moved for preliminary approval of the Settlement Agreement and permission to disseminate notice of the settlement to putative class members.  See Dkt. No. 26.  On March 8, 2018, the Court granted the Parties' joint motion.  See Dkt. No. 30.

## II.     THE TERMS OF THE SETTLEMENT

### A.     Settlement Consideration

Defendants agreed to pay up to $1,500,000.00 (the "Gross Settlement Fund" or "Maximum Settlement Amount") to resolve this action on a class basis.  Ex. 1 at §§ 1.17, 1.21. The Gross Settlement Fund was the maximum amount Defendants agreed to pay into the Qualified Settlement Fund, from which: (i) all Class Members who filed timely and valid Claim Forms receive their allocated share; (ii) Plaintiffs receive any court-approved Incentive Awards; (iii) Class Counsel is compensated and reimbursed for costs; (iv) the costs of administering the Settlement is paid; and (v) employer withholdings for FICA Medicare, and all other applicable payroll taxes is paid.  Id. at § 1.21.

**B.     Attorneys' Fees and Litigation Costs**

Plaintiffs are seeking an attorneys' fees and costs award to Class Counsel of no more than one-third (33 1/3%) of the Gross Settlement Fund, or $500,000 (specifically $490,398.16 in fees and $9,601.84 in costs).  Id. at § 6.4(A).  The 5,509 putative Class Members were notified of this attorneys' fees and costs request in the notice that was disseminated to Class Members (the "Notice").  Ex. 5; ¶ 57.  Only two putative Class Members timely filed an objection to the Settlement, though neither specifically objected to Class Counsel's fee request.  Ex. 12; ¶ 61.  Three putative Class Members opted-out of the settlement.   Ex. 11; ¶ 61.   If the Court does not approve the fees and costs sought by Class Counsel, then such unapproved amounts shall be redistributed to Authorized Claimants on a *pro rata* basis. Ex. 1 at § 6.2(B).

**C.     Incentive Awards**

Plaintiffs are seeking Incentive Awards in recognition of the services they rendered to the Class, which are discussed in greater detail below.  See *infra* § III(D).  Named Plaintiffs Charles and Pabon seek Incentive Awards of $15,000 each and Opt-In Plaintiff Graciano seeks an Incentive Award of $5,000.  Ex. 1 at §§ 1.19, 6.3(A).   No putative Class Members have filed objections concerning the requested Incentive Awards.

**D.     Timing of Settlement Payments**

Defendants will make three settlement installment payments to the Claims Administrator, Dahl Administration ("Dahl"), who will be responsible for distributing settlement payments to Class Members who have submitted Claim Forms (*i.e.* "Authorized Claimants") and to Class Counsel based on the following schedule:

>    1.   The first installment payment will be made within 14 days after the Final
>         Effective Date and will consist of an aggregate payment equivalent to: (a) 25%
>         of the total amount owed to Class Counsel as fees and costs; (b) 25% of the total
>         amount owed to the Claims Administrator; and (c) 25% of the total amount owed

to Authorized Claimants, which would include 25% of any judicially approved Incentive Awards to Plaintiffs.  Defendants will also make an additional payment of $12,500 that will be set aside for errors and omissions.  Ex. 1 at § 6.1(B)(1).

2.  The second installment payment will be made on or before February 1, 2019 and will consist of an aggregate payment equivalent to: (a) 25% of the total amount owed to Class Counsel; (b) 25% of the total amount owed to the Claims Administrator; and (c) 25% of the total amount owed to Authorized Claimants, including 25% of any judicially approved Incentive Awards to Plaintiffs. Defendants will also make an additional $12,500 payment that will be set aside for errors and omissions.  Id. at § 6.1(B)(2).

3.  The third and final installment shall be made by November 1, 2019 and will consist of an aggregate payment equivalent to the remainder of the total amount owed to: (a) Class Counsel as legal fees and costs; (b) the Claims Administrator and (c) Authorized Claimants, including any remaining judicially approved Incentive Awards to Plaintiffs.  The remainder of the errors and omissions fund will be credited against and paid out as part of the proceeds to the Authorized Claimants.  Id. at § 6.1(B)(3).

4.  The Claims Administrator will distribute each of these payments within 14 days after each installment is paid into the Qualified Settlement Fund.  Id. at § 6.1(C). Authorized Claimants will have 120 days to redeem their respective settlement checks.  Any amounts remaining from unredeemed settlement checks shall be returned to Defendants.  Id.

**E.**     **Settlement Allocation Formula**

The portion of the Settlement Fund payable to Class Members will be divided among the

Class Members based on a point allocation that takes into account each day the Class Members

worked for OAC, whether they were merely a Trainee,[3] and is explained in greater in Section

6.2(B) of the Settlement Agreement.

