**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
PRESTON CHARLES and CARLOS E. PABON,　:
on behalf of themselves and on behalf of all　:
similarly-situated individuals,　:
　:
　　　　　　　　Plaintiffs,　:　　Index No. 16-cv-06868 (KAM)(JO)
　:
　　　　v.　:
　:
OPINION ACCESS CORP. and JIMMY R.　:
HOFFMAN, in his professional and personal　:
capacities,　:
　:
　　　　　　　　Defendants.　:
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**WIGDOR LLP**

Douglas H. Wigdor
Tanvir H. Rahman

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
trahman@wigdorlaw.com

*Attorneys for Plaintiffs, the Proposed*
*FLSA Collective and the Proposed*
*Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT ........................................................................................................................2

I.      CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE AND COSTS AWARD OF
        33 AND 1/3% OF THE SETTLEMENT FUND ..................................................................2

   A.   The Court Preliminarily Approved the One-Third Percentage Fees and Expenses, Which is
        Consistent with the Norms in This District ...............................................................2

   B.   The Percentage Method Is the Preferred Method in the Second Circuit for Awarding
        Attorneys' Fees in Common Fund Cases...................................................................3

   C.   The "Reasonableness" Factors Articulated in *Goldberger* Support an Award of 33
        and 1/3% of the Settlement Fund ...........................................................................6

      1.   Class Counsel's Time and Labor .......................................................................6

      2.   Magnitude and Complexity of the Litigation.....................................................14

      3.   Risk of Litigation .........................................................................................15

      4.   Quality of Representation ...............................................................................18

      5.   Fee in Relation to the Settlement ....................................................................20

      6.   Public Policy Considerations ..........................................................................20

   D.   Class Counsel's Attorneys' Fees and Expenses Should Be Based on a Percentage
        of the Maximum Settlement Fund ..........................................................................22

II.     CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE
        LITIGATION EXPENSES..........................................................................................25

CONCLUSION....................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

Adair v. Bristol Technology Sys.,
    No. 97 Civ. 5874, 1999 WL 1037878 (S.D.N.Y. Nov.16, 1999) ................................................. 3

Barrentine v. Arkansas-Best Freight Sys., Inc.,
    450 U.S. 728 (1981) ................................................................................................... 15

Beckman v. Keybank, N.A.,
    293 F.R.D. 467 (S.D.N.Y. Apr. 23, 2013) ........................................................... 5, 13

Bedasie v. Mr. Z Towing, Inc.,
    2017 WL 5664848 (E.D.N.Y. Nov. 27, 2012)................................................................ 12

Boeing Co. v. Van Gemert,
    444 U.S. 472 (1980) ................................................................................................... 22

Buccellato v. AT & T Operations, Inc.,
    No. 10 Civ. 463, 2011 WL 3348055 (N.D.Cal. Jun. 30, 2011) ................................................. 13

Cagan v. Anchor Sav. Bank FSB,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 2, 1990)................................................. 19

Capsolas v. Pasta Res. Inc.,
    No. 10 Civ. 5595 (RLE), 2012 WL 1656920 (S.D.N.Y. May 9, 2012)................................... 24

Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,
    504 F.3d 229 (2d Cir. 2007)................................................................................ 22

Cosgrove v. Sullivan,
    759 F.Supp. 166 (S.D.N.Y.1991)................................................................................ 14

Davis v. J.P. Morgan Chase & Co.,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................... 3, 13

Deposit Guar. Nat'l Bank v. Roper,
    445 U.S. 326 (1980)................................................................................................... 4

Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974)................................................................................ 15

Diaz v. Scores Holding Co., Inc.,
    No. 07 Civ. 8718, 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ........................................... 22

Febus v. Guardian First Funding Grp., LLC,
    870 F. Supp. 2d 337 (S.D.N.Y. 2012)................................................... 15

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................... 3, 19, 20

Gilliam v. Addicts Rehab. Ctr. Fund,
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................... 3

Goldberger v. Integrated Res. Inc.,
    209 F.3d 43 (2d Cir. 2000).......................................................... passim

Gorey v. Manheim Servs. Corp.,
    No. 10 Civ. 1132, 2010 WL 5866258 (S.D.N.Y. Nov. 10, 2010) ......................... 24

Grace v. Ludwig,
    484 F.2d 1262 (2d Cir. 1973)......................................................... 21

Hall v. Prosource Techs., LLC,
    No. 14 Civ. 2502(SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................... 11

Hernandez v. Immortal Rise, Inc.,
    306 F.R.D. 91 (E.D.N.Y. 2015)........................................................ 25

Hicks v. Morgan Stanley,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................... 10

In re AT & T Corp.,
    455 F.3d 160 (3d Cir. 2006).......................................................... 3

In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................. 25

In re Blech Sec. Litig.,
    No. 94 Civ. 7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002).......................... 3

In re Cardinal Health Inc. Sec. Litig.,
    528 F.Supp.2d 752 (S.D.Ohio 2007) .................................................. 13

In re Elan Sec. Litig.,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005)................................................. 15

In re Enron Corp. Sec., Derivative & ERISA Litig.,
    586 F.Supp.2d 732 (S.D.Tex.2008) ................................................... 13

In re Gilat Satellite Networks, Ltd.,
No. 02 Civ. 1510, 2007 WL 2743675 n.41 (E.D.N.Y. Sept. 18, 2007).....................................20

In re Lloyd's Am. Trust Fund Litig.,
No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)...........................4, 5

In re Ramp Corp. Sec. Litig.,
No. 05 Civ. 6521 (DLC), 2008 WL 58938 n.2 (S.D.N.Y. Jan. 3, 2008) ..................................6

In re Rite Aid Sec. Litig.,
362 F.Supp.2d 587 (E.D.Pa.2005) ..................................................................................13

In re RJR Nabisco, Inc. Sec. Litig.,
No. 88 Civ. 7905 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)................................13

In re Sumitomo Copper Litig.,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................................4, 21

In re Telik, Inc. Sec. Litig.,
576 F. Supp. 2d ..........................................................................................................14

