

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Tanvir H. Rahman**
trahman@wigdorlaw.com

July 3, 2019

**VIA ECF**

The Honorable James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, New York 11201

       Re:    <u>Charles, *et al.* v. Opinion Access Corp., *et al.*</u>; Index No. 16 Civ. 6868 (KAM)(JO)

Dear Judge Orenstein:

We represent Plaintiffs and the putative class in the above-referenced matter, and write jointly with Defendants to seek approval of the revised settlement agreement (the "Revised Agreement," Ex. 1). For the Court's convenience, we have attached the original agreement previously submitted to the Court (the "Original Agreement") (<u>see</u> Ex. 2), and a "redline" which highlights the modifications made thereto. <u>See</u> Ex. 3. For the foregoing reasons, we believe the Revised Agreement sufficiently addresses the Court's previously stated concerns regarding the Original Agreement, and is otherwise fair and reasonable and should be approved by the Court.

**I.**     <u>**No Portion of the Settlement Fund Will Revert to Defendants**</u>

The Original Agreement created a settlement fund of *up to* $1.5 million, with reversion to Defendants of any unclaimed funds, unredeemed funds, unapproved incentive awards and attorneys' fees that Class Counsel Wigdor LLP ("Wigdor") could have requested per the terms of the agreement but did not request. Ex. 2 at ¶¶ 1.21; 6.1(A); 6.1(C); 6.3(B); 6.4(B). In contrast, the Revised Agreement creates an aggregate settlement fund of $1 million (the "Settlement Fund"), no portion of which will revert to Defendants.[1] Ex. 2 at ¶¶ 1.17; 5.1(B)(1) and (2).

Under the terms of the Revised Agreement, any settlement funds issued to Authorized Claimants[2] from the first round of settlement checks which are not redeemed will now be redistributed *pro*

---

[1]     As we previously informed the Court (<u>see</u> Dkt. No. 47 at 3), had the Original Agreement been fully approved, Defendants would have been obligated to pay a total of $997,058.64. Defendants have agreed to now pay slightly more than the previous amount.

[2]     Unless otherwise defined, capitalized terms are defined in the Revised Agreement.



*rata* to Authorized Claimants who timely cash their first settlement checks. Ex. 1 at ¶ 5.1(B)(2).[3] Further, any unapproved Incentive Awards to the two named plaintiffs and opt-in plaintiff Graciano will now also be redistributed *pro rata* amongst Authorized Claimants. Id. at ¶ 5.1(B)(1). Likewise, any unapproved attorneys' Fees and Costs requested by Wigdor (as well as any Fees and Costs that Wigdor could have requested but did not request) will now also be redistributed *pro rata* to Authorized Claimants. Id.

## II. Wigdor is Seeking Reduced Attorneys' Fees of $300,000, or 30 Percent of the Actual Recovery, Plus Costs

Pursuant to the terms of the Revised Agreement, Wigdor has agreed to reduce the amount of attorneys' fees and costs sought by $190,065.16 (which will now be paid to Authorized Claimants). Wigdor previously requested $500,000 in combined Fees and Costs, or 1/3 of the $1.5 million maximum settlement fund created pursuant to the Original Agreement. Wigdor is now seeking fees of $300,000.00 (which is 30 percent of the actually paid sum)[4] and reimbursement of $9,601.84 in costs,[5] for a total of $309,601.84.

Based on the number of hours expended through the filing of the final approval application on August 7, 2018, and the hourly billable rates previously submitted to the Court (see Dkt. No. 47-2), Wigdor's lodestar is $110,300.00. We note that in calculating the lodestar, we did not include the additional time spent after submitting the final approval application which has required a meaningful amount of effort and time. The reasonableness crosscheck generates a multiplier of 2.71 (down from 4.4). This is well within the range of multipliers that courts in the Second Circuit have approved in similar cases. See Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage-and-hour class action); Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("A lodestar multiplier of three falls well within the range granted by our Courts and equals the one-third percentage being sought."); Maley v. Dale Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable").

While we believe a one-third contingency is appropriate and is generally approved by Courts within the Second Circuit in wage-and-hour matters, we also acknowledge that the Court has

---

[3] Unredeemed settlement funds from the second round of settlement checks, if any, will be donated to a *cy pres* designee, which will be the Legal Aid Society of New York. Id.

[4] Per the terms of the Revised Agreement, Wigdor could have petitioned for an award of Fees of up to one-third of the Settlement Fund, or $333,333.00. See Ex. 1 at ¶ 5.4(A).

[5] This is the amount of litigation costs Wigdor incurred through August 7, 2018 only, the date on which the previous final approval application was submitted. See Dkt. No. 39-9.



The Honorable James Orenstein
July 3, 2019
Page 3

discretion in determining the appropriate fee award.  A one-third fee mirrors market rates, and reduction from that rate penalizes an attorney for receiving a beneficial result in prompt and expeditious fashion.  Nonetheless, we are seeking somewhat less than the standard one-third fee in order to provide further compromise and offer additional recovery for the plaintiffs and the class.  As a result of this reduction in attorneys' fees (*i.e.*, with $190,065.16 more paid to Authorized Claimants), as well as other modifications to the Original Agreement: (i) the highest payment to an Interviewer Authorized Claimant will be $7,218.77 (up from $5,242.36); (ii) the average payment to an Interviewer Authorized Claimant will be $526.21 (up from $383.12); and (ii) all Trainee Authorized Claimants will receive an award of $89.61 (up from $65.08).

**III.**     **Class Members Need Not be Sent New Notices**

It is not necessary for putative Class Members to receive an additional or revised notice due to the Revised Agreement.  Each Authorized Claimant stands to receive a *greater* monetary settlement amount than they would have been entitled to pursuant to the terms of the Original Agreement, without providing any further or additional consideration.  Authorized Claimants are only in a better position as a result of the modified terms of the Revised Agreement.  Authorized Claimants will also be receiving settlement payments in accordance with the same timeline set forth in the Original Agreement, as all installment payments (which will now be two installments rather than three) will be made by November 1, 2019.  Ex. 1 at ¶5.1(B)(2); Ex. 2 at ¶ 6.1(B)(3).  If anything, Authorized Claimants will be prejudiced if a new round of notices are issued as this will cause further delay and further cost, and further deplete the Settlement Fund and thereby reduce each Authorized Claimants' individual settlement awards.

In addition, the remaining Class Members who are not Authorized Claimants will not be placed in any different or worse position by virtue of the terms of the Revised Agreement, thus obviating the need for any additional or further notice.  Putative Class Members were already provided with notice of the Original Settlement and a sufficient opportunity to submit a Claim Form, either via email, fax or mail.  Putative Class Members who did not opt out prior to the Bar Date will still be subject to an identical release of claims.  Ex. 1 at ¶ 1.28 ("For the avoidance of doubt, this provision defining the term 'Released Class Claims' is identical to the provision defining 'Released Class Claim' set forth in the First Agreement.").  Moreover, since Defendants are not paying a higher settlement amount now than they could have potentially had to pay under the Original Agreement, there is no prejudice to Class Members who did not return Claim Forms and did not become Authorized Claimants.  As such, since the Revised Agreement does not alter or worsen the positions of the Authorized Claimants or remaining Class Members in any meaningful way, there is no need to issue them new or revised notices.



The Honorable James Orenstein
July 3, 2019
Page 4

For the foregoing reasons, the parties respectfully request the Court's approval of the Revised Agreement and Wigdor's attorneys' Fees and Costs request.

Respectfully submitted,

Tanvir H. Rahman

cc: Counsel for Defendants (*via* ECF)

Enc.