# Exhibit 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------

PRESTON CHARLES and CARLOS PABON, on behalf of themselves and on behalf of other similarly situated individuals,

Plaintiffs,

v.

OPINION ACCESS CORP. and JIMMY R. HOFFMAN, in his professional and personal capacities;

Defendants.

No. 16-cv-6868

**REVISED
SETTLEMENT
AGREEMENT AND
RELEASE**

---------------------------------------------------------------------------

This Revised Settlement Agreement and Release, along with all exhibits annexed hereto, ("Agreement") is entered into by and between Plaintiffs Preston Charles and Carlos Pabon ("Named Plaintiffs") and Opt-in Plaintiff Freddy Graciano ("Graciano", and together with Named Plaintiffs, "Plaintiffs") on behalf of themselves and on behalf of other similarly situated individuals (hereinafter defined as the "Settlement Class") and Defendants Opinion Access Corp. ("OAC"), Jimmy R. Hoffman ("Hoffman") (together, "Named Defendants") and Joseph Raphael ("Raphael") (with Named Defendants, "Defendants," and together with the Plaintiffs, the "Parties").

**RECITALS AND BACKGROUND**

A.     Named Plaintiffs filed a Class Action Complaint against Named Defendants, which is now pending in the United States District Court, Eastern District of New York (the "Court"), designated as No. 16-cv-6868 (the "Action"), in which Graciano later opted into.

B.     Defendants have defended and intend to vigorously contest each and every claim in the Action, deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses.  Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Action.

C.     Wigdor LLP ("Plaintiffs' Counsel" or "Class Counsel") and the Plaintiffs analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiffs and those similarly situated individual putative class members, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel and the Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and Settlement Class Members (defined below).

D. On December 12, 2017, the Parties participated in a full-day mediation session, which was conducted by Hunter Hughes, Esq., a highly-regarded, experienced mediator who has successfully negotiated settlements in similar class and collective actions involving wage and hour claims against other New York corporations. ~~Pursuant to engaging in extensive mediation, Plaintiffs, the Settlement Class and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.~~The mediation resulted in a settlement in principle which was then memorialized in an agreement entered into by the Parties and fully-executed as of February 27, 2018 (the "First Agreement").

E. On or about March 9, 2018, the Court granted preliminary approval of the First Agreement, and approved the issuance of notice to Class Members advising them of the terms of the First Agreement and how they could participate in the settlement reached in principle.

F. Following the Court's granting of preliminary approval of the First Agreement, Defendants complied with the requirements of 28 U.S.C. § 1715 concerning the notifications to appropriate Federal and State officials of the First Agreement.

G. Following the Bar Date (defined below), on August 8, 2018, the Parties submitted a motion to the Court for final approval of the First Agreement.

H. On or about April 3, 2019, the Parties attended a settlement conference presided over by The Honorable James Orenstein, during which they agreed to revise certain terms of the First Agreement, which is memorialized in this Agreement.

I. It is the Parties' belief and understanding that if the terms of this Agreement are judicially approved and go into effect, each Authorized Claimant (defined below) will receive a greater monetary settlement amount than they would have been entitled to pursuant to the terms of the First Agreement, without providing any further or additional consideration.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1. Abridged Class List.** The term "Abridged Class List" refers to a list of all putative Class Members that ~~will be~~was provided to Class Counsel containing each putative Class Member's: (i) total number of days worked during the Settlement Period; (ii) job positions (*i.e.* Interviewer or Trainee); and (iii) each Class Member's unique 4~~5~~-digit identification number (which shall not be comprised of ~~four~~ consecutive numbers appearing in the Class Member's social security number).

**1.2.**   **Authorized Claimant.** "Authorized Claimant" means Plaintiffs and each Class Member (or the authorized legal representative of such Class Member~~,~~) who has timely ~~files~~filed a completed Claim Form, in accordance with the terms of ~~this~~the First Agreement, or who filed an untimely Claim Form but whom the Parties have agreed should be considered to be an Authorized Claimant, and who is otherwise eligible to receive a Settlement Check pursuant to the terms of this Agreement.  For the avoidance of doubt, Plaintiffs are already Authorized Claimants upon court approval of this Agreement.

**1.3.**   **Bar Date.** "Bar Date" means the date by which any putative Class Member who ~~wishes~~wished to qualify as an Authorized Claimant must ~~file~~have filed a Claim Form, or who ~~wishes~~wished to be excluded from this settlement to ~~submit~~have submitted an Opt Out Statement, or who ~~wishes~~wished to object to the ~~Settlement~~settlement to ~~submit~~have submitted an Objection, except as otherwise provided ~~herein. Subject to~~in the ~~Court's approval, the~~First Agreement.  The Bar Date ~~shall be~~was August 8, 2018, which was seventy-five (75) days after the initial mailing of Notice by the Settlement Claims Administrator ("SCA").  To the extent a putative Class Member's Notice of Settlement ~~is~~was returned or otherwise determined to be undeliverable, such putative Class Members' Bar Date ~~shall be~~was extended to include 15 days from the date of any subsequent mailing (but no less than the original 75 days).

**1.4.**   **Claim Form.** "Claim Form" means the Court-approved Claim Form and Release.

**1.5.**   **Class and Class Member(s).** "Class" and/or "Class Member(s)" refer to all individuals who in New York (i) worked for OAC in the position of "Interviewer" for at least one day during the Settlement Period (referred to herein as "Interviewer Class Members")"; and (ii) any individual who participated in OAC's training program for "Interviewers" but who did not work as an Interviewer for at least one day ~~as an Interviewer~~ during the Settlement Period (referred to herein as "Trainee Class Members"), who ~~do~~did not submit a valid Opt-Out Statement.

**1.6.**   **Class Counsel**. The terms "Class Counsel" and "Plaintiffs' Counsel" refer to Douglas H. Wigdor, Esq~~.~~., David E. Gottlieb, Esq., Jeanne M. Christensen, Esq. and Tanvir H. Rahman, Esq., of Wigdor LLP, which is located at 85 Fifth Avenue, New York, New York 10003.

**1.7.**   **Class List.** The term "Class List" refers to a list of all putative Class Members containing each of their: (i) names; (ii) last known addresses, phone numbers and email addresses (Defendants ~~will conduct~~conducted a diligent, good faith search of their records for email addresses of putative Class Members); (iii) job positions (*i.e.* Interviewer or Trainee); (iv) total number of days worked during the Settlement Period; (v) each Class Member's unique 4~~5~~-digit identification number (which ~~shall~~was not ~~be~~ comprised of ~~four~~ consecutive numbers appearing in the Class Member's social security number); and (vi) social security numbers (for skip trace purposes only), if available, contained in a confidential document that Defendants ~~shall provide~~have provided to the SCA only.  The Class Member List is to be used by the SCA to effectuate the settlement; it may not be copied, disseminated, or used for any other purpose.

~~**1.8.1.1.Fees and Costs.** "Fees and Costs" means Plaintiffs' Counsels' attorneys' fees and costs.~~

3

1.9.1.8. **Court**. "Court" means the United States District Court, Eastern District of New York, which is located at 225 Cadman Plaza E., Brooklyn, New York 11201.

1.10.1.9.  **Days.** "Days" means calendar days, unless otherwise specified.

1.11.1.10.  **Defendants**. "Defendants" mean OAC, Hoffman and Raphael.

1.12.1.11.  **Defendants' Counsel**. "Defendants' Counsel" means Eve I. Klein, Esq. and ~~JP Kernisan~~Katelynn Gray, Esq~~.~~. of Duane Morris, LLP, which is located at 1540 Broadway, New York, New York 10036.

