UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

PRESTON CHARLES and CARLOS E. PABON, on behalf of themselves and on behalf of all similarly-situated individuals,

Plaintiffs,

-against-

OPINION ACCESS CORP., and JIMMY R. HOFFMAN, in his professional and personal capacities,

Defendants.

- - - - - - - - - - - - - - - - - - - - X

16-CV-6868 (KAM)

United States Courthouse
Brooklyn, New York

Monday, March 11, 2019
3:30 p.m.

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC HEARING
BEFORE THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs: WIGDOR, LLP
85 Fifth Avenue
Fifth Floor
New York, New York 10003
BY: TANVIR H. RAHMAN, ESQ.
JEANNE-MARIE CHRISTENSEN, ESQ.

For the Defendant: DUANE MORRIS, LLP
1540 Broadway
New York, New York 10036-4089
BY: EVE I. KLEIN, ESQ.

Court Reporter: DAVID R. ROY, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand, transcript produced by Computer-Assisted Transcription.

(In open court.)

(Parties appearing telephonically.)

THE COURT: Hello. Good afternoon. Can the parties hear me.

MR. RAHMAN: Yes.

THE COURT: All right. Good afternoon. I am --

MS. KLEIN: Hi, Eve Klein here on behalf of the defendants.

THE COURT: Just one moment, please.

This is Judge Matsumoto. I also have present --

MS. KLEIN: I can't hear.

THE COURT: I have present -- this is Judge Matsumoto, and in addition, Judge Orenstein is here with me. The case is Charles, et al. versus Opinion Access Corporation and Jimmy Hoffman. The Case Number is 16-CV-6868.

Who do we have for the plaintiff, please.

MR. RAHMAN: Good afternoon, Your Honor. For the plaintiffs this is Tanvir Rahman. I'm here with my colleague Jeanne Christensen of Wigdor, LLP.

MS. KLEIN: And for the Defendants Opinion Access Corp. and Jimmy Hoffman, Eve Klein of Duane Morris.

THE COURT: I'm sorry. You are a little bit blurry. What is your name, ma'am.

MS. KLEIN: It's Eve Klein --

THE COURT: All right.

MS. KLEIN: -- of Duane Morris.

THE COURT: Thank you.

MS. KLEIN: It's very hard to hear.

THE COURT: Well, we are sorry. We are doing our best with the equipment that we have.

MS. KLEIN: Okay.

THE COURT: We scheduled this conference because we are aware that there are two pending motions, one for final approval of the settlement and release, and another motion in support of the plaintiffs' motion for attorneys' fees and expenses. And as you know, I have referred these motions to Judge Orenstein for a report and recommendation.

I was looking at the papers in any event because I figured that there is a possibility that -- well, I would have to look at them anyway in order to adopt or modify any R & R. And I had growing discomfort about both motions, frankly. I appreciate the parties' efforts in getting a settlement in this case, but some of the terms in the settlement agreement were troubling to me, particularly the reversion aspect of it. And in addition, I was uncomfortable with the attorneys' fees request for 33 percent or close to a half a million dollars of the total settlement amount. And so I felt that rather than await the R & R, I would speak to Judge Orenstein and see where he

stood. I will let him certainly speak for himself. But I was going to be uncomfortable granting the motion.

So let me have Judge Orenstein just speak further.

JUDGE ORENSTEIN: Yes. Good afternoon, everybody.

As I am sure you got a sense from the final approval hearing, I also have some deep concerns about the proposal and it was my intention to recommend that the motions be denied, primarily because of the reversion of settlement funds to the defendants that -- the unclaimed settlement funds to the defendants without the reversion of attorneys' fees, which I think in turn exacerbates the problem of the very high claimed fee award. It ends up with the claimed fees being over 50 percent of the amount that the defendants pay out under the settlement. So I was planning to recommend denial.

I think Judge Matsumoto and I both agreed that it would be more efficient for everybody if we made those concerns known to you now, rather than to have you expend further resources on litigation, particularly in light of the concerns expressed in recent letters about hurrying things along and possibly sending out further notice, which would deplete the funds that you're using for other reasons, if possible.

So I will turn it back over to Judge Matsumoto.

THE COURT: So the most efficient way forward, we

would like to propose that the motions be withdrawn and the parties engage in further negotiations with the assistance of Judge Orenstein on these issues of concern. That would be the best. Or if the parties did not want to do that, we would issue a decision and, as I said, in all likelihood, you know, I am strongly inclined to deny the applications of the two motions. So we wanted to touch base and see how you would like to proceed.