**F.**     **Release of Claims**

The Agreement contemplates the following with regard to releases:

---

[3]      This "point" allocation system was derived to account for the fact that OAC paid Interviewers a "sign-on bonus" of either $100 or $150 at the time the Interviewer first began working for OAC upon completing their mandated training (which arguably could offset against the minimum wages owed to Interviewers for the time they spent training), whereas OAC did not pay Trainees who never ended up working as an Interviewer any "sign-on bonus" or other monies.  ¶ 52.

- Each Class Member who has not timely opted out of the Settlement will release all New York State and local wage-and-hour claims, as described more specifically in the Agreement.  Ex. 1 at §§ 1.30; 7(A);

- Class Members who have submitted a Claim Form (and thus became an "Authorized Claimant") will release all New York State and local wage-and-hour claims, and claims under the FLSA, irrespective of whether they ultimately cash or redeem a settlement payment.  Id.;

- Class Members who have opted out of the Settlement will not be subject to any release.  Id. at § 7(A);  and

- Plaintiffs, as consideration for receiving Incentive Awards, will be subject to a general release of all claims.  Id. at. §§ 7(B),(C).

**G.**     **The Notice Process and Positive Reaction From the Putative Class**

On March 8, 2018, the Court approved Dahl to serve as Settlement Administrator.  See Dkt. No. 30.  On March 25, 2018 and March 29, 2018, Dahl was provided with a list of 5,509 Class Members' contact information (after eliminating duplicate Class members), consisting of 4,363 Interviewers and 1,146 Trainees, which included email addresses where available.  Ex. 6 at ¶ 4.  On April 13, 2018, after obtaining the most current mailing addresses, for Class Members, Dahl mailed and emailed Court-approved Notices to the Class Members, who were given a deadline of June 27, 2018 to submit a claim form, opt-out, object to the settlement, or do nothing. Id. at ¶¶ 6-8.

During the notice process, Dahl took reasonable steps to obtain the correct mailing address of each Class Member, including those whose Notice was returned undeliverable.  For instance, Dahl processed the Class Members' addresses through the National Change of Address database maintained by the United States Postal Service, which updated addresses for individuals who had moved within the past four years and who filed a change of address card with the USPS.  Id. at ¶ 6.  Moreover, Notice packets that were returned as undeliverable were sent by Dahl to a professional address search firm for skip tracing.  Id.  at ¶ 9.  Dahl also set up a toll-

free line where putative class members could call to inquire about the settlement and their status as class members.  Id. at ¶ 5.  Ultimately, of the 5,509 putative Class Members, only 579 appear to not have had a Notice delivered to them either by email or mail (comprising 10.5 % of the putative class).  Id.at ¶ 9.  1,199 putative Class Members timely returned valid Claim Forms and the aggregate monetary value of their Individual Gross Amounts (inclusive of proposed Incentive Awards) is 452,133.90, or 47% of the potential settlement funds claimable by Class Members.  Id. at ¶ 10.  Only two putative Class Members timely submitted objections and three Class Members opted-out of the Settlement, demonstrating Class Members overwhelming approval of the Settlement.  Id. at¶¶ 11-12.  Dahl estimates that the total cost for administration of the Settlement will be $38,179.  Id. at ¶ 13.

## III.  ARGUMENT

### A.  The Settlement Class Meets the Legal Standard for Class Certification

On February 27, 2017, the Court provisionally certified the Settlement Class (defined below) and memorialized its decision in an Order.  See Dkt. No. 27; Ex. 4.  For settlement purposes, Plaintiffs seek to certify the following Proposed Class under Rule 23(e):

> All individuals who in New York (i) worked for OAC in the position of "Interviewer" for at least one day during the Settlement Period; and (ii) any individual who participated in OAC's training program for "Interviewers" but who did not work as an Interviewer for at least one day as an Interviewer [from December 13, 2010 through December 31, 2017].

(the "Settlement Class").  Ex. 1 at § 1.5.  Here, for the reasons set forth below, the Settlement Class satisfies the requirements under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).  Rule 23(a) requires numerosity, commonality, typicality and adequacy of representation.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that questions of law or fact common to members of the class predominate over any questions

7

affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Id. at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted).

### 1.    Numerosity

There are 5,506 putative Class Members, which is more than sufficient for numerosity. See, e.g., Novella v. Westchester County, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) (finding a class of 24 to be sufficient).

### 2.    Commonality

The commonality requirement tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147, 157 n.13 (1982). Claims need not be identical, but must share common questions of fact or law.  See Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J., 698 F.2d 150, 153-54 (2d Cir. 1983).