J.I. Case Co. v. Borak,
377 U.S. 426 (1964).......................................................................................................21

Jemine v. Dennis,
901 F.Supp.2d 365 (E.D.N.Y. 2012) ................................................................................14

Johnson v. Brennan,
No. 10 Civ. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept 16, 2011).....................................15

Karpus v. Borelli (In re Interpublic Sec. Litig.),
No. 02 Civ. 6527 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...................................5

Khait v. Whirlpool Corp.,
No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..................................20

Maley v. Dale Global Techs. Corp.,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................13

Masters v. Wilhelmina Model Agency, Inc.,
473 F.3d 423 (2d Cir. 2007)..........................................................................................23

Mazzei v. Money Store,
288 F.R.D. 45 (S.D.N.Y.2012) ......................................................................................21

McDaniel v. County of Schenectady,
    595 F.3d 411 (2d Cir. 2010)..................................................................................... 4

McGee v. Continental Tire North America, Inc.,
    No. 06 Civ. 6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009) ...................................... 3

New England Carpenters Health Benefits Fund v. First Databank, Inc.,
    No. 05 Civ. 11148, 2009 WL 2408560 (D.Mass. Aug. 3, 2009)............................... 13

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 19

Parker v. Jekyll and Hyde Entm't Holdings, L.L.C.,
    No. 08 Civ. 7670 (BSJ), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)........................ 10

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985).................................................................................................. 21

Prasker v. Asia Five Eight, LLC,
    No. 08 Civ. 5811 (MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)...................... 21

Prudential Sec. Inc. Ltd. P'ship. Litig.,
    912 F. Supp. 97 (S.D.N.Y. 1996).............................................................................. 14

Rabin v. Concord Assets Group, Inc.,
    No. 89 Civ. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991)..................... 13

Ramirez v. Lovin' Oven Catering Suffolk, Inc.,
    No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) .................................. 13

Raniere v. Citigroup, Inc.,
    310 F.R.D. 211 (S.D.N.Y. 2015) ......................................................................... 2, 20

Romero v. Westbury Jeep Chrysler Dodge, Inc.,
    No. 1 5 Civ. 4145 (ADS) (SIL), 2016 WL 1369389 (E.D.N.Y. Apr. 6. 2016) ........ 11

Sukhnandan  v. Royal Health Care of Long Island LLC,
    No. 12 Civ. 4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ................... 2

Savoie v. Merchants Bank,
    166 F.3d 456 (2d Cir.1999)................................................................................... 5, 6

Sewell v. Bovis Lend Lease, Inc.,
    No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).................. 13

v

Steiner v. Am. B'casting Co., Inc.,
    248 Fed.Appx. 780 (9th Cir. 2007) ........................................................ 13

Strougo v. Bassini,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................. 3, 4

Taft v. Ackermans,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .................................... 18

Velez v. Majik Cleaning Serv., Inc.,
    No. 03 Civ. 8698 (KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................. 20

Viafara v. MCIZ Corp.,
    No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014) .................................... 2

Vizcaino v. Microsoft Corp.,
    290 F.3d 1043 n. 5 (9th Cir. 2002) ................................................. 5, 12

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96 (2d Cir. 2005) ........................................................ 4

Waters v. Int'l. Precious Metals Corp.,
    190 F.3d 1291 (11th Cir. 1999) ..................................................... 23

Williams v. MGM-Pathe Commc'ns Co.,
    129 F.3d 1026 (9th Cir. 1997) ..................................................... 23

## **Other Authorities**

12 NYCRR § 142–2.3 ...................................................................... 8

Rule 23(g) of the Federal Rules of Civil Procedure  ................................... 2

In connection with the Parties' Joint Unopposed Motion for Final Settlement Approval, and for the reasons set forth in the Declaration of Tanvir H. Rahman ("Rahman Decl."), Plaintiffs Preston Charles, Carlos Pabon, and Opt-in Plaintiff Freddy Graciano (together, "Plaintiffs") respectfully move this Court for an attorneys' fees and expenses award of thirty-three and one-third percent (33 and 1/3%) of the common settlement amount (the "Settlement Fund") to Wigdor LLP ("Class Counsel") consisting of $490,398.16 in legal fees and $9,601.84 in expenses.[1]  Plaintiffs' request for Class Counsel's attorneys' fees and expenses are unopposed by Defendants.  Class Members were advised of Plaintiffs' request for Class Counsel's attorneys' fees and expenses in the Court-approved Notice that was sent to them.  See Ex. 5.[2] Only 2 of the 5,509 putative Class Members filed timely objections to the settlement, though none specifically identified Class Counsel's attorneys' fee request as the reason for their objection.  See Ex. 12.

Class Counsel's fees and expenses request, when considered in light of the aggregation of Class Counsel's efforts to bring this action to a complete resolution, is consistent with the amount of work performed, the complexity of the litigation, the risks involved, the quality of representation, the proportion of the fees and expenses in relation to the settlement and the public policy benefits.  The fees and expenses request is also within the range of what courts have awarded in similar cases.  Class Counsel's efforts in resolving Plaintiffs' and the Class Members' claims against Defendants have, to date, been uncompensated, and their entitlement to be paid and reimbursed for their expenses has been wholly contingent upon achieving a favorable result.  For the reasons set forth below, Plaintiffs respectfully submit that their request

---

[1]     Any capitalized terms not defined herein are defined in the Settlement Agreement (defined *infra*) and/or in the Memorandum of Law in Support of the Parties Joint Unopposed Motion for Final Settlement Approval.

[2]     All exhibits to and paragraphs of the Rahman Decl. are respectively referred to as "Ex. __" and "¶ __."

for Class Counsel's attorneys' fees and expenses in the amount of $500,000 is fair and

reasonable under the applicable legal standards and given the result achieved.  Accordingly,

Class Counsel's fee request should be granted, and this amount should be awarded.