1.13.1.12.  **Fairness Hearing.** "Fairness Hearing" means the anticipated hearing before the Court relating to the Application for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

**1.13.  Fees and Costs.** "Fees and Costs" means Plaintiffs' Counsels' attorneys' fees and costs.

1.14.  **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Incentive Awards, approving distribution of Fees and Costs ~~and Fees~~, and dismissing the Action with prejudice.

1.15.  **Final Effective Date.** The term "Final Effective Date" refers to the date that is thirty (30) days after the Court has entered a Final Order and Judgment of Dismissal with Prejudice (as defined below) approving this Agreement, provided that the time to appeal the Final Order and Judgment of Dismissal with Prejudice has expired and no notice of appeal has been filed.  However, in the event that a notice of appeal is filed, the Final Effective Date shall be the day after the date of the following event that occurs last: (1) any appeal from the Final Order and Judgment of Dismissal with Prejudice has been finally dismissed; (2) the Final Order and Judgment of Dismissal with Prejudice has been affirmed on appeal in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order and Judgment of Dismissal with Prejudice has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order and Judgment of Dismissal with Prejudice in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court.

1.16.  **Final Settlement Amount.** "Final Settlement Amount" means ~~the sum of the Individual Gross Amounts plus all Court-approved Fees and Costs and the Settlement Claims Administrator's costs.~~One Million Dollars ($1,000,000).

~~1.17.~~  **Gross Settlement Fund.** "Gross Settlement Fund" means One Million~~, Five Hundred Thousand~~ Dollars ($1,~~500,~~000~~).~~

1.18.1.17.  **Guaranteed Payout.** ~~"Guaranteed Payout" is the minimum amount Defendants will pay to Authorized Claimants, inclusive of Incentive Payments to Plaintiffs.  The Guaranteed Payout shall be 30% of the amount remaining in the Gross Settlement Fund~~

after Class Counsel's requested attorneys' fees and litigation costs of $500,000 and Settlement Claims Administrator's costs. ).

1.19.1.18.    **Incentive Award.** "Incentive Award" means that portion of the ~~Gross~~Final Settlement Amount requested by the Plaintiffs and approved by the Court as a reasonable incentive award to the Plaintiffs for representing the interests of the Class Members. Plaintiffs Charles and Pabon will be seeking an Incentive Award of no more than $15,000 each.  Plaintiff Freddy Graciano will be seeking an Incentive Award of no more than $5,000.

1.20.1.19.    **Individual Gross Amount.** "Individual Gross Amount" means the amount from the Gross Settlement Fund allocated to each individual Authorized Claimant, inclusive of any Court-approved Incentive Award and all employer withholding for FICA, Medicare and all other applicable payroll taxes~~.~~. 

1.21.1.20.    **Maximum Settlement Amount.** Maximum Settlement Amount means One Million ~~Five Hundred Thousand~~ Dollars ($1,~~500~~000,000) and is the maximum aggregate amount that Defendants shall be required to pay into the Qualified Settlement Fund under any circumstances inclusive of all Class Counsel's attorneys' ~~fees~~Fees and ~~costs~~Costs, settlement administration costs, payments to ~~Class Members~~Authorized Claimants (including any approved Incentive Award payments to Plaintiffs), and employer withholding for FICA, Medicare and all other applicable payroll taxes.

1.22.1.21.    **Plaintiffs.** "Plaintiffs" refers to Preston Charles, Carlos Pabon and Freddy Graciano.

1.23.1.22.    **Net Settlement Fund.** "Net Settlement Fund" means the aggregate of the Individual Gross Amounts to be distributed to all Authorized Claimants (which, for avoidance of doubt, includes any court approved Incentive Awards and all employer withholding for FICA, Medicare and all other applicable payroll taxes~~), which shall not be less than the Guaranteed Payout.~~).

1.24.1.23.    **Notice.** "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit which has already been disseminated to Class Members.

1.25.1.24.    **Objection.** "Objection" means a written statement that: (1) clearly identifies the written statement as an objection, such as "I object to the settlement in the Opinion Access Corp. Wage and Hour case"; (2) contains all reasons for the objection; (3) contains the Objector's name, address, and telephone number; and (4) is signed by the Objector.

1.26.1.25.    **Objector.** "Objector" means an individual Authorized Claimant who properly ~~files~~filed an objection to this Agreement.

1.27.1.26.    **Opt-Out Statement.** "Opt-out Statement" means a written statement that: (1) unconditionally states a putative Class Member's intention to opt out, such as "I opt-out of the settlement in the Opinion Access Corp. Wage and Hour case"; (2) includes the

putative Class Member's name, address, and telephone number; and (3) is signed by the putative Class Member.

**1.28.    Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Settlement Class for settlement purposes; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) directing the manner and timing of providing Notice to the Class Members; and (iv) setting the Fairness Hearing date.

~~1.29.~~1.27.    **Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement.

~~1.30.~~1.28.    **Released Class Claims.** "Released Class Claims" shall collectively mean any and all New York State and local wage-and-hour law claims, obligations, demands, actions, rights, causes of action and liabilities arising from or relating to employment at OAC, against any Released Defendant, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued on any date up through December 31, 2017, for wages, benefits and other remunerations of employment that in any way arise from or relate to the Class Members' employment at OAC, including, without limitation: (i) any and all claims, charges, demands, sums of money, actions, rights, promises, agreements, causes of action, obligations, and liabilities of any kind or nature whatsoever, at law or in equity, whether known or unknown, existing or contingent, suspected or unsuspected, apparent or concealed, which the Plaintiffs and/or any Class Members may have or claim to have against Defendants based upon or arising out of any facts, acts, conduct, omissions, transactions, occurrences, contracts, events, causes, matters, or things of any conceivable kind or character existing or occurring or claimed to exist or to have occurred which relate to: (i) the nonpayment or inaccurate payment of minimum and overtime wages, spread-of-hours pay, training time, meal and other breaks, all other wage and hour payments, and wage notice and wage stub related pay claim, and any other payments, benefits, claims or form of notice, remuneration or compensation under any state or local wage and hour law, including but not limited to, New York Labor Law, as amended, including but not limited to Articles 6 and 19, § 190 *et seq* and § 650 *et seq*., and the Wage Theft Prevention Act; any claims whatsoever alleged in the Action and all wage and hour claims which could have been alleged in the Action, including, without limitation, all claims for damages, restitution and other equitable relief, liquidated damages, compensatory damages, unpaid costs, interest, punitive damages, wages, overtime wages, penalties of any nature whatsoever, and any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against Defendants, relating to the claims being settled and released herein by the Plaintiffs and the Class Members; (ii) claims for employee wage-related benefits, including, without limitation, payments for accrued but unused vacation and paid sick leave, and (iii) claims arising out of or related to any contract, policy, practice, or employee handbook of OAC concerning wages and hours, training time, meal or other breaks, and employee wage-related benefits; and (iv) and any claims related to, derivative of, or based upon the claims in (i)-(iii) above, including for unpaid costs,

penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief. For avoidance of doubt, the Released Class Claims do not include any non-wage-related claims. For the further avoidance of doubt, this provision defining the term "Released Class Claims" is identical to the provision defining "Released Class Claims" set forth in the First Agreement.