And would you please identify --

MS. CHRISTIENSEN: Hi --

THE COURT: -- yourself -- ma'am, please identify yourself before you speak. And that is true for all attorneys who are planning to speak, please. Thank you.

MS. CHRISTIENSEN: Hi. Your Honor, this is Jeanne Christensen of Wigdor, LLP.

Can you hear me okay?

THE COURT: Yes, we can hear you. Thank you.

MS. CHRISTIENSEN: Yes.

I was wondering the -- just to expedite this, would it make a difference if instead of a reversion that there was a not-for-profit of some sort that the unclaimed funds went to?

THE COURT: Well, what is the reason that those Plaintiffs who do assert a claim in this case cannot be fully compensated before anything like that were to happen?

Because the defendants have already identified an appropriate amount of settlement that it believes is indicative of the risk it is willing to bear to settle now rather than litigate, and we are still leaving the class members with really a fraction of what they may be entitled to? So before there is a reversion to anyone, it seems to me that it might be appropriate to distribute *pro rata* the amounts that are in the settlement fund to those Plaintiffs who asserted a claim. Does that make sense, or is there a reason why that cannot be done?

MS. KLEIN: Well -- Your Honor, this is Eve Klein on behalf of the Defendants.

There is a second round of distribution of it, if you will, of the settlement proceeds. Defendants must pay out at least 30 percent so there is a limitation on the reversion, but frankly, in settling the case, we took into consideration, you know, what statistically was likely to be collected, and we agreed to pay way more than we wanted to with the understanding that there was going to be a reversion. So, you know, from the Defendants' standpoint, we could do it without a reversion, but we would want the settlement numbers reduced.

THE COURT: So in other words, you would not be willing to continue to offer the $1.5 million if you do not get all of the reversion?

MS. KLEIN: Well, yeah, I mean, it's important that there be a reversion, and we're over that 30 percent mark at fallback on the minimum for the distribution, and my understanding is we're well above that. I haven't checked the numbers recently, but Plaintiffs' Counsel may have that information as to what it was going to cost Defendants. We took into account the likelihood that some of that money would come back and, therefore, increased our offer to a point that was well beyond what my client wanted to pay.

So if that was going to be, you know, what the Court was suggesting that there be no reversion and the numbers stay the same, I wouldn't have authority on this call to agree to that. I would have to ask my client, and based on the premise of which we negotiated the settlement, I think that would be problematic.

THE COURT: I mean, I think that as set forth in the settlement papers or the motion, the Defendants' exposure is far higher than the $1.5 million if the Plaintiffs were able to prevail. And although the Plaintiffs' counsel laid out potential risks of litigation, at least for a number of the plaintiffs I think that there are numbers that can be determined, and it did not -- the $1.5 million, albeit more than the defendant wants to pay, is indicative of any settlement. Every defendant who settles a case is paying more than it wants to. But it's

taking into account the risk and benefits of going -- the risks of going forward and the benefits of an early resolution and ability to have some certainty in the process. So I understand your point, but this is all the more reason why it might be fruitful to have the -- even the application can be denied or they can be withdrawn without prejudice, and you can engage in further discussions with your clients and then with each other.

MR. RAHMAN: Your Honor, this is Tanvir Rahman. A few points I want to make, and I understand Your Honor's position as well.

I was at the mediation with Ms. Klein. I have no confidence that we'll be able to get a penny more than what we've already agreed to negotiate, frankly. If we renegotiated, I understand there's a reversion provision, and obviously, as Ms. Klein mentioned, that was negotiated as a term of the settlement. We made every effort we could to ensure that as many class members sent back their forms as possible. We sent claim forms by mail, by e-mail. We re-mailed them if there was an old address. We sent them by e-mail where applicable. We hired a claims administrator who had a toll-free number. We tried whatever we could to have as many people as possible, as many class members as possible return their claim forms, and a substantial percent of them did, over 20 -- close to 25 percent, ultimately

claiming about half of the potential funds allocated to the class.

So again, to reiterate, you know, I -- I truly believe that this settlement if not approved, it would be a disservice to the class, and class members will ultimately receive a lot less than they would -- I mean, those who wanted to participate and have opted in and hoped to receive a portion of the settlement will receive a lot less than otherwise they would have receiving. And I believe those points are all I have for Your Honor.

THE REPORTER: I am not getting him.

THE COURT: I'm sorry. We did not hear that last comment.

THE REPORTER: Could you ask him to slow down, Judge?

THE COURT: Could you slow down.

MR. RAHMAN: Yes. That's all I had at this moment for Your Honor.