The claims of Plaintiffs and Class Members have common issues, including: (i) whether Defendants failed to pay them minimum wages during their training; (ii) whether Defendants failed to pay them wages for all hours worked; (iii) whether Defendants failed to pay them "call-in" pay; and (iv) whether Defendants failed to provide them with accurate wage statements.

### 3.    Typicality

Rule 23 requires that the claims of the representatives be typical of the claims of the class, but "does not require the representative party's claims to be identical to those of all class members."  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 182 (W.D.N.Y. 2005).  "Minor

variations . . . underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Class Members' claims because Defendants allegedly: (i) applied the same wage practices, policies and structures to all Class Members; (ii) assigned similar job duties to Class Members; and (iii) did not pay Class Members all their wages.

### 4.      Adequacy of Plaintiffs

Rule 23(a)(4) requires that "representative parties fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine adequacy, courts inquire whether: "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  Here, there has been no assertion that Plaintiffs have interests that are antagonistic with those of Class Members.  ¶ 95.  Rather, Plaintiffs have shown their commitment to the Class by, *inter alia*:  (i) actively participating in the prosecution of this case, including reviewing and approving pleadings; (ii) searching for relevant documents; (iii) answering questions pertaining to the claims and defenses; (iv) meeting and communicating with Class Counsel at all stages; (v) preparing for, attending and actively participating in a mediation (in the case of Plaintiffs Charles and Pabon); (vi) undertaking the risk of retaliation; and (vii) undertaking the risk of being liable for expenses in the event of an unfavorable outcome.  ¶ 95.

Moreover, Class Counsel has done substantial work identifying, investigating and prosecuting Plaintiffs' claims, and has substantial experience prosecuting and resolving

employment class actions, including wage-and-hour class actions by courts within this state.

See, e.g., Cordero, et al. v. New York Institute of Technology, No. 12 Civ. 3208 (GRB), Dkt.

Nos. 60, 72 (E.D.N.Y. Mar. 17, 2016); Alom, et al. v. 13th Street Entertainment LLC, et al., No.

14 Civ. 8707 (SN), Dkt. Nos. 71, 80 (S.D.N.Y. Feb. 2, 2016); Raniere, et al. v. Citigroup Inc., et

al., No. 11 Civ. 2448 (RWS), Dkt. Nos. 163, 174 (S.D.N.Y. Sep. 29, 2015); Munir, et al. v.

Sunny's Limousine Service, Inc., et al., No. 13 Civ. 01581(VSB), Dkt. Nos. 145, 155 (S.D.N.Y.

Jan. 8, 2015).  Finally, as is detailed in Plaintiffs' accompanying motion seeking the approval for

attorneys' fees and reasonable litigation costs, Class Counsel has committed substantial

resources in prosecuting and settling this action.

### B.   Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact be present and "predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997).

### 1.   Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof." Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether

"liability can be determined on a class-wide basis, even when there are some individualized

damage issues." Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 173 (N.D.N.Y. 2005).

Where claims are "unified by a common legal theory" and by common facts, the predominance

requirement is satisfied.  McBean v. City of New York, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs assert – and Defendants agree for settlement purposes only – that core factual allegations and legal theories predominate over any factual or legal variations among Class Members.  See, e.g., Torres v. Gristede's Corp., No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (predominance satisfied where plaintiffs "introduced sufficient proof that Defendants engaged in common practice to deny employees overtime pay").

### 2.    A Class Action Is a Superior Mechanism

Rule 23(b)(3) analysis also calls for examination of whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) provides non-exclusive factors pertinent to judicial inquiry into the superiority of a class action, including:  (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) whether individual class members wish to bring individual actions; and (3) the desirability of concentrating litigation of claims in a particular forum.  See Fed. R. Civ. P 23(b)(3).

Class adjudication is superior to individual adjudication because it will conserve judicial resources and be more efficient for Class Members, particularly those who lack the resources to bring their claims individually.  See Khait v. Whirlpool Corporation, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010).  Here, Plaintiffs and putative Class Members, who earned modest wages at or around the minimum wage while working at OAC, do not have substantial financial resources to prosecute individual actions.  ¶ 17.  Class Counsel is also unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  ¶ 20.  Concentrating the litigation in this Court is desirable because Defendants conducted their business within the jurisdiction of this Court, and many putative Class Members

reside in this jurisdiction.  ¶ 18.  The class action device will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments if certification were denied.  ¶ 19.

C.     **The Settlement Is Fair, Reasonable and Adequate**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts generally evaluate whether the settlement's terms are fair, adequate and reasonable according to the nine factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).