## ARGUMENT

I.  **CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE AND COSTS AWARD OF 33 AND 1/3% OF THE SETTLEMENT FUND**

    A.  **The Court Preliminarily Approved the One-Third Percentage Fees and Expenses, Which is Consistent with the Norms in This District**

On March 8, 2018, in accordance with the requirements of Rule 23(g) of the Federal

Rules of Civil Procedure, the Court appointed Wigdor LLP as Class Counsel.  See Dkt. No. 30.

Class Counsel is entitled to reasonable attorneys' fees to compensate counsel for its substantial

work identifying, prosecuting and settling Plaintiffs' and the Class Members' claims against

Defendants.  The Settlement, which has been preliminarily approved by the Court, provides that:

> At the Fairness Hearing and Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs of no more than Five Hundred Thousand Dollars ($500,000) (based upon one-third of the Gross Settlement Fund) to be paid from the QSF.  Defendants shall not oppose such application.

Ex. 1 at § 6.4(A).

Class Counsel's request for thirty-three and one third percent of the Settlement Fund for

fees and expenses is reasonable and consistent with judicial norms.  See, e.g., Raniere v.

Citigroup, Inc., 310 F.R.D. 211, 220-22 (S.D.N.Y. 2015) (awarding 33% of settlement fund of

$4.65 million in FLSA/NYLL wage and hour action to Class Counsel in case where unclaimed

funds reverted to defendants); Viafara v. MCIZ Corp., No. 12 Civ. 7452 (RLE), 2014 WL

1777438, at *9, *13 (S.D.N.Y. May 1, 2014) (awarding 33% of settlement fund in FLSA and

NYLL case); Sukhnandan v. Royal Health Care of Long Island LLC, No. 12 Civ. 4216 (RLE),

2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) (awarding 33% of settlement fund in FLSA

and NYLL case and finding 33% "reasonable" and "consistent with the norms of class litigation in this circuit"); <u>Gilliam v. Addicts Rehab. Ctr. Fund</u>, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee of one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases); <u>Strougo v. Bassini</u>, 258 F. Supp. 2d 254, 262-63 (S.D.N.Y. 2003) (awarding 33% of $1.5 million class action settlement); <u>In re Blech Sec. Litig.</u>, No. 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); <u>Adair v. Bristol Technology Sys.</u>, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov.16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs).

In addition, the Notice sent to Class Members made clear the proposed terms of the settlement and anticipated fees and costs request.  <u>See</u> Ex. 5.  Notably, only two Class Members timely objected to and three opted out of the Settlement, though none have cited Class Counsel's fee request as the reason for their objection or exclusion request.  <u>See</u> Exs. 11, 12.  Courts regularly determine that this factor supports the approval of a requested attorneys' fees award.  <u>See, e.g.</u>, <u>Davis v. J.P. Morgan Chase & Co.</u>, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011) (absence of objections to an agreed-upon attorneys' fee award is "a factor that weighs in favor of approval of the award"); <u>In re AT & T Corp.</u>, 455 F.3d 160, 169 (3d Cir. 2006) (noting "the absence of substantial objections to the requested attorneys' fees" as a factor supporting approval of a fee award); <u>McGee v. Continental Tire North America, Inc.</u>, No. 06 Civ. 6234, 2009 WL 539893, at *14 (D.N.J. Mar. 4, 2009) (same).

**B.    The Percentage Method Is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in Common Fund Cases**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  <u>See</u> <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Where

relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts.  See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338-39 (1980).  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  See Goldberger v. Integrated Res. Inc., 209 F.3d 43, 51 (2d Cir. 2000) (endorsing the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").  For the following reasons, courts in this Circuit prefer a percentage of the fund method in common fund cases like this one.  See McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . .").

First, the percentage method "directly aligns the interests of the class and its counsel" by encouraging attorneys to resolve the case efficiently and to create the largest common fund from which payments to the class can be made.  Wal-Mart Stores, 396 F.3d at 121 (quoting In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); see also Goldberger, 209 F.3d at 47-50.  Also, the percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); Strougo, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").

Second, the percentage method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation."  Wal-Mart

Stores, 396 F.3d at 121 (quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at

*25 (internal quotation marks omitted)).  The percentage method discourages plaintiffs' lawyers

from running up their billable hours and "decreases the incentive to delay settlement because the

fee for the plaintiffs' attorneys does not increase with delay."  Karpus v. Borelli (In re Interpublic

Sec. Litig.), No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Here, applying only the lodestar method would penalize Class Counsel for efficiently

reaching an early settlement and achieving a quick and manifestly favorable result.  ¶ 66.  See

Wal–Mart Stores, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to

early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage

in a gimlet-eyed review of line-item fee audits."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, at

1050 n. 5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and

that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly");

Savoie v. Merchants Bank, 166 F.3d 456, 461 (2d Cir.1999) ("[T]he percentage-of-the-fund

method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee

does not increase with delay, have no reason to drag their feet.").

Furthermore, Class Counsel's work on the matter is continuing throughout administration

of the settlement, which will involve coordination with the Settlement Administrator and likely

fielding and responding to inquiries from Class Members between now and at least until the third

and final settlement installment payment is issued, in or around November 2019.  ¶ 67.

Therefore, the hours expended to date only partly reflect all of the hours Class Counsel will

ultimately devote to the successful and final resolution of this action.  See Beckman v. Keybank,

N.A., 293 F.R.D. 467, 482 (S.D.N.Y. Apr. 23, 2013) ("[Where] class counsel will be required to

spend significant additional time on this litigation in connection with implementing and

monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.").

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." Savoie, 166 F.3d at 461 n.4. The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." Goldberger, 209 F.3d at 48-49; see also In re Ramp Corp. Sec. Litig., No. 05 Civ. 6521 (DLC), 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008).

### C.   The "Reasonableness" Factors Articulated in *Goldberger* Support an Award of 33 and 1/3% of the Settlement Fund

In Goldberger, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. All of the Goldberger factors weigh in favor of granting approval of Class Counsel's fee application.