1.31.1.29.    **Released Authorized Claimant Claims.** "Released Authorized Claimant Claims" means any and all federal, New York state and local wage-and-hour law claims, obligations, demands, actions, rights, causes of action, and liabilities arising from or relating to employment at OAC, against any Released Defendant of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrue or accrued on any date up through December 31, 2017 for wages, wage-related benefits and/or other remunerations of employment that in any way arise from or relate to the Authorized Claimants' employment or former employment with Defendant, including, without limitation: (i) claims for any type of relief under the Fair Labor Standards Act ("FLSA") or NYLL, including, without limitation, claims for wages, overtime, training time, meal or other breaks, wage notice and pay stub related claims, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, or under any other legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, or to recover interest, liquidated damages, and/or penalties thereon; (ii) Released Class Claims; (iii) claims arising out of or related to any contract, policy, practice, or employee handbook of OAC concerning wages and hours, training time, meal or other breaks, and employee wage-related benefits; and (iv) any claims related to, derivative of, or based upon the claims in (i)-(iii) above, including for unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief. For avoidance of doubt, the Released Authorized Claimant Claims do not include any non-wage-related claims. For the further avoidance of doubt, this provision defining the term "Released Authorized Claimant Claims" is identical to the provision defining "Released Authorized Claimant Claims" set forth in the First Agreement.

1.32.1.30.    **Released Defendants.** "Released Defendants" means Defendants, along with any parent(s) and affiliates, and its and their respective officers, employees, representatives, attorneys and agents.

1.33.1.31.    **Settlement Claims Administrator.** "Settlement Claims Administrator" means the entity jointly selected by the Parties to provide claims administration services pursuant to this Agreement.

1.34.1.32.    **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Gross Amounts.

1.35.1.33.    **Settlement Period.** "Settlement Period" means December 13, 2010 through December 31, 2017.

1.36.1.34.     **Updated Address.** "Updated Address" means a mail address that was updated via a standard skip trace or an updated mail and/or email address provided by the United States Postal Service or a putative Class Member.

2.      **NON-ADMISSION OF LIABILITY**.   Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, and Defendants specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, or that class action certification is appropriate in this or any other matter.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.   This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class action certification is appropriate.  There has been no determination by any court as to the merits of the claims asserted by Plaintiffs against Defendants or as to whether a class should be certified other than for settlement purposes only.

3.      **SETTLEMENT PROCEDURE AND ~~PRELIMINARY~~ APPROVAL**

3.1.    **~~Preliminary~~ Approval Motion.**

    A.      Upon complete execution of this Agreement, the Parties shall file a joint and unopposed application for ~~preliminary~~ settlement approval ("~~Preliminary~~ Approval Motion").  In connection with the ~~Preliminary~~ Approval Motion, the Parties will submit to the Court: (1) ~~the~~a proposed ~~Notice, (2) the proposed Claim Form, (3) the proposed Preliminary~~ Approval Order, and (~~4~~2) an executed version of this Agreement.  Class Counsel shall be responsible for drafting and filing the ~~Preliminary~~ Approval Motion, with approval from Defendants.

    ~~B.      The proposed Preliminary Approval Order will seek the setting of a 75-day deadline from the initial mailing of the Notice of Settlement to the Class to file Claim Forms, Opt-out Statements and/or become Objectors.  To the extent any Notice of Settlement is returned or otherwise determined to be undeliverable, such putative Class Member shall be entitled to 15 days from the date of any subsequent mailing (but no less than the original 75 days) to file Claim Forms, Opt-out Statements and/or become Objectors.  The proposed Preliminary Approval Order also shall seek to set a date for the Fairness Hearing, which shall be no earlier than 150 days following the date that the Court enters the proposed Preliminary Approval Order.~~

    ~~C.      In connection with the Preliminary Approval Motion, Plaintiffs will inform the Court of the intended process to obtain a "Final Order and Judgment of Dismissal with Prejudice."~~

    ~~D.~~B.     The Parties will work together diligently and in good faith to expeditiously obtain ~~a Preliminary~~the Approval Order ~~and a Final Order and Judgment of~~

~~Dismissal~~dismissing the Action with ~~Prejudice~~prejudice. Any disputes that may arise between the Parties related to the Parties' efforts to obtain ~~a Preliminary~~ the Approval Order ~~and a Final Order and Judgment of Dismissal with Prejudice~~ shall be submitted to the Court~~. At the appropriate time, the Parties will file a joint and unopposed application with the Court requesting a Final Order and Judgment of Dismissal with Prejudice~~.

C.   Prior to filing, Class Counsel shall provide draft documents in support of the Approval Motion to Defendants for review, comment and approval.

D.   Class Counsel will file the Approval Motion as "joint and unopposed" (except as to attorneys' fees and service awards only).

E.   In the Approval Motion, the Parties shall request that the Court, among other things, (a) approve the Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not already timely opted out, (b) award Fees and Costs, (c) enter judgment in accordance with this Agreement, and (d) dismiss this action with prejudice.

~~E.~~F.   If the Court denies the ~~Preliminary~~ Approval Motion, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement (without any increase to the amount of the Maximum Settlement Amount or to what Defendants will have to pay as anticipated by this Agreement). If, despite the Parties' efforts, the Court continues to deny the ~~Preliminary~~ Approval Motion, the Action will resume as if no settlement had been attempted. In that event, the class certified for purposes of settlement, if any, shall be decertified (either by the Court *sua sponte* or on a motion by Defendants, which Plaintiffs agree not to oppose), and Defendants retain all rights and defenses, including the right to contest whether the Action should be certified and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Action.

~~F.   Within fifteen (15) days after the Court enters the Preliminary Approval Order, Defendants, through counsel, shall notify Class Counsel that Defendants have complied with the requirements of 28 U.S.C. § 1715 concerning notifications to appropriate Federal and State officials of this Agreement, and shall, if requested by Class Counsel, provide proof of such compliance.~~

**3.2.   Settlement Claims Administrator.**

A.   **Retention.** The parties have agreed to retain Dahl Administration, LLC as Settlement Claims Administrator.

B.   **Funding Settlement Claims Administrator.** The Settlement Claims Administrator's costs and expenses shall be paid from the Gross Settlement ~~Amount~~Fund. In the event that final approval is not granted by the Court or the

Agreement is terminated or fails to become effective for any reason, Plaintiffs and Defendants shall each bear 50% of the settlement administration fees and costs.

C. **Responsibilities of Settlement Claims Administrator.** Without limiting any duties set forth elsewhere in this Agreement, the Settlement Claims Administrator shall be or already has been responsible for:

1. Distributing the Notice and Claim Form to putative Class Members via First Class mail and e-mail, with skip tracing and resending of the Notice for those mailings that arewere returned as undeliverable or arewere to stale addresses, and upon request from a putative Class Member.

2. Keeping accurate records of: (1) the dates on which each Notice and Claim Form iswas mailed to putative Class Members; (2) the dates on which each Notice and Claim Form iswas emailed to putative Class Members; (3) all mailings and/or emails that were returned or non-deliverable; (4) all Updated Addresses; (5) all communications with putative Class Members; (6) all Claim Forms, Opt-Out Statements, and/or Objections received and the email, fax, or postmark date; and (7) any incomplete or illegible Claim Forms along with attempts to cure.

3. Providing weeklyregular status reports to counsel for the Parties.

4. Responding to inquiries from putative Class Members regarding Updated Addresses, procedures for filing Claim Forms, Objections, and Opt-Out Statements, confirming receipt of same, estimated Individual Gross Amounts, and referring all other inquiries by putative Class Members to Class Counsel.