THE COURT: I mean, the point is in terms of assessing the Defendants' position, we are not asking the Defendant to put more money on the table. What I am suggesting is the parties consider distributing a greater amount to those class members who have claims in this case. It is not going to exceed $1.5 million, and there could be a *pro rata* additional distribution from the funds that have

been placed in the settlement funds to make more whole those parties.

Alternatively, and I think Counsel for Plaintiffs has made this point, that any amounts not approved in the fees would go to the authorized claimants on a *pro rata* basis. But it just seemed that what is being proposed in terms of the compensation to the authorized Plaintiffs is really questionably adequate.

JUDGE ORENSTEIN: This is Judge Orenstein.

MS. KLEIN: Your Honor -- I'm sorry.

JUDGE ORENSTEIN: I'm sorry.

MS. KLEIN: Your Honor, this is Eve Klein for the Defendants.

I want to be, you know, really transparent for the Court. I mean, we came with a calculated determination, and it was our understanding and in doing so determined there would be some money that would be reverted to the Defendants. So as a result of that, we increased our offer in order to be able to do the deal. Of course, the Plaintiffs were not willing to do the deal if there was a different number, but if they were, we could have done it without a reversion. But yes, we are on the hook for a million 5, you know, if all the plaintiffs accepted the settlement claim amounts, but from history, we knew that would not be the case. So that was part of the negotiations

that we had from the defendants' standpoint and our client, quite frankly, thinking it was going to happen, agreed to pay up to 1.5.

JUDGE ORENSTEIN: This is Judge Orenstein. I think that actually captures a lot of my concern about this proposal. You presented to the class in their notice and as Defendants are willing to pay a million and a half dollars to buy peace and extinguish all the plaintiffs' claims, and of that million and a half, a third -- up to a third will go to the plaintiffs' counsel. But that's not what any of the lawyers negotiating this deal and informing the class actually think.

What they think is the defendants will pay less, perhaps quite a bit less, to extinguish all of these claims and the attorneys will get quite a bit more than a third. And under those circumstances, I do not think that we are getting a real honest reflection of how the class might react if presented with a clearer understanding of what the deal entails. I think you want to negotiate a deal that says the defense will pay exactly X dollars, even if that is less, and the plaintiffs' counsel will get no more than X percent of that amount. Go ahead. In fact, I think that gives us a better basis on which to assess a proposed settlement.

MR. RAHMAN: Your Honor, we have not encountered

any confusion --

THE COURT: Who is speaking, please.

MR. RAHMAN: I'm sorry.

This is Tanvir Rahman.

THE COURT: Okay. Go ahead.

MR. RAHMAN: This is Tanvir Rahman for the plaintiffs.

THE COURT: All right. Thank you.

MR. RAHMAN: My point being, I'm not aware of any kind of confusion caused by the notice as Your Honor suggests. But, Your Honor, the Court approved the notice before it was disseminated. So I disagree that it is confusing in any way, and, you know, we haven't been told by anyone that it's confusing. I think, you know, the notice is clear if people wanted to receive part of the settlement, they had to send their claim forms back. You know, over a thousand people did so. We have many people in the class, the putative class, who worked at the company for a short period of time. We provided the exact numbers in our letter to the court that we submitted after the hearing. So, you know, many of the long-term employees submitted a claim form. That's why a large percentage of the funds that were allocated to the class were ultimately claimed on behalf of the class. So I don't know what could have been more. This is what we have in terms of what was negotiated, and we

tried as best as we could to get these notices out to people, the forms to get people to join, but you can't control what people want to do. But, you know, we did what we could. As to what Ms. Klein said, we're able to negotiate up to a $1.5 million settlement, obviously, you know, accounting for the possibility of, you know, unclaimed funds, or we could have otherwise gotten a much smaller amount or had to settle for a much smaller amount but with no reversion. For the people who are now -- who have joined the case, their claim amounts will likely be a lot more through this settlement than they would otherwise have.

THE COURT: Well, I think that we did approve the preliminary notice in terms of the issue that you say that now is a no reversion issue, that is not what we are saying.

And in terms of the fees, I think the plaintiff may misunderstand that they seem to believe that they have been approved for 33 percent when, in fact, that is not true. The language clearly says up to 33 percent or the $500,000. But that is a ceiling, not on approved amount.

The concern, you know, I think articulated by Judge Orenstein is that the class members given this number that the fund is not really the fund, is what is concerning. And at the time the notice went out, it could have been that the fund would be inadequate to compensate any of the class members, and the only concern I have is that what the class

members are expected to receive now that the notice has gone out and you have heard from those folks is far less than -- you know, it is far less and there will be more than sufficient funds in the settlement fund to compensate them at a greater percent.