1.     **The Proposed Settlement is Procedurally Fair**

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  Wal-Mart Stores, 396 F.3d at 116.  The proposed settlement is procedurally fair because it was reached through a full-day mediation session before one of the nation's preeminent labor and employment mediators, Hunter R. Hughes, Esq.  Moreover, the settlement negotiations were at all times at arm's-length and between capable and experienced counsel, after counsel had conducted a thorough investigation and evaluated the merits of the claims. "In evaluating the settlement, the Court should keep in mind the unique ability of the class and defense counsel to assess the potential risks and rewards of litigation . . ."  Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2009 WL 6615729, at *3-4 (S.D.N.Y. Nov. 27, 2009) (settlement negotiations presided over by "experienced class action employment mediator, Hunter Hughes" "reinforces the non-collusive

12

nature of the settlement").  This is particularly true where, as here, the Parties have engaged in litigation, negotiation and information/document exchange that have allowed them to thoroughly assess the challenges associated with, *inter alia*, certification, the merits and collectability.  In fact, the Parties even engaged in considerable arm's-length negotiations concerning the final terms of the Settlement Agreement, which were so lengthy and contentious that the Parties had to request two extensions of their deadline to submit the Settlement Agreement for preliminary approval purposes because the agreement had not yet been finalized.  See Dkt. Nos. 23 and 25.

### 2.    The Proposed Settlement is Substantively Fair

The Second Circuit in Grinnell Corp. provided the analytical framework for evaluating the substantive fairness of a class action settlement by outlining nine factors that should guide district courts in this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.  495 F.2d at 463.  Here, all of the Grinnell factors weigh in favor of final approval of the Agreement.

### i.    *Litigation Would Be Complex, Costly and Long (Factor 1)*

By reaching a settlement before protracted litigation, the Parties avoided significant expense and delay and ensured recovery for Class Members.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y.

2000).

This case is no exception, involving 5,506 Class Members with claims under both federal and state laws, and a relevant time period spanning nearly seven years.  Indeed, since this litigation was commenced, the Parties have engaged in the production, review and analysis of thousands of pages of relevant documents and detailed spreadsheets (including time records, payroll records, employment policies, training lists and hiring lists), allowing the Parties to appreciate the strengths and weaknesses of this case and responsibly engage in settlement discussions.  This was an extremely time- and resource-consuming process.  Continued discovery would be even more costly and time-consuming, and include the review and exchange of thousands of pages of more documents, including depositions of Defendants' managerial-level employees/former employees, Plaintiffs and opt-in plaintiffs/class members, and almost certainly multiple motions to compel and/or for protective orders.  ¶ 82.

Absent settlement, following full discovery, Plaintiffs would move for class certification (which Defendants would contest), and it is likely that both Parties would move for full or partial summary judgment.  ¶ 83.  A trial in this action would be lengthy and complex, consuming the time and resources of all Parties and the Court.  ¶ 88.  Even after a verdict, any judgment is likely to be appealed.  ¶ 89.  Settlement, however, makes relief available to Class Members in a prompt, efficient and risk-free manner.  For these reasons, the first <u>Grinnell</u> factor weighs in favor of final approval.

> ii.     *The Reaction to the Settlement (Factor 2)*

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." <u>Maley v. Dale Global Techs. Corp.</u>, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  The lack of class member objections "may

itself be taken as evidencing the fairness of a settlement."  RMED Int'l, Inc. v. Sloan's
Supermarkets, Inc., No. 94 Civ. 5587 (PKL)(RLE), 2003 WL 21136726, at *1 (S.D.N.Y. May
15, 2003).  Here, the Court-approved Notice disseminated to Class Members disclosed the
amount of the Settlement Fund, applicable reductions to the Settlement Fund for Claims
Administration costs, Incentive Awards, and Class Counsel's attorneys' fees, and informed Class
Members that their monetary award will be based on the number of days and/or position(s) they
worked during the relevant liability period.  See Notice (Ex. 5); ¶ 57.  The Notice also informed
Class Members that they could participate in, object to or exclude themselves from the
settlement, and explained how to do so.  Ex. 5.  Only two Class Members have objected to the
Settlement and only three Class Members have opted-out, representing .03% and .05% of Class
Members respectively.  Exs. 11 and 12; Ex. 6 at ¶¶ 12, 13..[6]  This overwhelmingly favorable
response demonstrates that the Class approves of the results, which supports final approval.

> iii.   *Sufficient Discovery Has Occurred to Responsibly Settle (Factor 3)*

As detailed above, the Parties have conducted significant targeted discovery, which is
more than sufficient to resolve the action responsibly.  The proper question to ask at this stage is
"whether counsel had an adequate appreciation of the merits of the case before negotiating."  In
re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial
negotiations and discovery must be sufficiently adversarial that they are not designed to justify a
settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."