#### 1.   Class Counsel's Time and Labor

Class Counsel expended substantial time and labor in achieving the settlement result, rendering the request for attorneys' fees and costs reasonable and just.  By way of example of just some of the work performed by Class Counsel in this action, both prior to and after filing the class and collective action complaint, Class Counsel interviewed Plaintiffs about their job responsibilities and the work that they performed for Defendants, and Defendants' compensation practices, including their practices with respect to their alleged failure to:  (i) pay minimum wages for all hours worked, including hours spent training; (ii) pay straight-time wages for all

hours worked; (iii) pay "call-in" pay; (iv) provide accurate wage statements; and (v) other matters relevant to their claims. ¶ 14. As a follow-up to the these initial interviews with Plaintiffs, Class Counsel obtained and reviewed documentation, performed substantial legal and background research and determined that the Plaintiffs appeared to have legally viable claims, and that an action should be pursued on their behalf and on behalf of a putative class and collective that they were willing and able to represent. ¶ 15.

Moreover, immediately following the commencement of suit, Class Counsel requested leave to file a motion for FLSA conditional certification (see Dkt. No. 11) which prompted the Parties to agree to explore a class-wide resolution through the mediation process in lieu of disseminating notice to potential opt-in plaintiffs. See Dkt. No. 15. Class Counsel then, after agreeing upon an experienced and effective mediator to use, spent a significant amount of time reviewing documents produced during targeted pre-mediation discovery to evaluate the strengths and weaknesses of the case and responsibly recommend settlement. Specifically, Defendants provided Class Counsel with thousands of pages of documents and records dating back to 2010. This documentation was thoroughly reviewed and analyzed by Class Counsel, with Plaintiffs' involvement. ¶ 31.

The determinations made by Class Counsel required significant time and expense. For example, to determine the potential amount of wages owed to Class Members, and to assess the relative strength of this claim, Class Counsel reviewed and analyzed thousands of pages of relevant documents and detailed spreadsheets (including time records, payroll records, employment policies, training lists and hiring lists). ¶ 35. To assess the potential value of Plaintiffs' claim arising from Defendants' alleged failure to pay wages for training, Class Counsel reviewed documents reflecting the total number of Interviewers who completed training,

total number of Trainees (*i.e.* individuals who underwent OAC's training to become Interviewers but never worked as Interviewers), and relevant policies and notices concerning Defendants' training practices in order to estimate the total number of hours Class Members spent training, which was then multiplied by the applicable minimum wage rate. ¶ 36.

Further, Class Counsel prepared an estimate of the amount of wages Defendants owe Class Members for "off-the-clock" work, *i.e.* when Interviewers allegedly report to work but cannot "clock-in" and accrue compensable time because they must wait to actually be seated at a computer terminal, when Interviewers allegedly must wait to log in to their computers due to computer malfunctions or other technical issues, when they are involuntarily logged out of their computers and thus "clocked-out" and must wait for their computers to restart and be able "clock" back in, or when OAC allegedly deducts a 30-minute breaks from an Interviewer's time even though such a break never took place. ¶ 41. To accomplish this, Class Counsel applied the data and information produced by Defendants to estimate the total number of shifts Interviewers worked each year, which was then multiplied by the applicable minimum wage rate, and then by the amount of time per shift estimated to have been spent working "off-the-clock." ¶ 42.

Moreover, Plaintiffs have alleged that Defendants failed to pay them and the NYLL Class members "call-in" pay, or at least four hours at the minimum wage rate for being called into and reporting to work on a given day. See 12 NYCRR § 142–2.3. Based on discussions with Plaintiffs, as well as with other former OAC employees, Class Counsel was able to estimate the number of instances in an average week in which an Interviewer was sent home after being "called in" but was not been paid any requisite "call-in" pay, which was then multiplied by the applicable "call-in" pay rate, and then by the number of workweeks over the relevant statutory period to approximate the amount of "call-in" pay Defendants owed to Class Members. ¶ 39.

Following expansive targeted discovery, on December 12, 2017 the parties participated in a full-day mediation session with experienced employment law mediator Hunter R. Hughes, Esq. ¶ 29. In preparation for the mediation, Class Counsel spent significant time reviewing the legal and factual merits of the claims to evaluate the strengths and weaknesses of the case, and to ensure that they were in a position to responsibly discuss and recommend settlement. ¶ 33. In connection with these efforts, Class Counsel prepared a detailed mediation brief containing extensive damages charts and factual and legal analyses. ¶ 47. At the mediation, the parties engaged in substantial, arm's-length negotiations, resulting in Plaintiffs' agreement to settle the claims brought against Defendants on a class-wide basis. ¶ 49. Notably, Class Counsel was able to negotiate a settlement in which Defendants agreed to pay a maximum settlement amount that represented 75% of the estimated *best case scenario* damages owed to the entire class with respect to Plaintiffs' minimum wage, "off-the-clock" and "call-in" pay claims. ¶ 44.

Following the mediation, Class Counsel spent a significant amount of time drafting and negotiating the terms of a Term Sheet, and then a formal settlement agreement, exchanging multiple rounds of revisions and engaging in deeply spirited negotiations with counsel for Defendants at each step. ¶ 51. Thereafter, Class Counsel put forth significant efforts drafting, conducting legal research for and preparing the Parties' Joint Unopposed Motion for Preliminary Approval, which was filed on February 27, 2018. ¶ 53; see Dkt. Nos. 26-28. In the meantime, Class Counsel was in regular communication with Plaintiffs about the status of the settlement. ¶ 54. On March 8, 2018, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval. See Dkt. No. 30.

To effectuate the class-wide notice and eventual payment process, the Parties agreed to retain the services of Dahl Administration, LLC ("Dahl") as Claims Administrator. ¶55. Class

Counsel has fielded many phone calls and emails from Class Members with various questions about the settlement, including how the settlement allocations were determined and what steps they needed to take in order to participate in the settlement.  ¶ 60.