5. Retaining the originals of all Claim Forms, Opt-Out Statements, and Objections, including originals of all envelopes accompanying these documents until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

6. Establishing a toll-free telephone number to which putative Class Members can call with questions.

7. Any other tasks mutually agreed to by the Parties.

D. The Settlement Claims Administrator shall further be responsible for the following:

1. Promptly providing an IRS Form W-9 to Defendants so as not to delay the deposit of the Gross Settlement AmountFund into the QSF pursuant to the terms set forth herein; and

2. Issuing and distributing Settlement Checks and Courtcourt-approved Fees and Costs.

E. **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement and locating putative Class Members.

10

**3.3.    Distribution of the Notice and Claim Form to Class Members.**

A.    Within ten (10) days of the Preliminary Approval Order being signed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List, and Class Counsel with the Abridged Class List.  The Class List shall be treated as confidential by the Settlement Claims Administrator and not used for any purpose other than effectuating this settlement.

B.    Within fifteen (15) days of receipt of the Class List from Defendants, the Settlement Claims Administrator shall mail the Notice and Claim Form to putative Class Members via United States First Class Mail, postage prepaid.  The return address on the envelopes shall reference the name and address of the Settlement Claims Administrator.  The envelope shall indicate with a bold and conspicuous marking, that the mailing relates to the settlement of wage and hour claims against Opinion Access Corp.

C.    Within ten (10) days of receipt of the Class List from Defendants, the Settlement Claims Administrator shall email the Notice and Claim Form to putative Class Members, using the email address, if any, contained in the Class List.  The subject of the email shall state: "Court Authorized Notice: Opinion Access Corp. Wage and Hour Settlement". The body of the email shall read as follows: "You are receiving this email because you were identified as a current or former employee of Opinion Access Corp. whose legal rights will be affected by the settlement in the *Charles v. Opinion Access Corp.* lawsuit (Eastern District of New York, No. 16-cv-6868). The attached Notice and Claim Form contain important time sensitive information about your legal rights.  Copies of the Notice and Claim Form will also be sent by mail to your last known mailing address." The information contained in the email can be modified at any time prior to distribution upon mutual consent of the Parties.  There shall be no skip trace or further affirmative steps taken to obtain an updated email address if the email address provided is not current or no email address is known.

D.    In the event that, subsequent to the first mailing of the Notice and prior to the Bar Date, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with an Updated Address, the Settlement Claims Administrator shall re-mail the Notice and Claim Form to that Updated Address within two (2) days.  Such putative Class Members' Bar Date shall be extended to include 15 days from the date of any subsequent mailing (but no less than the original 75 days).

E.    In the event that, subsequent to the first mailing of the Notice and prior to the Bar Date, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with no forwarding address, the Settlement Claims Administrator shall perform one (1) standard skip trace within fifteen (15) days of the returned Notice to the Settlement Claims Administrator in an effort to ascertain the Updated Address for the putative Class Member in question. If an Updated Address is ascertained, the Settlement Claims Administrator shall re-mail the Notice and Claim Form to that Updated Address within two (2) days.  Such

~~putative Class Members' Bar Date shall be extended to include 15 days from the date of any subsequent mailing (but no less than the original 75 days).~~

~~3.4.~~**3.3.Authorized Claimants**

A.    ~~To be deemed an~~ Authorized ~~Claimant,~~Claimants are putative Class Members ~~must email, fax~~who emailed, faxed, or ~~postmark~~postmarked the fully executed Claim Form by the Bar Date~~.~~, and those putative Class Members who submitted untimely Claim Forms but who the Parties mutually agree should be regarded as Authorized Claimants after learning the reason(s) for why their Claim Form was submitted untimely.  The Bar Date of Putative Class Members whose notice was re-mailed ~~shall be~~was extended to include fifteen (15) days from the date of any subsequent mailing (but not less than the original 75 days).

~~3.4.~~   ~~The Settlement Claims Administrator shall provide the email, fax, or postmark date on the original of each Claim Form that it receives and email copies of all Claim Forms to Class Counsel~~**Class Members who opted-out.**

~~B.~~   ~~Three~~ putative Class Members, James Holmes, Vernicka Robinson, and ~~Defendants' Counsel on a weekly basis.~~

~~C.~~   ~~Putative Class Members who submit an incomplete or illegible Claim Form, or who submit an Objection but not a completed Claim Form, shall be contacted by the Settlement Claims Administrator by phone, and if not reached by phone, by email and first class mail no later than three (3) days after the defect has been noticed.  The Settlement Claims Administrator shall identify the nature of the defect and instruct the putative Class Member that to be deemed an Authorized Claimant and receive a Settlement Check, the putative Class Member must cure the defect no later than twenty-one (21) days after the Bar Date.~~

~~D.~~   ~~Any putative Class Member who submits a Claim Form, in whole or in part, and also submits an Opt-Out Statement, shall be contacted by the Settlement Claims Administrator within five (5) days to clarify whether the putative Class Member intended~~Marie Domond, elected to opt-out of the settlement ~~or become an Authorized Claimant.  Absent a response to the contrary, the putative Class Member will have been deemed to have opted-out of the settlement.~~

~~3.5.~~   ~~**Class Members who opt-out.**~~

A.    ~~Putative Class Members who elect to opt-out of the settlement as set forth in this Agreement must fax, email or postmark~~after receiving Notice by faxing, emailing or postmarking a written statement by the Bar Date that: (1) ~~unconditionally states a putative Class Member's~~stated their intention to opt out, such as "I opt-out of the settlement in the Opinion Access Corp. wage and hour case"; (2) ~~includes~~included the putative Class Member's name, address, and telephone number; and (3) ~~is~~was signed by the putative Class Member,

> B.    The Settlement Claims Administrator shall provide the fax, email or postmark date on the original of each Opt-Out Statement that it receives and send copies of each Opt-Out Statement to Class Counsel and Defendants' Counsel no later than seven (7) days after receipt.

3.6.3.5. **Objectors**

> A.    ~~Any Class Member who does~~Two Class Members, Akeilah T. Campbell and Elsie Estefania, did not submit an Opt-Out Statement~~, and who wishes to object~~ but objected to the settlement ~~as set forth in this Agreement, must fax, email or postmark~~by faxing, emailing or postmarking a written statement to the Settlement Claims Administrator, as well as ~~submit~~by submitting an executed Claim Form, by the Bar Date.   The written objection ~~must~~: (1) ~~clearly identify~~identified the written statement as an objection, such as "I object to the settlement in the Opinion Access Corp. wage and hour case"; (2) ~~contain all~~contained reasons for the objection; (3) ~~contain~~contained the Objector's name, address, and telephone number; and (4) ~~be~~was signed by the Objector.

> B.    The Settlement Claims Administrator shall provide the fax, email or postmark date on the original of each Objection that it receives and email copies of each Objection to Class Counsel and Defendants' Counsel on a weekly basis.

> ~~C.~~B.    ~~Class Counsel shall promptly file~~ has already filed the date-stamped originals of any and all Objections with the Court.

> D.    The Parties may file with the Court written responses to any filed Objections no later than three (3) days before the Fairness Hearing.  Any reasons not included in the written objection shall not be considered by the Court.

> ~~E.~~C.    ~~A valid Objector also has~~Objectors to the settlement were told that they had the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector.  ~~An Objector who wishes to appear at the Fairness Hearing must clearly state his or her intention to do so in writing on his or her written Objection. It is in the Court's discretion whether to allow the Objector or the Objector's counsel to speak at the Fairness Hearing.~~

> F.    An Objector may withdraw his or her objection(s) at any time.