So look, Counsel, if you do not want to withdraw this and renegotiate this, we respect it. We will issue our decisions accordingly. Okay? I mean, I do not want to force anyone's hand, but we thought it might be fruitful to just give you a heads-up as to what we were thinking, what our concerns were.

So let us know how you want to proceed and we will proceed accordingly.

MS. KLEIN: Your Honor, this is Eve Klein. If I could just clarify on the reversion issue. Are you saying no reversion or too much of a reversion? Just so when we go back, I'm clear on what the Court's position is on that.

THE COURT: I can speak for myself. I have not said no reversion. I think I am just parroting what Mr. Rahman said. He used the term "no reversion," and that is not what --

MS. KLEIN: Okay.

THE COURT: -- I was thinking.

I was just saying that whatever the defendant may have hoped for or currently believes will be coming back in

the form of reversion, should be re-evaluated because I would like to see the qualified, authorized class members compensated at a greater rate, those who have come in, so that they are not receiving really just a percentage, a small percentage of what they would otherwise be owed.

MS. KLEIN: Okay. Thank you, Your Honor.

THE COURT: How do you want to proceed, Counsel, because I do not want to keep belaboring this.

MR. RAHMAN: Well, Your Honor, if we can speak to our clients and that could take a number of days.

THE COURT: You want to go back to your clients?

MR. RAHMAN: Well, we have to, Your Honor. We have to ask them what they want to do.

THE COURT: No, that is fine.

But the question I have is, you know, we -- well, all we need to know is whether we need to issue a decision.

And also, Mr. Rahman, maybe you could explain why one of the plaintiffs, Mr. Graciano is being proposed to get an incentive award?

MR. RAHMAN: Yes. Mr. Graciano was -- he joined as an opt-in very early on. He was one of the main plaintiffs who participated in the litigation, and he was, you know, involved in the case from the beginning, so... And he provided us with important information. So that is why, based on his efforts which helped lead to a settlement,

and that's why we believe he deserves recognition through an incentive award.

THE COURT: All right. So do you want to just maybe speak to your clients and each other and decide and file a joint letter to Judge Orenstein and myself maybe a day or two from now to let us know how you intend to proceed? The proposals are, you know, we will issue a decision on the motion if the motion is not withdrawn and the parties choose not to renegotiate, not necessarily the funds, but the reversionary aspects and the fees.

MS. KLEIN: If could you just repeat that last part. I'm sorry. I couldn't hear.

THE COURT: The proposals are --

MS. KLEIN: Your Honor, you faded out.

THE COURT: The proposals --

MS. KLEIN: I'm having difficulty hearing. If you could just repeat the last thing you said.

THE COURT: What I was saying is that if you do not want to withdraw the motion, we would issue a decision, or your joint letter could inform us that you would like to renegotiate the reversionary clause of the settlement fund amount and the fees.

MS. KLEIN: Okay.

THE COURT: Or issue -- I mean, I do not know if it is -- I do not know whether the fee percentage was

something that the parties negotiated, but let me put it this way: The 33.3 percent that the plaintiffs seek, in my view, is excessive in light of the amount that is being proposed for class members. So I think maybe a couple of days for you to speak with your clients and with each other and jointly advise us how you want to proceed, maybe would be an appropriate way to proceed.

Does that make sense?

MS. KLEIN: Yes.

MR. RAHMAN: Yes, Your Honor.

THE COURT: Okay. So could we expect to hear from you by close of business on Wednesday, March 13th, please.

MS. KLEIN: That's a little bit short on time for me, Your Honor, based on I have to be on-site someplace tomorrow. So I'm not going to be able to speak to my client and speak to my adversaries so we ask that we could at least have until the end of this week, on Friday.

THE COURT: All right. Well, Friday it will be, then. Thank you. Friday close of business, please.

MS. KLEIN: Thank you.

MR. RAHMAN: And, Your Honor, is this hearing being taken down by a court reporter?

THE COURT: Yes. We will put his name in the minutes.

MR. RAHMAN: Okay.

MS. KLEIN: Your Honor, I would like to get a copy of the transcript. That would be helpful.

THE COURT: All right. Well, you can speak with him.

MS. KLEIN: Okay. What is the court reporter's name today?

THE COURT: All right. The court reporter's name is David Roy. He is just writing down his phone number for me. If you would like to order the transcript, it is (713) 619-2609.

MS. KLEIN: Okay. Thank you, Your Honor.

THE COURT: His name will be also in the minute entry that we enter today. All right. Thank you, Counsel, for being available on short notice.

JUDGE ORENSTEIN: Thank you.

(Matter concluded.)

(Telephone line disconnected.)

--ooOoo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy* — *11th Day of March, 2019*
*DAVID R. ROY* — *Date*