---

[6]       Neither of the two objections filed warrant denial of settlement approval.  Akeilah Campbell's objection
appears to arise out of her purported uncertainty whether this action covers all possible legal claims Class Members
may have against OAC, without providing any specific examples or evidence of other actionable claims not alleged
in this case.  See Ex. 12 at 1 ("I am currently unaware as [sic] whether or not I *completely* agree with the totality of
all the claims that are going to be asserted in order to ensure worker compensation for worker injuries/damages(s).")
(emphasis in original).  Likewise, Elsie Estefania's objection appears to be based on her belief that the "amount of
the settlement [] should be raised millions" because certain employees were treated favorably because of their race
or friendships with management.  Id. at 2.  Class Members (besides Plaintiffs) will not be releasing any non-wage
and hour claims, such as workers compensation claims, and as such would not be precluded from asserting other
viable claims against Defendants, to the extent any exist.

In re Austrian, 80 F. Supp. 2d at 176.

Here, as detailed above, the targeted discovery that was exchanged meets and, in fact, exceeds this standard.  Class Counsel conducted extensive damages analyses, which involved multiple spreadsheets incorporating numerous factors.  ¶ 34.  To assess the potential value of Plaintiffs' claim arising from Defendants' alleged failure to pay wages for training, Class Counsel reviewed documents reflecting the total number of Interviewers who completed training, Trainees who never worked as Interviewers, and relevant policies and notices concerning Defendants' training process in order to determine the total amount of minimum wages Defendants owed for the time Interviewers and Trainees spent training to become Interviewers. Based on this review, Class Counsel estimated, *at most and in the best case scenario and without accounting for any of Defendants' defenses as to liability or damages*, the total amount of minimum wage damages from this claim to be approximately **$660,000.00**.  ¶¶ 36-37.

Further, to assess the potential value of Plaintiffs' "off-the-clock" work claim, Class Counsel reviewed documents and data concerning the number of shifts worked by Interviewers during the Class Period, as well as a representative sampling of payroll and time records.  Based on this review, Class Counsel estimated, *at most and in the best case scenario and without accounting for any of Defendants' defenses as to liability or damages*, the total amount of wages owed from this claim to be approximately **$640,000**.  ¶¶ 42-43.

To assess the potential value of Plaintiff's "call-in pay" violation claim, Class Counsel conducted extensive interviews with Plaintiffs, putative Class Members, and other OAC staff, reviewed, *inter alia*, documents concerning Defendants' work reporting policies and practices, as well as the New York Department of Labor's files on OAC, particularly with respect to prior settlements.  Based on this review, Class Counsel estimated, *at most and in the best case*

*scenario and without accounting for any of Defendants' defenses as to liability or defenses*, the total amount of wages owed for "call-in" pay violations to be approximately **$700,000**.  ¶¶ 38-40.

Accordingly, the $1,500,000 total maximum settlement reached represents a recover of 75% of the estimated unpaid wages owed to the Class *under the best case scenario* stemming from Defendants alleged minimum wage, off-the-clock, and call-in pay violations.  ¶ 44.

Lastly, to assess the potential value of Plaintiffs' failure to provide accurate wage statements claim, Class Counsel reviewed documents concerning the number of Interviewers hired by OAC over the Class Period, a representative and statistically significant sampling and wage notices, as well as pay stub and time records.  Based on this review, Class Counsel estimated that Defendants *could* be, under the best case scenario and assuming that Plaintiffs were able to certify this claim as a class claim, subject to as much as **$15 million** in penalties for failing to provide accurate wage notices should Plaintiffs prevail on this claim entirely.  ¶ 45.

Accordingly, based on the above, the Parties entered into settlement negotiations with a strong sense of and appreciation for Class Members' claims, the risks and exposure Defendants faced, and the various obstacles to proving the claims (detailed below) and obtaining a favorable judgment.  Although additional information could be obtained in discovery, it is unlikely that further discovery would have markedly changed the Parties' analyses.  See Frank, 228 F.R.D. at 185 (approving settlement of case "in relatively *early* stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive") (emphasis added). Against this backdrop, this factor favors final approval.