Considering the substantial time dedicated to the investigation, prosecution, and resolution of this matter, the successful resolution reached, as well as the subsequent notice and approval processes, if the Court were to apply a lodestar cross-check to Class Counsel's award request, Class Counsel believes that the Court would find Class Counsel's request to be reasonable.  "Where the [lodestar method] is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the District Court.  Instead the reasonableness of the claimed lodestar can be tested by the Court's familiarity with the case."  Goldberger, 209 F.3d at 50.  The lodestar is determined by multiplying the hours reasonably expended by a reasonable hourly rate, followed by a multiplier based on factors such as the quality of representation and results achieved.  See Hicks v. Morgan Stanley, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005); see also Goldberger, 209 F.3d at 47; Parker v. Jekyll and Hyde Entm't Holdings, L.L.C., No. 08 Civ. 7670 (BSJ), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).

To date, Class Counsel has expended 409.9 hours performing the tasks noted above.  See Ex. 9.  These hours are reasonable for a case like this one, and were compiled from contemporaneous time records maintained by each attorney and paralegal working on the case. Class Counsel used a small team of attorneys and staff members at any one time in order to minimize duplication of efforts.  ¶ 63.  Moreover, wherever feasible and appropriate, Class Counsel assigned work to paralegals that otherwise would have had to be done by attorneys, such as fielding and responding to phone calls and emails from Class Members, communicating with

the Claims Administrator, preparing initial drafts of correspondence and other documents, and

entering class-wide data into and formatting spreadsheets containing damages analyses.  Id.

Such paralegal assistance minimized the amount of attorney time needed in this case.  ¶ 64.

Class Counsel's regular hourly rates charged to and paid by hourly paying clients for attorney

and staff time are $700.00-$850.00 per hour for partner time, $350.00-$650.00 per hour for

associate and senior associate time and $180.00 per hour for paralegal time, as demonstrated by

numerous hourly retainer agreements over the last three years.  See Ex. 7.   However, based on

discounted hourly rates of $450 for Wigdor LLP Founding Partner Douglas Wigdor, $325 for

Senior Associate Tanvir Rahman, $200 for non-Senior Associates, and $125 for Paralegals,

Class Counsel's attorneys' fees as a lodestar in this action total $110,300.00.  ¶ 65.  Applying a

multiplier of 4.4 to this lodestar leads to Class Counsel's requested fees of $490,398.16.  Id.

These hourly rates are reasonable based on the rates regularly charged for attorney and staff time

within this District, with recent courts in this district finding hourly rates ranging from $200 to

$450 for partners, $200 to $325 for associates and $100 to $125 for paralegals to be reasonable.

See Hall v. Prosource Techs., LLC, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *12-13

(E.D.N.Y. Apr. 11, 2016) (identifying a range of hourly rates prevailing in this district, and

holding that partner with 12 years of experience litigating wage and hour lawsuits should be

awarded hourly rate of $450); Ramos v. Nikodemo Operating Corp., No. 16-CV-1052

(KAM)(JO), slip op. at 21 (E.D.N.Y. Aug. 7, 2017) (ECF No. 42) ("Although the hourly billing

rates ranging from $125 per hour for paralegals to $450 per hour for senior partners are

somewhat on the high end of fee awards in this district, both are within the range awarded in

wage and hour cases in this district."); Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 1 5

Civ. 4145 (ADS)(SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6. 2016) (determining, in FLSA

cases, rates up to $450 for partners, $325 for senior associates, and $200 for junior associates);
Bedasie v. Mr. Z Towing, Inc., 2017 WL 5664848 (E.D.N.Y. Nov. 27, 2012)(approving hourly
rate of $325 for senior associate who performed majority of work on the case).

Moreover, there is no shortage of hourly billable work at Wigdor LLP.  Wigdor LLP
turns away hourly paying clients on a regular basis, given its case load and commitments to
contingency clients.  Of course, Wigdor LLP is also unable to take on all the contingency clients
who contact the firm with potentially meritorious cases, and is forced to turn down the vast
majority of potential clients who contact the firm.  ¶ 70.  In addition, for its contingency work,
the firm may not necessarily end up getting paid, and also runs the risk of getting paid at a rate
well below its regular billable hourly rates.  ¶ 71.  Given this construct, any additional risk
associated with taking on contingency clients (such as a court not approving a one-third
contingency fee) would make it even more difficult than it already is for Wigdor LLP to
represent employees (like the Class Members in this case) who deserve high quality
representation but are unable to pay the firm's regular hourly rates.  ¶ 72.  For these reasons,
amongst many others described herein, Wigdor LLP's requested one-third contingency fee is
extremely fair and reasonable.

Additionally, Class Counsel's fee applications using far lower rates have been approved
by courts within this District.  See, e.g., Adler, et al. v. 20/20 Companies, et al., No. 09 Civ. 439
(LDW)(ARL), Dkt. Nos. 62; 65 (E.D.N.Y. Sept. 7, 2012) (approving fee application at level
above lodestar rate given Class Counsel's hourly billing rates of $750 for partner time, $300-
$600 for associate time and $180 for paralegal time).

Furthermore, courts regularly approve fee applications involving cross-checks with
multipliers of up to 8 times the lodestar, and in some cases, even higher.  See, e.g., Vizcaino, 290

12

F.3d at 1052–54 (listing nationwide class action settlements where multiplier ranged up to 8.5 times); Beckman, 293 F.R.D. at 482 (approving attorneys' fees representing 33% of settlement fund, totaling $1,617,000, 6.3 times lodestar); Davis, 827 F. Supp. 2d at 185 (awarding multiplier of *5.3* in wage and hour class action); Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (approving one-third percentage sought, and noting that "Courts routinely award lodestar multipliers between two to six."); Maley v. Dale Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding that the "***modest multiplier of 4.65*** is fair and reasonable") (emphasis added); Steiner v. Am. B'casting Co., Inc., 248 Fed.Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); Ramirez v. Lovin' Oven Catering Suffolk, Inc., No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar, where lodestar was $174,671.25); Rabin v. Concord Assets Group, Inc., No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (approving fees where the ***multiplier was 4.4***); In re RJR Nabisco, Inc. Sec. Litig., No. 88 Civ. 7905 (MBM), 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (approving fees where the ***multiplier was 6***); Buccellato v. AT & T Operations, Inc., No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); New England Carpenters Health Benefits Fund v. First Databank, Inc., No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); In re Cardinal Health Inc. Sec. Litig., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six); In re Rite Aid Sec. Litig., 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding multiplier of

seven); Cosgrove v. Sullivan, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

When the total hours expended in bringing this matter to a resolution to date are multiplied by Class Counsel's hourly billable rates, the resulting lodestar figure is **$110,300.00.** ¶ 65. If the Court were to apply a multiplier of approximately 4.4, it would arrive approximately at Class Counsel's current request of $490,398.16. Id. This low multiplier demonstrates that the fee requested is eminently reasonable under the circumstances. See In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d at 590 ("Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a 'cross check' for a percentage of recovery analysis, counsel may be entitled to a 'multiplier' of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class . . . In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"). Indeed, applying only the lodestar method would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result. As such, the first Goldberger factor strongly supports Class Counsel's fee request and the application of a reasonable multiplier.