4.    **FAIRNESS HEARING AND FINAL JUDGMENT.**

4.1.    No later than fifteen (15) days after the Bar Date, the Settlement Claims Administrator shall provide to Defendants' Counsel: (a) a list of the names and identification numbers of all Authorized Claimants, (b) a list of the names and identification numbers of all Objectors, and (c) a list of the names and identification numbers of all Class Members who timely submitted an Opt-Out Statement, and to Class Counsel: (a) a list of the identification numbers of all Authorized Claimants, (b) a list of the names and identification numbers of all Objectors, and (c) a list of the identification numbers of all Class Members who timely submitted an Opt-Out Statement.

4.2.   ~~Not later than fourteen (14) days before the Fairness Hearing, the Parties shall submit a Joint and Unopposed Motion for Judgment and Final Approval.  Prior to filing, Class Counsel shall provide draft documents in support of the Joint and Unopposed Motion for Judgment and Final Approval to Defendants for review, comment and approval.~~

4.3.   ~~Class Counsel will file the Joint and Unopposed Motion for Judgment and Final Approval as "joint and unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.~~

4.4.   ~~At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) approve the Settlement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out, (b) award Fees and Costs, (c) enter judgment in accordance with this Agreement, and (d) dismiss this action with prejudice.~~

## ~~5.~~4.   TERMINATION AND ITS EFFECTS.

~~5.1.~~4.1.  If the terms of this ~~settlement is~~Agreement are not consummated for any reason including, but not limited to, a ruling by the Court declining to enter ~~a Preliminary~~the Approval ~~Order or Final~~ Order, the Parties shall first endeavor to resolve the matter jointly and in good faith with the goal of effectuating settlement.  This may include seeking reconsideration of the Court's ruling, renegotiating this Agreement (without any increase to the amount of the ~~Maximum~~Gross Settlement Amount ~~or to what Defendants will have to pay as anticipated by this Agreement~~), or taking any other actions to address the reason settlement was not consummated.  To the extent such efforts fail, the Parties may then continue to litigate the Action as though this Agreement had never been executed.

~~5.2.~~4.2.  **Effect of Termination or Failure to Obtain ~~Preliminary or Final~~ Approval.**  In the event that this Agreement is not approved in its entirety by the Court, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, or in the event that the Settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, the Parties shall proceed as follows:

A.   This Agreement shall be deemed null and void and its terms and provisions shall have no further force or effect.

B.   Neither this Agreement, nor any other related papers or orders, including certification of ~~the Settlement Class~~a settlement class, may be cited to, used, or deemed admissible in any judicial administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

C.   Litigation shall proceed without prejudice as if this Agreement had not been executed unless: (1) one or more of the Parties seek reconsideration or appellate review of the decision denying entry of ~~Judgment~~judgment, or (2) the Parties attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

D.      None of the Parties shall be deemed to have waived any claims, objections, defenses, or arguments.

E.      The class certified for purposes of settlement, if any, shall be decertified (either by the Court *sua sponte* or on a motion by Defendants, which Plaintiffs agree not to oppose), and Defendants retain all rights and defenses, including the right to contest whether the Action should be certified and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Action.

F.      Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court reducing the Fees and Costs, including the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any Incentive Award, shall constitute grounds for cancellation or termination of the Agreement or grounds for limiting any other provision of the Judgment.  Plaintiffs and/or Class Counsel retain and reserve all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorneys' fees or costs to be paid to Class Counsel and/or any order of the Court reducing the amount of any Incentive Award.  Defendants shall not oppose the appeal or motion for reconsideration so long as Class Counsel seeks an amount that does not exceed the amounts contemplated in this Agreement.

G.      If the Agreement is terminated ~~after Class Notice is sent~~, the Settlement Claims Administrator shall provide notice to Class Members informing them that the ~~Settlement~~contemplated settlement was voided, and that as a result, no payments will be made and that Class Members, whether they submitted a Claim Form or not, retain all rights and privileges under the law, and that litigation in this action will continue.  The notice may contain any additional information if jointly agreed to by Class Counsel and Defendants, including but not limited to, an explanation as to why the Agreement was terminated.   Such notice shall be mailed and emailed by the Settlement Claims Administrator via United States First Class Mail, postage prepaid, to the addresses contained on the Class List and/or to any Updated Address.  Class Members whose settlement Notice was returned and for whom there is no Updated Address need not be sent the termination notice by mail.

## ~~6.~~5.   CONSIDERATION AND OTHER PAYMENTS

### ~~6.1.~~5.1. Gross Settlement Fund.

A.      Provided this Agreement is not terminated as provided herein, Defendants ~~agrees~~agree to pay ~~up to~~ the ~~Maximum~~Final Settlement  Amount for all payments to Authorized Claimants, any Court awarded *Fees and* Costs and ~~Fees~~Incentive *Awards*, and ~~class~~claims administration costs and fees.  No payments shall be made to putative Class Members who ~~submit~~submitted Opt-Out Statements or to Class Members who ~~fail~~failed to become Authorized Claimants~~, and amounts allocated for these Class Members from the Gross Settlement Amount shall not be paid into the QSF and shall be retained by Defendants~~ *as defined herein*.

B.      Payment of the settlement shall be made by Defendants in ~~three~~two installments as followed:

~~1.~~   The first installment payment shall be made within fourteen (14) days following the Final Effective Date, and will consist of an aggregate payment ~~equivalent to~~of $500,000 consisting of : (a) ~~25~~50% of the total amount owed to Class Counsel as payment of judicially approved Fees and Costs; (b) ~~25~~50% of the total amount owed to date to the Settlement Claims Administrator as claims administration fees and costs; ~~and (c) 25% of the total amount owed to Authorized Claimants, including any judicially approved Incentive Awards to Plaintiffs.  Defendants will also make an additional payment of $12,500 that~~ (c) $25,000 which will be set aside for errors and omissions~~.~~

~~2.~~   ~~The second installment shall be made on or before February 1, 2019, and will consist of an aggregate payment equivalent to: (a) 25% of the total amount owed to Class Counsel as payment of judicially approved legal fees and costs; (b) 25% of the total amount owed to the Settlement Claims Administrator to date as claims administration costs;  and (c) 25% of the total amount owed to Authorized Claimants, including~~; and (d) the remainder shall be distributed Authorized Claimants on a *pro rata* basis, inclusive of one-half of any judicially approved Incentive Awards to ~~Plaintiffs.  Defendants will also make an additional payment of $12,500 that will be set aside for errors and omissions.~~

1.   ~~The third installment~~ ~~Plaintiffs~~Within fourteen (14) days of the payment by Defendants of the first installment payment into the QSF, the Settlement Claims Administrator shall mail settlement checks to Authorized Claimants and checks to Class Counsel for Court awarded Fees and Costs.  Authorized Claimants shall be notified via a notice contained on or with their settlement check that the settlement check shall expire ninety (90) days from the date found on the check, and that settlement checks not cashed within 90 days will be voided, and that they will not be entitled to any further settlement checks if they do not timely cash their checks.  Authorized Claimants shall also be notified that they shall expect to receive one more settlement check for approximately the same amount so long as they cash their settlement check from this first installment payment, and an approximate date for such payment.  Counsel for the Parties shall meet and confer and attempt to agree upon the language within and proper form of this notice accompanying initial settlement checks to Authorized Claimants.