17

iv.      *Plaintiffs Would Face Real Risks at Trial (Factors 4 and 5)*

Plaintiffs and Class Counsel believe that the case is strong, but recognize the risks inherent in a trial.  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." In re Austrian, 80 F. Supp. 2d at 177 (internal quotation marks omitted).  A trial on the merits would involve significant risks as to liability and damages, not to mention collection issues post-trial.  ¶ 93.  Plaintiffs would have to overcome Defendants' defenses, both as to liability and damages, including, *inter alia*: (i) that OAC's Interviewer training program qualified as a non-compensable "educational or vocational training program," particularly because those who underwent training were not guaranteed jobs and were told that they would not be entitled to wages during their time spent training (see Winfield v. Babylon Beauty Sch. of Smithtown Inc., 89 F.Supp.3d 446 (E.D.N.Y. 2015; see also 29 C.F.R. § 785.27); (ii) that, even if the training program did not qualify as a non-compensable training program, any damages would be offset by the $100-$150 sign-on bonus paid to Interviewers upon completion of training; (iii) that any "off-the-clock" or uncompensated work was *de minimis*, and even if it was not *de minimis*, would be unique to each individual Interviewer, and thus certificable as a class claim; (iv) that Defendants did not violate the "call-in" pay provisions of the NYLL (for which there is scant case law and guidance from the NYSDOL to begin with) because they were within their right to send home any Interviewers who showed up to work late, particularly because this was a *bona fide* policy that OAC included in its employee handbook and other documentation issued to Interviewers; (v) that to the extent there is any "call-in" pay violation liability, such amount, to the extent not *de minimis*, should be offset against any amounts paid by OAC in connection with prior NYSDOL settlements for substantially similar "call-in" claims; (vi) Plaintiffs would not be

entitled to "double dip" by collecting both penalties resulting from purportedly receiving inaccurate wage statements, as well as damages from purported wage violations tied to the particular wage statement-related inaccuracies; and (vii) Plaintiffs' inaccurate wage statement claim (for which, again, there is scant case law and guidance on how such claim and its penalties should be interpreted and enforced) would not be worthy of class treatment since it would require individualized inquiries into whether inaccuracies existed in each relevant wage statement.  ¶ 77.

While Plaintiffs believe that they would ultimately establish Defendants' liability, both on an individual and class-wide basis, obtaining this result would require significant factual and legal development, and Defendants would almost certainly contest the treatment of Plaintiffs' claims as a class action because they were too individualized to certify a class.  ¶ 79.  There is also a large risk inherent in asking a jury at trial to analyze thousands of pages of information, including, *inter alia*, payroll records, time records and other documents that have already been produced or would eventually be produced in discovery, in order to calculate potential damages. ¶ 80.  Class Counsel is experienced and realistic, and understands that the outcome at trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  ¶ 81. The proposed Settlement alleviates these uncertainties.

> v.   *Maintaining the Class Through Trial Would Not Be Simple*
> *(Factor 6)*

The risk of obtaining NYLL Rule 23 class certification and maintaining it through trial is present.  Plaintiffs would need to obtain certification of the FLSA and NYLL claims.  ¶ 84.  Such determinations would likely be reached after extensive and costly discovery and motion practice. ¶ 84.  Further, in opposing class certification, Defendants would argue that differences and types of claims among Class Members preclude certification.  ¶ 85.  Plaintiffs also face challenges in

meeting the more stringent requirements for Rule 23(b)(3) certification.  ¶ 86.  Settlement

eliminates the risk, expense and delay that permeate the class certification process.

> vi.    *Defendants' Ability to Withstand a Greater Judgment Is Not Clear*
>        *(Factor 7)*

It is uncertain whether Defendants will be able to withstand a larger judgment, as OAC

has closed down its New York operations as of December 31, 2017.  ¶ 73.  In any event, a

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."  Frank, 228 F.R.D. at 186 (quoting In re Austrian, 80 F. Supp. 2d at 178

n.9).  Here, the Settlement requires Defendants to make a substantial settlement payment, agreed

to following arm's length negotiations, shortly following the Court's final approval.

Furthermore, the settlement payment is personally guaranteed by OAC's owners, Jimmy

Hoffman and Joseph Raphael, who will execute Confessions of Judgments which will be

enforceable in the event of default, and accelerate when the settlement payments are due.  Ex. 1

at §§6.6(B),(C), (D).  Messrs. Hoffman and Raphael have also provided Class Counsel with

proof of their ability to pay the settlement in the form of brokerage account statements, and have

agreed to retain sufficient funds in those accounts to pay the settlement in the event of a default.

Id.   .  Again, while Plaintiffs may theoretically be able to recover more from Defendants were

they to prevail on all claims at trial, they would not be entitled to any guarantee or assurance of

payment like those provided as terms of settlement by Messrs. Hoffman and Raphael.

Accordingly, this factor also favors final approval.