## 2.   Magnitude and Complexity of the Litigation

This class action settlement will bring final resolution to the claims of 5,506 individuals, which covers a period of nearly seven years. Under the second Goldberger factor, the size and difficulty of the issues in a case are significant factors to be considered in making a fee award. See Goldberger, 209 F.3d at 50; In re Prudential Sec. Inc. Ltd. P'ship. Litig., 912 F. Supp. 97, 100 (S.D.N.Y. 1996); Jemine v. Dennis, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation"). Here, the sheer size of the class (5,506 individuals) and the complexity of the factual and legal

questions involved (a "hybrid" action with both state and federal wage and hour claims) further support the reasonableness of the fee award.  See Johnson v. Brennan, No. 10 Civ. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept 16, 2011) ("Courts have recognized that wage and hour cases involve complex legal issues."); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and that '[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action . . . .'") (quoting Johnson, 2011 WL 4357376, at *17); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.").  Further, at all times during settlement negotiations, negotiations were conducted on an arm's-length basis.  ¶ 49.  Class Counsel reviewed a substantial amount of data to value the Class Members' claims as well as to assess Defendants' defenses.  The second Goldberger factor strongly supports Class Counsel's attorneys' fee request and the application of a reasonable multiplier.

    3. <u>Risk of Litigation</u>

   The risk of litigation is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."  In re Elan Sec. Litig., 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (quoting Goldberger, 209 F.3d at 54 (internal quotation marks omitted)).  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  See Detroit v. Grinnell Corp., 495 F.2d 448, 470 (2d Cir. 1974).  "[D]espite the most vigorous and competent of efforts, success is never guaranteed."  Id. at 471.

   Class Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk.  Large-scale wage

and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking the representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due to the contingent nature of the customary fee arrangement, plaintiffs' lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee at all, and potentially having expended tens of thousands of dollars in expenses without recoupment.  Class Counsel stood to gain nothing in the event that the case was unsuccessful.  Indeed, OAC has closed down its New York operations as of December 31, 2017 further demonstrating the risks assumed by Class Counsel, as it is unclear whether Defendants would be able to withstand a judgment larger than the recovery achieved in the Settlement.  ¶ 73.

As such, Class Counsel should be awarded attorneys' fees that recognize the significant assumptions of risk associated with representing employees of a relatively modest-sized company in a niche industry, where concerns over collectability are significant, in contingency cases.  ¶ 74.  Otherwise, quality attorneys would be deterred from representing employees working for small employers, which would have the unfortunate result of decreasing the likelihood that small employers will be held accountable for their wage and hour violations.

Moreover, the circumstances of this case presented numerous hurdles to a successful recovery because of the fact-intensive nature of proving liability under the applicable wage laws, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages.  ¶¶ 76-77.  As discussed in prior applications to the Court, although Class Counsel believes that this case is strong, it is arguably defensible on many grounds.  Plaintiff would have to overcome Defendants' defenses both as to liability and damages, including, *inter alia*:  (i) that OAC's Interviewer training program qualified as a non-compensable "educational

or vocational training program," particularly because those who underwent training were not guaranteed jobs and were told that they would not be entitled to wages during their time spent training; (ii) that, even if the training program did not qualify as a non-compensable training program, any damages would be offset by the $100-$150 sign-on bonus paid to Interviewers upon completion of training; (iii) that any "off-the-clock" or uncompensated work was *de minimis*, and even if it was not *de minimis*, would be unique to each individual Interviewer, and thus not worthy of class treatment; (iv) that Defendants did not violate the "call-in" pay provisions of the NYLL (for which there is scant case law and guidance from the NYSDOL to begin with) because they were within their right to send home any Interviewers who showed up to work late, particularly because this was a bona fide policy that OAC included in its employee handbook and other documentation issued to Interviewers; (v) that to the extent there is any "call-in" pay violation liability, such amount should be offset against any amounts paid by OAC in connection with prior NYSDOL settlements for substantially similar "call-in" claims; (vi) Plaintiffs would not be entitled to "double dip" by collecting both penalties resulting from purportedly receiving inaccurate wage statements, as well as damages from purported wage violations tied to the particular wage statement-related inaccuracies; and (vii) Plaintiffs' inaccurate wage statement claim (for which, again, there is scant case law and guidance on how such claim and its penalties should be interpreted and enforced) would not be worthy of class treatment since it would require individualized inquiries into whether inaccuracies existed in each relevant wage statement.  ¶ 77.  Most if not all of these disputes would ultimately amount to a battle of credibility, which is inherently uncertain.

In addition, Defendants would almost certainly contest class treatment of the Class Members' claims on the grounds that they were too individualized to certify a class and/or

collective.  ¶ 78.  While Plaintiffs believe that they would ultimately establish Defendants'

liability, doing so would require significant factual and legal development.  Id.  Given Class

Counsel's experience, Class Counsel is realistic and understands that a trial and the inevitable

appeals process are inherently uncertain in terms of outcome and duration.  ¶ 81.

Despite these risks, Class Counsel secured a substantial settlement against a modest sized

employer going out of operation in New York in a niche industry, which will be paid reasonably

soon (absent an appeal).  Accordingly, the third Goldberger factor strongly supports Class

Counsel's attorneys' fee request and the application of a reasonable multiplier.