~~3.~~2.The second installment shall be made on or before November 1, 2019~~,~~ (provided that the Final Effective Date has passed, and if not, within 14 days of the Effective Date), and will consist of an aggregate payment ~~equivalent to the remainder~~of $500,000, consisting of the total remaining amount owed to: (a) Class Counsel as payment of judicially approved ~~legal fees~~Fees and ~~costs~~Costs; (b) the Settlement Claims Administrator as claims administration costs; and (c) Authorized Claimants, including any judicially approved Incentive Awards to Plaintiffs.  The remainder of the errors and omissions fund shall be credited against and paid out as part of the proceeds to ~~the Class Members on the third settlement~~Authorized Claimants on the second settlement payment.  The monies from any settlement

checks not timely cashed by Authorized Claimants from the first installment payment distribution shall remain in the QSF and shall be redistributed on a *pro rata* basis to Authorized Claimants who did cash their initial settlement checks from the first installment payment.  Furthermore, any monies allocated from the second installment payment to Authorized Claimants who did not timely cash their initial settlement checks shall also be redistributed on a *pro rata* basis to Authorized Claimants who did cash their initial settlement checks from the first installment payment.

C.      The above payments will be made into the QSF established by the Settlement Claims Administrator, who will be responsible for appropriate distribution.  Within fourteen (14) days of the payment by Defendants of eachthis second installment payment described above in Paragraph 6.1(B) into the QSF, the Settlement Claims Administrator shall mail the Settlement Checkssettlement checks to Authorized Claimants who timely cashed their settlement check from the first installment, and checks to Class Counsel for Court awarded Fees and Costs.  However, if 14 days have not passed since the expiration date of the last uncashed check to an Authorized Claimant from the first installment, then the payments shall be issued within 14 days after the expiration date of the last uncashed check from the first installment.  Authorized Claimants shall be notified via a notice contained on or with their Settlement Checksettlement check that the Settlement Checksettlement check shall expire one hundred and twenty (120ninety (90) days from the date found on the Settlement Checkscheck, and that Settlement Checks not cashed within 180 days will be void.  Any proceeds from checks not cashed by Class Members shall be returned by the Claims Administrator to Defendantswithin 90 days will be voided.  Any monies from any uncashed checks from this second installment payment distribution shall be donated to a *cy pres* designee within thirty (30) days after the passage of 120 days from the issuance of the final Settlement Checksof the last expiration date for any settlement check issued to Authorized Claimants from the second installment payment, which the Parties have agreed shall be The Legal Aid Society.

(a)  The amount allocated for the remainder of Plaintiffs' Incentive Awards as set forth in Paragraph  5.1(B)(2) shall not be issued in calendar year 2019, but shall be issued on the earliest practical date in calendar year 2020, and for which an IRS Form 1099 shall be issued for the year 2020.

## 6.2.5.2. Settlement Checks to Authorized Claimants.

A.      Each Authorized Claimant shall be issued Settlement Checks by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order..  Each Authorized Claimant's Individual Gross Amount will be determined based on whether or not the Authorized Claimant was merely a Trainee (*i.e.* participated in OAC's Interviewer training program but never worked at least one day as an Interviewer for OAC) (referred to herein as a "Trainee Class Member") or whether they were an Interviewer (*i.e.* worked at least one day as an Interviewer at OAC after completing OAC's training program) (referred to herein as an "Interviewer Class Member"), and on a formula that takes into account the

total number of days worked by such Authorized Claimant as it relates to the total number of days worked by all Class Members during the Settlement Period.  For avoidance of doubt, payments will be made to Authorized Claimants only.  The Notices ~~will describe~~issued to Class Members described the formula used to arrive at each Individual Gross amount, and ~~will state~~stated that Class Members may call the Claims Administrator with any questions about the claim form, the amount of the anticipated settlement, timing of payment, or any other question they may have had.

B.     Class Members' individual, proportionate shares of the Gross Settlement Fund shall be computed in accordance with the formula below:

1.     All Interviewer Class Members shall ~~each receive~~be assigned 1 point for each day worked during the Settlement Period.

2.     All Trainee Class Members, *i.e.* Class Members who did not work at least one day as an Interviewer during the Settlement Period, shall ~~each receive~~be assigned 20 points.

3.     The Gross Settlement Fund, minus Class Counsel's ~~requested~~court-approved attorneys' ~~fees~~Fees and ~~litigation costs of $500,000),~~Costs, minus Settlement Claims Administrator's costs, and minus any judicially-approved Incentive Awards,  will be divided by the aggregate number of points accrued by all ~~Class Members~~Authorized Claimants (the result of which shall be referred to as the Per Point Value).

4.     Each ~~Class Member's~~Authorized Claimant's total points will be multiplied by the Per Point Value, to determine his or her allocated Individual Gross Amount, which will be inclusive of the employer withholding for FICA, Medicare and all other applicable payroll taxes~~, and inclusive of judicially-approved Incentive Awards, if any, to determine his or her initial allocated Individual Gross Amount.~~

~~5.     Plaintiffs' Individual Gross Amounts shall be the sum of their proportionate share of the Gross Settlement Fund per the formula set forth in Paragraph 6.2(B)(1)-(4) above.~~

~~6.~~5.     If the aggregate amount of all Authorized Claimants' Individual Gross Amounts does not exceed the Guaranteed Payout, then the Individual Gross Amounts will be upwardly adjusted on a *pro rata* basis such that Guaranteed Payout amount is reached when all Authorized Claimants' Individual Gross Amounts are added together.  If the ~~A~~ny non-Court ~~does not approve the fees~~approved Fees and ~~costs~~Costs sought by Class Counsel ~~as set forth in Paragraph 6.4(A), then such unapproved amounts~~and any non-Court approved Incentive  Awards sought by Plaintiffs shall be redistributed to Authorized Claimants on a *pro rata* basis ~~as per Paragraph 6.4(B).~~.

~~6.3.~~5.3. **Incentive Awards.**

A.   In return for services rendered to the Class Members, Plaintiffs Preston Charles and Carlos Pabon shall apply to the Court for Incentive Awards of up to $15,000 each, and Plaintiff Freddy Graciano shall apply to the Court for an Incentive Award of up to $5,000.  Defendants shall not oppose this application.

B.   ~~The application for the Incentive Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the action.~~  The outcome of the Court's ruling on the application for the Incentive Awards shall not terminate this Agreement or otherwise affect the Court's ruling on the ~~Motion for Final~~ Approval ~~or for Final Judgment and dismissal~~Motion.  Plaintiffs shall have the right to appeal or move to reconsider the Court's determination with respect to their application for Incentive Awards, which shall not be opposed by Defendants.  ~~Upon the determination of any such unopposed appeal or motion for reconsideration,~~ Incentive Awards sought by Plaintiffs but which are not awarded shall be ~~added back~~redistributed to ~~the Gross Settlement Fund and subject to the allocation formula set forth in Paragraph 6.2(B)(1)-(4).~~Authorized Claimants on a *pro rata* basis.

~~6.4.~~5.4. **Settlement Amounts Payable as Attorneys' Fees and Costs and Settlement Administration Fees and Costs.**

A.   ~~At the Fairness Hearing and Motion for Final Approval,~~ Class Counsel shall petition the Court for an award of attorneys' ~~fees and costs~~Fees of no more than ~~Five~~Three Hundred ~~and Thirty Three~~ Thousand Three Hundred Thirty-Three Dollars ($~~500,000~~333,333.00) (based upon one-third of the Gross Settlement Fund) plus reasonable litigation costs of no more than Nine Thousand Six Hundred and One Dollars and Eighty-Four Cents ($9,601.84) to be paid from the QSF.  ~~Defendants shall not oppose such application.~~

B.   ~~The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the action.~~  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the ~~Motion for Final~~ Approval Motion.  Class Counsel shall have the right to appeal or move to reconsider the Court's determination with respect to their application for attorneys' ~~fees~~Fees and ~~costs, which shall not be opposed by Defendants.~~Costs.  Upon the determination of any such ~~unopposed~~ appeal or motion for reconsideration, ~~fees~~Fees and ~~costs~~Costs sought by Class Counsel but which are not awarded shall be redistributed to Authorized Claimants on a *pro rata* basis.