> vii.   *The Settlement Fund Is Substantial, Even in Light of the Best*
>        *Possible Recovery and Attendant Risks of Litigation*
>        *(Factors 8 and 9)*

Defendants have agreed to settle this case for a maximum amount of $1,500,000,

inclusive of Class Counsel's attorneys' fees and costs and claims administration costs.  Ex. 1 at §

1.17.   The Settlement amount represents a very good and fair value to Class Members, given the

attendant risks of litigation, even though recovery could potentially be greater if Plaintiffs

attained and maintained class certification status, succeeded on all claims at trial, survived

appeals, and were able to collect on a judgment.  ¶ 90.  The determination of whether a

settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a

particularized sum."  Frank, 228 F.R.D. at 186 (citation omitted).  "Instead, 'there is a range of

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.'"  Id. (citation omitted).  "It is well settled that a cash settlement

amounting to only a fraction of the potential recovery will not *per se* render the settlement

inadequate or unfair."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San

Francisco, 688 F.2d 615, 628 (9th Cir. 1982); see also Cagan v. Anchor Sav. Bank FSB, No. 88

Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement

where "best possible recovery would be approximately $121 million").

Based on Class Counsel's pre-mediation damages analysis as discussed above, with

respect to Plaintiffs' minimum wage, "off-the-clock" and call-in pay violation claims, *under the

best case scenario*, their recovery would be approximately **$2 million**.  Class Counsel also

calculated that, as to Plaintiffs' failure to provide accurate wage statement claim, the maximum

penalty recovery would be $15 million class wide.  However, this calculation does not fully take

into account the strengths/weakness of all of the claims as set forth more fully herein, the

likelihood of success both on the merits and as to class certification status, or the ultimate

collectability.  Moreover, while these amounts exclude liquidated damages, which would, of

course, increase damages, Defendants arguably had a number of very viable defenses to each

claim, both as to liability, as well as the potential scope of damages.  See supra at § III(C)(2)(iv).

Of course, assessing the possible recovery in light of the attendant risks of litigation is, by its nature, an inexact mathematical endeavor that necessitates many reasoned assumptions. While analysis can be done using "best case scenario" assumptions, "worst case scenario" assumptions or any assumptions of risk in between, the conclusion is always somewhat speculative and imprecise.  Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding with litigation, the Settlement amount is reasonable and represents a very good and fair value to Class Members, warranting final approval.  ¶ 91.  The total maximum settlement amount is $1,500,000.  Even when this amount is reduced by attorneys' fees, Plaintiffs' requested Incentive Awards and claims administration costs, the remainder will still be substantial and represents a significant percentage of the reasonable potential total class-wide recovery calculated by Class Counsel.  ¶ 92.  Plaintiffs have been advised of the potential upside of proceeding on the merits, but believe that the Settlement is in the best interests of the Class Members they represent.  ¶ 93.  Further, experienced labor and employment mediator Hunter R. Hughes, Esq. presided over the mediation and helped bring the Parties to a resolution.  ¶¶ 48, 49.  See Johnson v. Brennan, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *7-8, 15 (S.D.N.Y. Sept. 16, 2011) (approving FLSA settlement and noting that the Parties hired a private mediator with experience in wage and hour law); Diaz v. E. Locating Serv. Inc., No. 10 Civ. 4082 (JCF), 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010) (approving settlement where parties attended a full-day mediation session with an experienced class action mediator).

For these reasons, this factor weighs in favor of final approval.

22

### D.   <u>Plaintiffs' Requested Incentive Awards Should be Approved</u>

Plaintiffs Charles and Pabon seek modest Incentive Awards in the amount of $15,000 each and Plaintiff Graciano seeks an Incentive Award in the amount of $5,000.  Ex. 1 at § 1.19, 6.3(A).  Plaintiffs Pabon and Charles engaged Class Counsel to bring claims against their former employer on their behalf, and on behalf of their former co-workers, with Plaintiff Graciano opting in soon thereafter.  Plaintiffs provided valuable information in support of the claims alleged in this action, and their assistance was instrumental in reaching the Settlement, more than warranting approval of the modest Incentive Award.  Additionally, Plaintiffs each knowingly and with Class Counsel's advice and counsel, agreed to a general release in exchange for their Incentive Payments, which they will receive in addition to their *pro rata* share of the amount of the settlement fund allocated to Class Members.  ¶ 96.

In examining the reasonableness of service awards, courts usually consider:  (1) the time and effort expended by the class representative during the litigation; (2) any burdens sustained by the class representative, including personal risk; and (3) the ultimate recovery.  <u>See Roberts v. Texaco, Inc.</u>, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  Courts recognize the important factual knowledge that a class representative brings to employment class actions, including information about employer policies and practices that affect wages.  <u>See Frank</u>, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims").