### 4.   Quality of Representation

"To determine the quality of the representation, courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  Taft v.

Ackermans, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)

(internal quotation marks omitted).  In this case, the results speak to the quality of the

representation.

The $1,500,000.00 maximum settlement amount represents a tremendous value given the

attendant risks of litigation, even though recovery potentially *could* be greater if Plaintiffs

succeeded on all claims at trial, and were able to obtain and maintain class certification status

through trial on all claims, and survived an appeal.  Indeed, $1,500,000 amounts to 75% of the

*best case scenario* damages for Class Members' unpaid wage claims as estimated by Class

Counsel, which does not take into account any of Defendants' myriad viable defense.  ¶ 44.

Further, the settlement amount will be available to Class Members who submitted claim forms

relatively quickly and without the uncertainty and delay of a trial, or risks of a judgment not

being fulfilled.  In addition, Class Members who have submitted claims will be receiving an

average payout of approximately $348.83 (calculated based on a formula that accounted for the number of days they have worked for Defendants during the relevant statutory period and/or their position at OAC), a substantial recovery for employees of a data collection company who were generally modestly compensated at or slightly above the minimum wage.  See Ex. 6 at ¶ 10; ¶ 74.

Determining the reasonableness of a settlement amount "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  Frank, 228 F.R.D. at 186. "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  Id.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982);  see also Cagan v. Anchor Sav. Bank FSB, No. 88 Civ. 3024, 1990 WL 73423, at *12 (E.D.N.Y. May 2, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million").

Class Counsel's skill and experience were directly responsible for the favorable settlement, which was achieved in an efficient and aggressive manner without any significant Court intervention at an early stage of the litigation.  The diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and Class Members' interests.  Denying Class Counsel's fee request would, in effect, punish and disadvantage Class Counsel for aggressively and efficiently litigating this case and bringing it to a quick and highly favorable resolution.  Therefore, the fourth Goldberger factor strongly supports Class Counsel's attorneys' fee request and the application of a reasonable

multiplier. See, e.g., Velez v. Majik Cleaning Serv., Inc., No. 03 Civ. 8698 (KNF), 2007 WL

7232783, at *8 (S.D.N.Y. June 25, 2007) (recommending that "[l]ead Counsel's experience

representing plaintiffs in class action" supported a 31% contingency fee award); Frank, 228

F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee

award of 40% of a settlement fund).

      5.    Fee in Relation to the Settlement

Courts also consider the size of the settlement to ensure that the percentage award does

not constitute a "windfall." See, e.g., In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510, 2007

WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). Courts in this Circuit have routinely

granted requests of approximately one-quarter to one-third of the fund in cases with settlement

funds substantially larger than this one. See, e.g., Raniere, 310 F.R.D. at 221 (in settlement fund

of $4.65 million with reversion of unclaimed funds, approving fee application of one-third of

fund); Munir, No. 13 Civ. 1581 (VSB), Dkt. No. 155 (S.D.N.Y. Jan. 8, 2015) (in $3.5 million

settlement, approving a fee application of one-third of fund); Khait v. Whirlpool Corp., No. 06

Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million

settlement fund in FLSA and multi-state wage and hour case). Notably, Plaintiffs Pabon and

Charles each executed 33% contingency retainers with Class Counsel. See Ex. 10. Thus, the

fifth Goldberger factor supports Class Counsel's attorneys' fee request and the application of a

reasonable multiplier.

      6.    Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees.

In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have

taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." In re Sumitomo Copper Litig., 74 F. Supp. 2d at 399. The FLSA and the New York Labor Law are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes. See, e.g., Prasker v. Asia Five Eight, LLC, No. 08 Civ. 5811 (MGC), 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); Goldberger, 209 F.3d at 51 (commending the "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Courts have recognized that fee awards in cases like this one serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. See Roper, 445 U.S. at 338-39. Class actions are also an invaluable safeguard of public rights. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985); J.I. Case Co. v. Borak, 377 U.S. 426, 433-34 (1964). Courts, therefore, look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." Grace v. Ludwig, 484 F.2d 1262, 1267 (2d Cir. 1973).

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. Class Counsel served the important function of protecting the wage and hour rights of thousands of employees who might not otherwise have the means or incentive to pursue individual actions. See Mazzei v. Money Store, 288 F.R.D. 45, 65 (S.D.N.Y.2012)

(observing that, where an individual claimant's claim is for a minimal recovery, "proceeding

individually would be prohibitively expensive"); see also Diaz v. Scores Holding Co., Inc., No.

07 Civ. 8718, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011) (awarding attorneys' fees

where "[t]he work that Plaintiffs' Counsel has performed in litigating and settling [the] case

demonstrate[d] their commitment to the FLSA collective and to representing the collective's

interests"). The violations alleged in this action are of a longstanding duration. Nevertheless,

apparently no state or federal governmental action (aside from an action by the New York

Department of Labor largely concerning pre-2014 "call-in" pay practices) has ever been brought

against Defendants to correct the purported deficiencies. ¶ 74. The award of the requested fees

will encourage the prosecution of similar claims and further a significant public interest goal.

Moreover, as discussed above, Class Counsel undertook this representation understanding the

risk that they would not ultimately recover anything for their time and effort. Thus, the

application of a lodestar multiplier will both reward Class Counsel for their representation in this

action and will provide incentive to other competent counsel to undertake similar representations

on behalf of potentially vulnerable employees. Therefore, the sixth Goldberger factor strongly

supports Class Counsel's attorneys' fee request.

> **D.     Class Counsel's Attorneys' Fees and Expenses Should Be Based on a
> Percentage of the Maximum Settlement Fund**

An attorney "who recovers a common fund for the benefit of persons other than himself

or his client is entitled to a reasonable attorney's fee from the fund *as a whole*." Cent. States Se.

& Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 249

(2d Cir. 2007) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (emphasis added).