C.   Defendants' complete obligations to Class Counsel are set forth in this Agreement. Class Counsel shall hold Defendants harmless for an award of fees or costs beyond those made in accordance with this Agreement and shall not seek to recover any fees or costs in excess of the amounts specifically set forth in this Agreement, except in the event Defendants materially breach this Agreement.  Except as provided in this

Agreement, Class Counsel and Plaintiffs hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Plaintiffs and Class Members- in this Action.  Class Counsel further understands and agrees that any fee payments approved by the Court, or if appealed, as approved by the appellate court, shall be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in this Action.

6.5.5.5. **Tax Characterization.**

A.    For tax purposes, the Individual Gross Amount payments to Authorized Claimants (not including Incentive Awards) shall be allocated as follows: (i) 50% in consideration for wage income subject to Internal Revenue Service ("IRS") Form W-2 reporting ("Wage Payments"); and (ii) 50% in consideration for liquidated damages and interest on non-wage payments subject to IRS Form 1099 reporting ("Non-Wage Payments").

B.    Judicially approved Incentive Awards paid to the Plaintiffs shall be reported as non-wage compensation on an IRS Form 1099.

C.    The Settlement Claims Administrator shall report payments to the Authorized Claimants to the appropriate taxing authorities, and make applicable tax withholdings for the portions allocated as wages.  The employer's share of the FICA, Medicare and all other applicable payroll taxes shall be paid from the QSF.

D.    The Settlement Claims Administrator shall report payments of attorneys' fees and costs without tax withholdings to Class Counsel and to the appropriate taxing authorities on an IRS Form 1099.  In the event that it is subsequently determined by any taxing authority that any payee owes any additional taxes with respect to any funds distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that payee, and that none of the Plaintiffs, Defendants, Counsel for the Parties, or the Settlement Claims Administrator shall be responsible for the payment of such taxes, including any interest and penalties.

E.    The Settlement Claims Administrator shall be paid from the QSF.  The Settlement Claims Administrator will receive a Form 1099 for this payment from OAC.

F.    Plaintiffs acknowledge that the Settlement Claims Administrator must report to the Internal Revenue Service (as well as state and local taxing authorities, where applicable) all payments made pursuant to this Agreement.  Plaintiffs expressly acknowledge and warrant that they are, and shall be, responsible for all federal, state, and local tax liabilities which are attributable to them that may result from the payments under this Agreement, and Plaintiffs hereby warrant that Defendants and Defendants' counsel shall bear no responsibility for any such tax liabilities.  Plaintiffs further agree to indemnify and hold Defendants and Defendants' counsel harmless to the full extent of any such liabilities, reasonable attorneys' fees, payments or costs, including taxes, interest, and penalties which may be

assessed against or incurred by Defendants or Defendants' counsel in connection with any payment made to or on behalf of any Plaintiff hereunder, with the exception of any liability arising from the fault or negligence of Defendants. Plaintiffs agree that should any tax liability arise or accrue to any Plaintiff under local, state, or federal tax law as a result of any payments made under this Agreement, the Plaintiff will pay any and all such finally determined obligations without seeking indemnity or reimbursement from Defendants, or any increase in his Incentive Award, or his Individual ~~Settlement~~Gross Amount, or in the Gross Settlement ~~Payment~~Fund.

G.   Plaintiffs and Class Counsel acknowledge that any Class Members who participate in the settlement of the Action will be required to be solely responsible for all taxes, interest and penalties due with respect to any payment to them received in connection with the settlement of the Action, and that Class Members will be required to indemnify and hold Defendants and Defendants' attorneys harmless to the full extent of any such liabilities, payments of costs, reasonable attorneys' fees, including taxes, interest, and penalties which may be assessed against or incurred by Defendants in connection with any payment made to or on behalf of any Class Member who participates in the settlement of the Action, with the exception of any liability arising from the fault or negligence of Defendants. The Class Members who participate in the settlement of the Action will be required to further agree that should any tax liability arise or accrue to any Class Member under local, state, or federal tax law as a result of any payments made under this Agreement, the Class Member will pay any and all such finally determined obligations without seeking indemnity or reimbursement from Defendants or his or her Individual ~~Settlement~~Gross Amount, or in the Gross Settlement ~~Payment~~Fund.

## ~~6.6.~~5.6.   Default

A.   "Default" shall mean the failure by Defendants to make payment within 10 days of any payment date specified in Paragraph ~~6~~5.1(B) above, which is not cured within 10 days after written notice of Default is received.  The notice of Default shall be sent to both of the Individual Payers (defined as Jimmy R. Hoffman and Joseph Raphael) directly and to their counsel, Eve I. Klein of Duane Morris, LLP, either via e-mail or certified mail.  The current mailing address of Jimmy R. Hoffman is ~~69 West Overlook, Port Washington~~300 East 75th Street, #23C, New York ~~11050~~, NY 11021.  The current mailing address of Joseph Raphael is 7 Maple Street, Englewood Cliffs, New Jersey, 07632.  Defendants will notify Class Counsel, either directly or through their counsel, of any changes to the mailing addresses of the Individual Payers within ten (10) days of any change of address.  If Defendants fail to timely notify Class Counsel of any change to the mailing addresses of the Individual Payers, then notices of Default sent to the Individual Payers' mailing addresses last disclosed to Class Counsel shall constitute sufficient notice of Default.

B.   The Individual Payers, in addition to OAC, shall be personally liable and responsible for the ~~Maximum~~Gross Settlement Amount, and affirm that they have

provided Class Counsel with valid and accurate proof of ability to pay (in the form of brokerage account statements that identify the aggregate value of the Individual Payers' investments which have a value in the aggregate of at least $1,~~500~~000,000.00 in respect of such payment obligations). Specifically, Rafael warrants and represents that he presently holds with Vanguard Flagship Services: (1) a Rollover IRA account ~~with~~that had a value, as of December 31, 2017, of $989,948.02; (2) a Rollover IRA brokerage account ~~with~~that had a value, as of December 31, 2017, of $118,316.23; (3) a Rollover IRA account ~~with~~that had a value, as of December 31, 2017, of $73,742.60; and (4) a Rollover IRA brokerage account ~~with~~that had a value, as of December 31, 2017, of $170,852.42. Likewise, Hoffman warrants and represents that he presently holds investment accounts with Wells Fargo Advisor ~~with~~which had an aggregate value, as of December 31, 2017, totaling $1,244,867.03. The Individual Payers agree to retain in ~~the~~said brokerage account in the aggregate, without any encumbrances, no less than $1,~~500~~000,000.00, or such lesser amount sufficient to satisfy the remaining balance then due. Individual Payers agree to provide a copy of their statements on these accounts to Class Counsel to confirm this commitment no later than seven (7) days after request, but no more often than quarterly, to substantiate same. In the event of Default by the Defendants, within thirty (30) days of written notice of Default, the Individual Payers agree that they will sell securities and/or withdraw monies from the brokerage accounts referenced in this Paragraph ~~6~~5.6(B) sufficient to satisfy any remaining monies owed under this Agreement, and shall make such payment to satisfy any outstanding monies owed under this Agreement no later than five (5) days thereafter.