Plaintiffs are seeking Incentive Awards in recognition of the services they rendered to the Class, which include, *inter alia*:  (i) coming forth and engaging Class Counsel to pursue their claims and the claims of other Class Members; (ii) providing documents and information to Class Counsel; (iii) assisting in the preparation of pleadings; (iv) searching for relevant

documents; (v) meeting and communicating with Class Counsel at all phases during the litigation process; (vi) meeting and preparing for mediation (in the cases of Pabon and Charles); (vii) communicating with other putative class members about their potential claims against OAC; (viii) attending and actively participating in the all-day mediation on December 12, 2017 (in the cases of Pabon and Charles); (ix) undertaking the risk of retaliation by holding their names out in the caption of a publicly-filed Complaint; (x) undertaking the risk of retaliation or other detrimental effects by coming forward in an action against a current or former employer; and (xi) undertaking the risk of being responsible for litigation costs and expenses in the event a favorable litigation outcome did not result.  ¶ 94.

Moreover, courts routinely approve incentive awards to class representatives that, like the ones here, are agreed to in consideration for a general release, and in fact, many courts have held that the presence of a general release further supports the reasonableness of an incentive award payment.  See Henry v. Little Mint, Inc., No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *11 (S.D.N.Y. May 23, 2014) (finding service awards "appropriate" because, *inter alia*, "Named Plaintiffs executed a broader release than other Class Members."); see also Crevatas v. Smith Mgmt. & Consulting, LLC, No. 15 Civ.  2307 (MEM), 2017 WL 1078174, at *4 (M.D. Pa. Mar. 22, 2017) (service award appropriate in part because "general release of claims [plaintiff] has agreed to is broader than the limited release applicable to other plaintiffs."); Simmons v. Enter. Holdings, Inc., No. 10 Civ. 00625 (AGF), 2012 WL 2885919, at *2 (E.D. Mo. July 13, 2012) ("The Court approves payment of individual incentive awards to the named Plaintiffs…for their services as class representatives and as consideration for providing a general release."); Young v. Tri Cty. Sec. Agency, Inc., No. 13 Civ. 5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (approving service award where "[plaintiff] worked with Class Counsel to draft the pleadings,

24

reviewed the agreement, and [provided] a general release as part of the settlement."); Edelen v. Am. Residential Servs., LLC, No. 11 Civ. 2744 (DKC) , 2013 WL 3816986, at *16 (D. Md. July 22, 2013) (approving "incentive award [that] serve[ed] as additional consideration for [plaintiff's] broad, general release of claims against Defendants."); Gundrum v. Cleveland Integrity Servs., Inc., No. 17 Civ. 55 (TCK)(TLW), 2017 WL 3503328, at *3 (N.D. Okla. Aug. 16, 2017) (service awards "appear[ed] to fall within reasonable bounds" where, *inter alia*, plaintiffs "agreed to grant broader general releases to [defendant] in addition to releasing their claims under the FLSA."); Willner v. Manpower Inc., No. 11 Civ. 02846 (JST), 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (service award "appropriate to compensate [plaintiff]" where, *inter alia*, plaintiff signed broad general release).

Further, Plaintiffs were represented by counsel throughout this litigation, and have been thoroughly advised about the implications of a general release of claims, thus eliminating any risk that Plaintiffs are not making an informed decision or are otherwise being taken advantage of in some way. ¶ 97. Additionally, given that Plaintiffs are unaware of any additional claims they may have against Defendants besides those alleged in this action (for which they are already receiving a settlement payment), the amount of the requested Incentive Awards is arguably far greater than the value of the claims Plaintiffs are releasing via the general release. ¶ 98.

Finally, the requested Incentive Awards, representing **2.3%** of the total Settlement, is also reasonable in light of the maximum settlement amount of $1,500,000. See Johnson v. Brennan, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards to four named plaintiffs from a $440,000 settlement fund); Matheson v. T-Bone Rest., LLC, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (approving service awards of up to $45,000 which totaled to roughly **_10%_** of the $495,000 fund)

25

(emphasis added); <u>Reyes v. Altamarea Grp., LLC</u>, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of up to $15,000 totaling roughly ***17%*** of the $300,000 fund) (emphasis added).  Here, the requested Incentive Awards are reasonable and should be granted.

IV.     **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Proposed Final Order:  (1) certifying the Settlement Class; (2) granting final approval of the Settlement; and (3) approving Incentive Awards for Plaintiffs.

Dated: August 7, 2018
      New York, New York             Respectfully submitted,

                                   **WIGDOR LLP**

                                   By: _____
                                       Douglas H. Wigdor
                                       Tanvir H. Rahman

                                   85 Fifth Avenue
                                   New York, NY 10003
                                   Telephone:  (212) 257-6800
                                   Facsimile:   (212) 257-6845
                                   dwigdor@wigdorlaw.com
                                   trahman@wigdorlaw.com

                                   *Attorneys for Plaintiffs and the Proposed*
                                   *FLSA Collective and NYLL Class*