In other words, and as the Second Circuit has held, an attorney's entitlement to reasonable fees

as a percentage of an entire class settlement fund stands even where a class action settlement

agreement, like the one at issue here, requires participating class members to affirmatively "claim" their settlement funds, such as by submitting claim forms, and envisions unclaimed funds reverting back to the defendant.  See Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436–37 (2d Cir. 2007) (finding that district court erred where it "calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel."); Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (finding that district court abused its discretion where it "should have calculated their fee as one-third of the entire $4.5 million settlement fund, for a fee of about $1.5 million, rather than calculating it as one-third of the class members' claims against that fund, for a fee of only $3,300.").  In fact, the Second Circuit in Masters was adamant that it was siding with its sister circuits, the Ninth and Eleventh Circuits, by holding that "[t]he entire [f]und, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."  Masters, 473 F.3d at 437 (citing to Waters v. Int'l. Precious Metals Corp., 190 F.3d 1291, 1295 (11th Cir. 1999) and Williams, 129 F.3d 1026 (9th Cir. 1997).

Here, Class Counsel was able to secure a $1,500,000 maximum settlement fund for Plaintiffs and the Class.  As mentioned above, Class Counsel expended substantial time and labor to achieve this result.  Class Counsel was ultimately able to secure such a substantial settlement fund on behalf of the Class on the condition that any unclaimed funds would revert to Defendants.  ¶ 50.  Simply put, if the Parties did not agree to reversion, the Settlement Fund would have been much lower than $1,500,000, which would mean that Class Members who will participate in this settlement by submitting claim forms would have ultimately received far less

than what they will receive now.  Accordingly, it would not only be contrary to well-established

Second Circuit case law, but would unjustly penalize Class Counsel to not award fees that are a

percentage of the *total* Settlement Fund which they were able to secure for the Class.

Additionally, Class Counsel's fee should not be tied to or contingent upon the number of

Class Members who submitted claim forms and/or the aggregate value of their claimed funds.

Class Counsel took more than adequate and reasonable measures to ensure that all Class

Members received notice of the settlement and could easily submit a claim form.  Indeed, Class

Members were sent the Notice to their last known address, and for some, to the e-mail address

OAC had for them on file.  ¶ 56.; Ex.6 at ¶ 8.  Dahl also engaged a professional address search

firm for tracing addresses that appeared to be stale and undeliverable, and obtained updated

addresses for 981 Class Members who were re-sent a Notice.  Ex. 6 at ¶ 9.  Further, the Notice

sent to Class Members included a toll-free number which allowed Class Members to call Dahl

and ask questions about the settlement, including how to submit a claim form, and their

estimated settlement shares.  Ex. 6 at ¶ 5.  Class Members were also told in the Notice that they

could contact Class Counsel with any questions or concerns.  ¶ 59.; Ex. 5.

Further, whereas courts have approved notice periods as short as 30 days (see, e.g.,

Capsolas v. Pasta Res. Inc., No. 10 Civ. 5595 (RLE), 2012 WL 1656920, at *3 (S.D.N.Y. May 9,

2012) ("Class Members will have 30 days from the date the Notice is mailed to opt out of the

settlement or object to it."); Gorey v. Manheim Servs. Corp., No. 10 Civ. 1132, 2010 WL

5866258, at *6 (S.D.N.Y. Nov. 10, 2010) ("The deadline for potential plaintiffs to opt in to this

collective action will be 30 days after the Court approves Plaintiff's notice and consent forms"),

Class Counsel was able to negotiate a lengthy *75 day period* for Class Member to submit their

claim form.  Ex. 6 at ¶ 7.  Further, the Court-approved Notice provided Class Members with

clear and simple instructions about what they needed to do in order to participate in the settlement.  Ex. 5.  Class Members were provided with self-addressed stamped envelopes in which to return their Claim Forms, which they could do via regular mail, fax, or even email (Ex. 5), which, given the proliferation of cell phone cameras, could reasonably be done in a matter of seconds.  At the conclusion of the mailing process, only 618 of the 5,509 Notices mailed appeared to have never been delivered.  Ex. 6 at ¶ 9.  In addition to mailing Notices, Dahl also e-mailed Class Members for whom they were provided e-mail addresses.  Ex. 6 at ¶ 8.  When all was said and done, approximately 90% of the 5,509 putative Class Members appear to have received notice either via mail or email.  Ex. 6 at ¶ 9.  21.7% of Class Members submitted claim forms – in line with the typical participation rate in wage and hour class actions such as this one (see Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 100, n. 8 (E.D.N.Y. 2015) (describing return of 20% of claims forms as the "average range" of participation)) – claiming 47.5% of the fund allocated to Class Members.  Ex. 6 at ¶ 10.  Accordingly, there is no question that Class Counsel made diligent efforts to ensure that Class Members received notice of this settlement and had every reasonable opportunity to submit a claim form, and that a sizable portion of the Class submitted claim forms.  As such, Class Counsel's fees should not be impacted by the number of Class Members that ultimately submitted claim forms or the aggregate value of those funds that have been claimed, but should be based on a percentage of the total negotiated settlement fund.

## II.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

"It is well settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  In re Bear Stearns Cos., Inc. Sec., Deriv., &

ERISA Litig., 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (citation omitted) (internal quotation

marks omitted).  Here, Class Counsel has incurred expenses of $9,601.84. See Ex. 9. Class

Counsel respectfully requests $9,601.84 from the settlement fund as reimbursement for expenses

incurred in this litigation.

**CONCLUSION**

For the reasons set forth above, Class Counsel respectfully requests that the Court grant

Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees for Class Settlement, and enter an

Order awarding attorneys' fees and expenses in the total amount of $500,000.

Dated: August 7, 2018
      New York, New York                Respectfully submitted,

                                **WIGDOR LLP**

                                By: _____
                                      Douglas H. Wigdor
                                      Tanvir H. Rahman

                                85 Fifth Avenue
                                New York, NY 10003
                                Telephone: (212) 257-6800
                                Facsimile: (212) 257-6845
                                dwigdor@wigdorlaw.com
                                trahman@wigdorlaw.com

                                *Attorneys for Plaintiffs and the Proposed FLSA*
                                *Collective and NYLL Class*