C.     In the event of Default by the Defendants, one or more of the Plaintiffs may accelerate the balance of any remaining monies owed under this settlement agreement by filing Confessions of Judgment which the Individual Payers will each execute ~~at the time the amounts of the installment payments set forth in Paragraph 6.1(B) are determined, but~~ no later than seven days after the Final Effective Date. Class Counsel has drafted a form of the Confession of Judgments that will be completed and executed by the Individual Payers no later than seven (7) days after the Final Effective Date, and which is incorporated into this Agreement as Exhibit 1. The executed Confessions of Judgments shall be held in escrow by Class Counsel for filing with the court only in the event of a Default. Any settlement amounts paid as of the date of any Default shall be offset against the remaining balance for Confession of Judgment purposes.

D.     In the event of Default, and if one or more Plaintiffs and/or Class Counsel commence an action to enforce the terms of this Agreement, and/or to file or enforce the Confession of Judgments and/or pursue an action to collect on the outstanding balance, Plaintiffs and/or Class Counsel will be entitled to reasonable attorneys' fees and litigation costs incurred. In the event of a default, Defendants shall also be liable for interest on the outstanding balance at the rate provided for in the New York Civil Practice Laws and Rules, running from the date payment was due. In the event that Plaintiffs and/or Class Counsel are unable, after reasonable efforts, to collect on the outstanding balance, any and all releases of

claims that inure to the benefit of Released Defendants will be automatically rendered null and void, and Plaintiffs shall have the option to reinstate all causes of actions alleged in this Action as if filed on the date the action was filed, with tolling of the applicable statute of limitations from the date the action was filed or, unless provided otherwise in any applicable tolling agreement entered into in this Action which shall govern, and may seek any and all available equitable, monetary and injunctive relief.  Defendants agree not to raise any objection or defense to the reinstated claims on any basis related to the fact that a settlement resolving this action may have been judicially approved (including, but not limited to, issue or claim preclusion, res judicata, or any claims that Plaintiffs waived any right by virtue of the court approving a settlement reached to resolve this action or any other law or rule).  Any monies paid to the Settlement Class as a result of this Agreement shall be offset against any future judgment rendered against Defendants.

## ~~7.~~6.   RELEASE OF CLAIMS

A.   By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, (1) each Class Member who ~~does~~did not submit a timely and valid Opt-Out Statement pursuant to this Agreement, fully, finally and forever releases and dismisses with prejudice on behalf of himself/herself, his/her heirs representatives, successors, assigns and attorneys the Released Class Claims, regardless of whether such individual ~~files~~filed a Claim Form; and (2) each Authorized Claimant (which includes Plaintiffs ~~and Freddy Graciano~~) fully, finally and forever releases and dismisses with prejudice on behalf of himself/herself, his/her heirs representatives, successors, assigns and attorneys both the Released Class Claims and the Released Authorized Claimant Claims, irrespective of whether such Authorized Claimant ultimately cashes or redeems a settlement payment.

B.   In addition to the release provided by the Plaintiffs herein, to the fullest extent permitted by law, as of the Effective Date, in consideration for receiving an Incentive Award, Plaintiffs hereby release and forever discharge Defendants from all debts, obligations, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, actions, causes of action, judgments, damages, expenses, claims or demands, in law or in equity, which Plaintiffs ever had, now have, that accrue or accrued on any date up through the date of the execution of this Agreement, including but not limited to all claims (whether known or unknown) by Plaintiffs or on behalf of the Plaintiffs regarding Plaintiffs' employment at or termination of employment from the Defendants, any contract (express or implied), any claim for equitable relief or recovery of punitive, compensatory, or other damages or monies (including claims as to taxes), attorneys' fees, any tort, and all claims for alleged discrimination based upon age, race, color, sex, sexual orientation, marital status, religion, national origin, handicap, disability, genetic information or retaliation, including any claim, asserted or unasserted, which could arise under Title VII of the Civil Rights Act of 1964; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of

1967; the Older Workers Benefit Protection Act of 1990; the Americans With Disabilities Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act of 2008; the Family and Medical Leave Act of 1993; ERISA; the Civil Rights Act of 1991; the Worker Adjustment and Retraining Notification ("WARN") Act of 1988; the New York State WARN Act; the New York State Human Rights Law; the New York City Human Rights Law; the NYLL; the FLSA; and any other federal, state or local laws, rules or regulations, whether equal employment opportunity laws, rules or regulations or otherwise, or any right under any Defendants' pension, welfare, or stock plans. For the avoidance of doubt, to the extent no Incentive Award is approved and awarded by the Court presiding over this action or by an appellate court, this provision ~~7~~6(B) shall be rendered null and void.

C.    In consideration for receiving an Incentive Award, Plaintiffs forever agree that they shall not institute, nor accept any other relief from, any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against Defendants, relating to the claims being released herein.  For the avoidance of doubt, to the extent no Incentive Award is approved and awarded by the Court presiding over this action or by an appellate court, this provision ~~7~~6(C) shall be rendered null and void.

D.    Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with the Action and Class Counsel's representation of the Plaintiffs and the Class.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Action.

## ~~8.~~7.    MISCELLANEOUS PROVISIONS

~~8.1.~~7.1.**No Assignment**.  Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Action, or any portion thereof.

~~8.2.~~7.2.**Non-Admission of Liability**.  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.  Defendants enter into this Agreement to avoid protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  Settlement of the Action, negotiation and execution of this Agreement, and all acts performed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in the Complaint filed in the Action; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, judicial or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement

document and shall be inadmissible as evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

8.3.7.3. **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms, and to administer and effectuate the settlement. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.4.7.4. **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

8.5.7.5. **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Plaintiffs and all Class Members in this Action, this Agreement is binding.

8.6.7.6. **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

8.7.7.7. **Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall no effect upon the construction or interpretation of any part of this Agreement.

8.8.7.8. **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

8.9.7.9. **Severability**. If any provision of this Agreement, with the exception of ~~Paragraph 7~~Paragraphs 6(A) and ~~7~~6(D), is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of this Agreement shall continue in full force and effect.

8.10.7.10. **Governing Law**. The rights and obligations of the Parties set forth in this Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to conflict of laws principles.

8.11.7.11. **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising

out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

8.12.7.12.    **Waivers, Modifications, and Amendments**.   No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in a writing signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement.  Notwithstanding any such failure, such party shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.13.7.13.    **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its execution by Plaintiffs, subject to final approval by the Court.  The Parties may execute this Agreement in counterparts, which, when taken together, shall constitute a complete agreement.  Each counterpart shall have the same validity, force, and effect as if all Parties had signed the same instrument.

8.14.7.14.    **Facsimile and Email Signatures**.  Any party may execute this Agreement and cause its counsel to transmit its executed signature page *via* facsimile or email to counsel for the other party.  Any signature transmitted by facsimile or email shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.15.7.15.    **General Acknowledgements**.   It is understood and agreed that the Gross Settlement Fund and the other good and valuable consideration provided for herein are not a mere recital but are the consideration for this Agreement and all terms herein, including the full and final release effected thereby.  The Parties represent and warrant that all payments made from the Gross Settlement Fund to Plaintiffs, Class MembersAuthorized Claimants, and Class Counsel are fair and reasonable.  The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys.  The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

8.16.7.16.    **Additional Representations and Warranties**.  The Parties represent and warrant to each other that the execution and delivery of this Agreement has been duly authorized by each of the Parties, that the persons signing this Agreement on their behalf below have been fully authorized to do so, and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.


_____   _____
Preston Charles               Date


_____   _____
Carlos Pabon                  Date


_____   _____
Freddy Graciano               Date


_____   _____
Opinion Access Corp.          Date

By: _____

Title: _____


_____   _____
Jimmy R. Hoffman              Date


_____   _____
Joseph Raphael                Date