UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PRESTON CHARLES, et al.,                                     REPORT AND
                           Plaintiffs,           RECOMMENDATION
              - against -
OPINION ACCESS CORP., et al.,                                16-CV-6868 (KAM) (JO)
                           Defendants.
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiffs Preston Charles and Carlos E. Pabon, purporting to act on behalf of themselves and similarly situated co-workers, have accused defendant Opinion Access Corp. and its president, defendant Jimmy R. Hoffman, of failing to pay them required wages and related violations of their rights under federal and state law. *See* Docket Entry ("DE") 1 (Complaint). The parties now jointly ask the court to certify a settlement class, approve a proposed settlement, and approve an award of attorneys' fees. *See* DE 35; DE 37. Upon a referral from the Honorable Kiyo A. Matsumoto, United States District Judge, and for the reasons set forth below, I respectfully recommend that the court exercise its authority under the proposed settlement agreement to reduce the proposed award of fees and costs to $198,888.07 (consisting of $189,890.00 in fees and $9,109.07 in costs), with the remainder to be allocated to class members, and, with that change, grant the motions.

I.     <u>Background</u>

      On December 13, 2016, the two plaintiffs filed a putative collective and class action complaint accusing the defendants of failing to pay them and other employees the wages to which they were entitled under the FLSA and the pertinent wage laws of New York. *See* DE 1; 29 U.S.C. § 201 *et seq*. (the Fair Labor Standards Act or "FLSA"); N.Y. Labor Law §§ 191, 195, 650 *et seq*. ("NYLL"); 12 N.Y. Comp. Code R. & Regs. § 142-2.3 (New York Minimum Wage Order for Miscellaneous Industries and Occupations). They alleged that the defendants violated their rights under those laws to compensated training, overtime wages, call-in pay, and receipt of accurate wage

statements. *See id.* On January 5, 2018, the parties reported that they had agreed in principle to settle the case. *See* DE 22. On February 27, 2018, the parties moved for preliminary approval of a proposed class settlement, and I granted the motion on March 8, 2018. *See* DE 26; DE 30.

The parties then filed a motion seeking certification of a settlement class, final approval of the proposed settlement, and approval of attorneys' fees and costs. *See* DE 35 (motion for Settlement Approval); DE 36 (supporting memorandum) ("Settlement Memo."); DE 37 (motion for fees); DE 38 ("Fees Memo."); DE 39 (supporting declaration of plaintiffs' counsel) ("Rahman Decl."). I held a fairness hearing on August 21, 2018, at which three putative class members appeared; while all three had questions and one objected to the proposed attorneys' fees, none objected to the overall settlement proposal. *See* DE 44 (minute entry); DE 45 (transcript) ("Tr."); *see also* DE 34 (submission by putative class member Chrislyn Williams seeking to opt in and be heard at the hearing and expressing concern about the proposed attorneys' fees). Following the hearing, on August 31, 2018, the plaintiffs filed a supplemental letter with additional information and exhibits. *See* DE 47 ("Supplemental Letter"). The court referred the motion to me by order dated October 23, 2018.

At a conference on March 11, 2019, the court advised the parties that it anticipated denying the Motion for Settlement Approval, based on the reversion clause contained in the settlement agreement and additional factual information not available to the court or the putative class members at the time the court granted preliminary approval of the proposed settlement. The court further indicated that it anticipated denying the Motion for Fees, based on a finding that a fee award of approximately one-third of the settlement fund was excessive in this case. *See* Minute Entry dated March 11, 2019. On March 14, 2019, the parties asked the court hold the pending motions for final settlement approval and fees in abeyance while the parties attempted to renegotiate certain terms of

the settlement agreement. *See* DE 54. Judge Matsumoto terminated the pending motions without prejudice based upon the parties' request. *See* Order dated March 14, 2019.

The parties agreed to revised settlement terms at a conference on April 3, 2019. *See* DE 56. On July 3, 2019, they submitted a letter supplementing the previously terminated motions and detailing the differences between the original and revised settlement agreements and motions for attorneys' fees and expenses. *See* DE 58 ("Revised Memo."); DE 58-1 ("Revised Settlement"). In part, the Revised Settlement proposed to create an aggregate settlement fund of one million dollars, no portion of which would revert to the defendants. *See* Revised Settlement ¶¶ 1.20, 5.1.

The gross settlement amount is inclusive of all class counsel attorneys' fees and costs, settlement administration costs, payments to authorized claimants, and incentive awards. *See id.* ¶ 1.20. The Revised Settlement provides that the amount each authorized claimant will receive is to be calculated by summing up "points" that are assigned to each claimant and represent the number of days worked and the positions they held. *See id.* ¶ 5.2.B. After subtracting attorneys' fees and costs, claims administrator's costs, and incentive awards, the remainder of the gross settlement fund is to be divided among the authorized claimants according to the number of points each claimant has accrued. *See id.* The Revised Settlement further provides that any incentive awards and attorneys' fees and costs that are not approved are to be distributed pro rata among the authorized claimants. *See id.*

II. <u>Discussion</u>

    A. <u>Certification of the Settlement Class</u>

Plaintiffs seeking to certify a class under Rule 23 must plead and show numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). None of these requirements can be presumed, but rather each must be affirmatively demonstrated by the plaintiff. *See Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that Rule 23 does not set forth a mere pleading standard).

The putative settlement class has 5,509 members, of whom 1,202 have submitted authorized claims. *See* Settlement Memo. at 4; Supplemental Letter at 2. Those facts establish that the proposed settlement class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). All class members were the defendants' employees who claim that they did not receive the proper wages for hours worked, the 'call-in' pay to which they were entitled, or the required accurate wage statements. *See* Settlement Memo. at 8. There are, therefore, "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims of the named plaintiffs involve FLSA and NYLL claims that are similar to those made by the other class members and are thus "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As discussed below, it is a closer call as to whether the named plaintiffs "will fairly and adequately protect the interests of the class[,]" Fed. R. Civ. P. 23(a)(4), but I ultimately conclude that they will.

The typicality analysis of Rule 23(a)(3) overlaps with the adequacy analysis of Rule 23(a)(4), as both require the convergence of the representative's and the class members' interests. The adequacy element goes a step further, however, requiring that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). To demonstrate the absence of antagonistic interests, the class representative must show only that there is no affirmative conflict between the representative and the class, not that the interests of the representative and the class are identical. *See id.* Conflicts between the representative and the class that are "speculative and hypothetical" do not affect the adequacy inquiry. *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

While the proposed revised settlement raises some concerns about the adequacy of the class representative, ultimately these concerns are not sufficient to affect the adequacy analysis. My concerns center on the discrepancy between the plaintiffs' actual recovery and the defendants' maximum exposure. The plaintiffs contend that if they prevailed at trial, their maximum recovery on behalf of the proposed class would be seventeen million dollars. *See* Tr. at 24. Yet they proposed to settle the case for only one million dollars – less than six percent of the potential award. Such a compromise raises serious questions about the commitment of the class representatives to extract the best possible outcome for the absent class members. Nevertheless, there is no evidence of affirmative conflict between the representatives and the class, rendering the perceived conflict "speculative and hypothetical." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296. Moreover, while the overall maximum recovery the plaintiffs envision is higher, they also contend that the maximum amount they could recover in unpaid wages (excluding other forms of relief) is only two million dollars. *See* Settlement Memo. at 16-17. The million dollars the defendants have agreed to pay thus represents half of the class members' actual (as opposed to statutory) damages. Further, my earlier concerns about the adequacy of the class representatives are somewhat assuaged by their decision – made in response to the court's unwillingness to accept the original agreement, to be sure – to abandon the reversion clause they initially accepted. Jettisoning that provision will likely result in authorized claimants collecting a larger settlement than they would have obtained under the original agreement. I therefore conclude that the plaintiffs satisfy the adequacy requirement, and, as a result, all the prerequisites for class certification under Rule 23(a).

Finally, the plaintiffs must establish that the proposed class meets the requirements of Rule 23(b). "Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class." *Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, 2019 WL 5792315, at *8 (E.D.N.Y. Aug. 20, 2019) (citing *Amchem Prods., Inc. v. Windsor*, 521

5

U.S. 591, 623 (1997)). The plaintiffs have asserted – and the defendants have agreed (for settlement purposes only) that "core factual allegations and legal theories predominate over any factual or legal variations among Class Members." *See* Settlement Memo. at 18. The plaintiffs have alleged that the putative settlement class members were subject to the same pay policies and procedures. *See id.* at 1-2. This is sufficient to satisfy the predominance requirement of Rule 23(b)(3). *See Rasulev v. Good Agency, Inc.*, 2017 WL 11507653, at *5 (E.D.N.Y. Apr. 19, 2017). Because all of the putative settlement class members assert wage claims under federal and state law that are legally indistinguishable from the plaintiffs' claims in every respect except as to the amount of potential damages, I conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Accordingly, I respectfully recommend that the court certify the class.

      B.      <u>Approval of Class Action Settlement</u>

To determine whether a proposed settlement is fair and reasonable, courts consider its procedural and substantive fairness, asking whether the compromise is "fair, adequate, and reasonable" and "not a product of collusion." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) (internal citations omitted); *see also* Fed. R. Civ. P. 23(e). In assessing procedural fairness, courts look to the negotiating process leading to the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In assessing substantive fairness, courts consider whether the settlement's terms are fair, adequate and reasonable per the factors set out in *City of Detroit v. Grinnell Corp.* 495 F.2d 448 (2d Cir. 1974) *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). While the court need not undertake the same "detailed and thorough investigation that it would undertake if it were actually trying the case," it must

nevertheless "eschew any rubber stamp approval in favor of an independent evaluation." *Grinnell*, 495 F.2d at 462.

1.   Procedural Fairness

The original proposed settlement was negotiated by counsel after the exchange of relevant documents with the help of an experienced mediator. *See* Settlement Memo. at 2-3; *see also Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 at *2 (E.D.N.Y. Nov. 20, 2012) (citing *Clark v. Ecolab*, 2009 WL 6615729 at *4 (S.D.N.Y. Nov. 27, 2009) (noting the mediator's experience in class action employment matters)). The terms of the Revised Settlement were agreed upon at a settlement conference before me. *See* DE 56. Settlements reached as a result of arms-length negotiations with the assistance of a mediator or a judge enjoy a presumption of procedural fairness. *See id.*; *Yahraes v. Rest. Assocs. Events Corp.*, 2013 WL 139730, at *1 (E.D.N.Y. Jan. 10, 2013). I therefore conclude that the process leading to the proposed settlement and its subsequent revision was procedurally fair.

2.   Substantive Fairness

Courts use the *Grinnell* factors to assess the substantive fairness of a proposed class action settlement. The nine factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Grinnell*, 495 F.2d at 463; *see also Karic v. Major Auto. Companies, Inc.*, 2015 WL 9433847, at *7-8 (E.D.N.Y. Dec. 22, 2015). The proposed revised settlement creates an aggregate settlement fund of $1,000,000.00 to compensate class members for the claims and plaintiffs' counsel for their fees and costs, to provide incentive awards to three plaintiffs, and to cover the costs of administering the

fund. *See* Settlement Memo. at 3; Revised Memo at 1. The proposed incentive awards range from $15,000.00 for the two named plaintiffs to $5,000.00 for an early opt-in plaintiff. *See* Revised Settlement at ¶ 1.18. A review of the settlement's substantive terms in light of the *Grinnell* factors reveals that the settlement is substantively fair, reasonable, and adequate.

*Complexity, Expense, and Likely Duration of Litigation.* Though this case is not particularly complex, there are thousands of putative class members with claims that span seven years. *See* Settlement Memo. at 14. Further litigation would incur additional expenses, including depositions of opt-in plaintiffs and others, motion practice, trial preparation, and trial and appeal, that could significantly reduce the plaintiffs' recovery. *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299 (E.D.N.Y. 2015); *see also Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (finding that in FLSA and NYLL actions, "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"). As such, this factor counsels in favor of approval of settlement.

*The Reaction of the Class to the Settlement.* The fact that most class members have neither objected to nor opted out of the settlement weighs in favor of approval. *See Wal-Mart Stores, Inc. v*, 396 F.3d at 118 ("[T]he absence of substantial opposition is indicative of class approval."). The reaction of the class to the settlement was positive, with only five of the 5,509 putative class members objecting or opting out. *See* Settlement Memo. at 4. Two objectors raised concerns at the fairness hearing. Chrislyn Williams objected only to the amount of the attorneys' fees and indicated that she wished to have the settlement approved with a reduced fee award. *See* Tr. at 19. Elsie Estefania, who chose to remain a member of the settlement class, submitted a letter objecting that the settlement should be higher because the defendants engaged in racial discrimination. *See* DE 48 (Estefania Letter); Settlement Memo. at 15 n.1. This objection is at least partially mooted by the fact that the plaintiffs will not be releasing any non-wage and hour claims as part of the settlement. *See*

8

Settlement Memo. at 15 n.1. That the overwhelming majority of class members neither objected to nor opted out of the settlement is a "strong indication that the proposed settlement is fair, reasonable and adequate." *Flores*, 104 F. Supp. 3d at 302.

*Stage of Proceedings and Discovery Completed*. The third *Grinnell* factor requires that parties have sufficiently investigated the facts to allow all counsel to assess the merits of the case and the court to make an intelligent appraisal of the settlement. *See Hall v. ProSource Tech., LLC*, 2016 WL 1555128, at *6 (E.D.N.Y. Apr. 11, 2016) (citing *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014)). The parties exchanged information including: relevant employment policies, handbooks, internal memoranda, and training manuals; plaintiffs' payroll and time records; a statistically significant sampling of payroll and time records for putative class members; lists of new interviewer hires and trainees for the relevant statutory period; documents sufficient to identify the number of interviewers who worked on each day of the relevant statutory period, and the New York State Department of Labor's file in connection with two prior actions against the plaintiffs for unpaid wages, both of which settled. *See* Settlement Memo. at 2. The third factor thus favors approval.

*Risks of Establishing Liability and Damages*. The fourth and fifth *Grinnell* factors concern the risks of establishing liability and damages and require the court to "balance the benefits of a certain and immediate recovery against the inherent risk of litigation." *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *4 (E.D.N.Y. Aug. 7, 1998). To prove liability, the plaintiffs would need to overcome the defendants' arguments, among others, that the interviewer training program qualified as a non-compensable educational or vocational training program, that the call-in pay provision did not violate NYLL because it was a bona fide policy outlined in the employee handbook, and that the plaintiffs would be forbidden from double-dipping by collecting both penalties resulting from inaccurate wage statements and damages tied to the inaccurate statements. *See* Settlement Memo. at

9

18-19. Establishing liability under the FLSA and NYLL is fact-intensive and the defendants have colorable defenses, thus posing at least arguable risks to the plaintiffs in establishing liability and damages. *See Massiah*, 2010 WL 5874655, at *4. While the risk factor may not weigh heavily in favor of approval, I cannot conclude that it weighs against it.

*Risks of Maintaining a Class Action Through Trial.* The sixth *Grinnell* factor considers the risks of maintaining the class through the trial. The plaintiffs contend that the defendants would contest a claim for class certification, arguing that differences in the types of claims made by class members preclude certification. *See* Settlement Memo. at 19. I cannot agree that these claimed risks – which the parties ignore in explaining why the court should approve a settlement class – favor approval; however, they do not outweigh the other factors that do.

*Ability to Withstand a Greater Judgment.* Though the defendants' ability to withstand a greater judgment is a *Grinnell* factor, standing alone, the ability to do so does not indicate that a settlement is unfair. *See Hall*, 2016 WL 1555128, at *8 (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). The plaintiffs raise concerns about the defendants' ability to withstand a greater judgment, noting that the defendants no longer operate in New York State. *See* Settlement Memo. at 20. "Courts have recognized that a Defendant's ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving settlement," *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11. I conclude that this factor favors approval, albeit only slightly.

*Range of Reasonableness of the Settlement.* Courts do not ask whether the settlement reached is the highest possible recovery, but rather whether the settlement is reasonable in light of the risks of litigation. *See Bodon v. Domino's Pizza, L.L.C.*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citing *Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d, 369, 384 (S.D.N.Y. 2013)). The proposed settlement amount here is only six percent of the plaintiffs' anticipated maximum recovery. Standing alone, that

10

fact does not require the court to reject the settlement. *See Grinnell,* 495 F.2d at 455 & n.2. But it does weigh in the balance. In the absence of a satisfactory explanation,[1] the limited extent of relief the settlement provides disfavors approval. And while all litigation entails some risk, the plaintiffs have not adequately explained why the risks attendant to this litigation justify binding all class members to a recovery representing six percent of what they might achieve at trial.[2] This factor thus counsels against approval of the settlement.

No single *Grinnell* factor is dispositive. While I conclude that some factors weigh against approval, most of them weigh, to varying degrees, in favor of it. Taking all of the factors into consideration, I respectfully recommend that the court find that the proposed settlement is substantively fair.

C.  Incentive Awards

The plaintiffs request incentive awards of $15,000.00 for each of the two named plaintiffs, and an additional $5,000.00 incentive award for opt-in plaintiff Freddy Graciano. *See* Settlement Memo. at 4. Incentive awards are commonly given to plaintiffs in class actions in recognition of the time and effort they expend and the risks they incur in bringing the action. *See Massiah*, 2012 WL 5874655 at *8. The amounts requested for the incentive awards are reasonable. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of

---

[1] For example, a court might overlook the relatively small amount of monetary relief where that " is but one form of the relief requested by the plaintiffs." *Officers for Justice v. Civil Service Comm'n and Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

[2] I acknowledge that class members may receive slightly more than six percent of the maximum potential recovery because the Revised Settlement provides for the pro rata distribution to authorized claimants of any proposed incentive awards or attorneys' fees that the court rejects. *See* Revised Settlement ¶ 5.2B. That fact, along with other provisions in the agreement that could result in adjustments to authorized claimants' actual recovery, does not materially affect my analysis.

$30,000.00, $15,000.00, and $7,500.00 in a wage and hour action). I therefore recommend approving the incentive awards.

        D.        Approval of FLSA Collective Settlement

FLSA claims prosecuted as a collective action do not implicate the same due process concerns as Rule 23 class actions because plaintiffs who do not opt in to the collective are not prevented from bringing their own suits. Accordingly, the standard for approving the settlement of a collective action under the FLSA is less exacting than that for approving a class action under Rule 23. *See Flores*, 104 F. Supp. 3d, at 304 (citing *Viafara v. MCIZ Corp., et al.*, 2014 WL 1777438, at *7 (E.D.N.Y. May 1, 2014)). Courts must nevertheless examine an FLSA settlement for fairness, considering "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Tillman v. Luray's Travel*, 2015 WL 7313867, at *1 (E.D.N.Y. Nov. 20, 2015) (internal citations omitted); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). For the reasons set forth above, I conclude that the proposed revised settlement is the result of extensive, arms-length negotiations that took place after the parties exchanged information, and that it reasonably resolves a bona fide dispute. I therefore respectfully recommend that the court approve the settlement of the plaintiffs' FLSA collective claims.

        E.        Attorneys' Fees

The parties propose to allocate $300,000.00 of the settlement fund to compensate the plaintiffs' counsel. *See* Revised Memo. at 2. This requested award is high given that the parties began mediation early and initially came to a settlement agreement with minimal motion practice. What delays there were, moreover, were attributable to delays caused by the parties in their exchange of information and an original settlement proposal that the court rejected because it unfairly favored

counsel and the defendants at the absent class members' expense. *See* DE 19; Minute Entry dated March 11, 2019.

The plaintiffs appear to justify such high fees in part because they could have asked for even more by seeking a fee award equal to one third of the settlement amount. *See* Revised Memo. at 2. The plaintiffs' counsel has previously contended that the percentage method is the preferred method in this circuit for awarding fees in common fund cases. *See* Fees Memo. at 2-3. Yet the Second Circuit "expressly rejected an argument 'to adopt the percentage method as the presumptive approach to fee awards or to abandon the lodestar approach altogether.'" *Flores*, 104 F. Supp. 3d at 307 (quoting *McDaniel v. County of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)). Moreover, "the purported 'trend' among district courts within the Circuit to award a flat 33 1/3% percentage fee in employment common fund class action cases … appears to be driven by plaintiffs' counsel seeking high payouts at the expense of silent class members, and ignores important precedential rulings." *Id.* Courts have the discretion to choose either the lodestar or percentage approach, and if choosing a lodestar, whether a multiplier should be applied to the lodestar. *See id.* at 308. In making this choice, courts are to consider the *Goldberger* factors: counsel's time and labor, the litigation's magnitude and complexity, the risk of continued litigation, the quality of representation, the requested fee in relation to the settlement, and public policy concerns. *See Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43, 50 (2d Cir. 2000).

The *Goldberger* factors here counsel in favor of the lodestar method. While no case is without risk, this FLSA case was relatively straightforward, as evidenced by the parties' ability to reach an initial settlement agreement early in discovery and with limited motion practice. The plaintiffs have neither identified any specific risks unique to this litigation, nor provided any reason to conclude

13

that their counsel provided representation that was in any way out of the ordinary.[3] Moreover, the requested fee is quite high in relation to the fractional actual recovery, even after the revisions to the original settlement. I therefore recommend that the court adopt the lodestar method for awarding attorney's fees.

The plaintiffs' counsel's contemporaneous billing records reflect 409.9 hours of work, resulting in hourly fees totaling $110,300.00. *See* DE 47-2 (Billing Records); Fees Memo. at 10. The plaintiffs seek to compensate their counsel at the following hourly rates: $450.00 for partner Douglas H. Wigdor, $325.00 for senior associate Tanvir Rahman, $200.00 each for associates Taylor Crabill and Tony P. Guan, and $125.00 for paralegal assistants Amanda Shi, Kathryn A. Robinson, and Natalie C. Kirchhoff. *See* Billing Records at 30. These billing rates either exceed or fall on the top end of those typically awarded in this district. *See, e.g. Alvarez v. Sterling Portfolio Inv., LP*, 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017) (collecting cases demonstrating that the prevailing hourly rates are $300-$400 for partners, $200-$325 for senior associates, $100-$150 for junior associates, and $70-$100 for non-attorney professionals); *Mauricio Ramirez v. Roka Japanese Food, Inc.*, 2019 WL 2372866 at *9 (E.D.N.Y. June 5, 2019) (finding that "[p]aralegals and preadmission associates typically receive an hourly rate of $75 in this District in wage and hour cases") (citation omitted). I respectfully recommend adjusting the requested rates as follows: $400.00 for Douglas H. Wigdor, $300.00 for Tanvir Rahman, $150.00 each for Taylor Crabill and Tony P. Guan, and $75.00 for each of the three paralegal assistants. Adjusting the billing to reflect these rates yields a revised lodestar of $94,945.00.

---

[3] I intend no denigration of counsel's qualification, efforts, or work product. I merely observe that the plaintiffs have not established that their counsel did anything that would justify a higher fee award than would otherwise be appropriate.

The request for a $300,000.00 fee award would therefore reflect a multiplier of approximately 3.16. That is too high. "Post-*Goldberger* courts have generally refused multipliers as high as 2.03." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2002) (cleaned up); *see also Moses v. Apple Hospitality REIT, Inc.*, 2018 WL 1513631, at *9 (E.D.N.Y. Mar. 27, 2018) (rejecting requested multiplier of 2.13, which would be even higher applying appropriate billing rates, in favor of a fee representing 25 percent of the class action settlement fund). Doubling the lodestar would yield fees of $189,890.00. I respectfully recommend awarding fees in that amount,[4] with the remainder of the requested fees to be allocated to class members pro rata.[5]

F. <u>Costs</u>

The parties propose to allocate $9,601.84 of the settlement fund to reimburse the plaintiffs' counsel for their litigation costs. *See* DE 39-9 (Expense Invoice). I recommend approving most of those costs. However, I conclude that the court should not approve the claimed costs of meals and taxi service. The $377.79 allocated for meal expenses include meals claimed on days when the relevant professional did not bill for performing any work on this case. The $114.98 allocated for

---

[4] I acknowledge that in *Dominguez v. Architectural Sign Group*, 2019 WL 5257894, at *3. (E.D.N.Y. Oct. 17, 2019), this court rejected any multiplier at all in reviewing a routine FLSA claim settlement. I nevertheless respectfully recommend approving a two-fold multiplier here in light of the fact that the plaintiff's counsel achieved recovery not only for their clients, but also for all members of the putative class.

[5] Normally, the court would lack the authority to impose a fee reduction on settling parties unilaterally. While the court could condition its approval of a settlement on the parties' acceptance of a proposed reduction, it could not simply reform the parties' agreement without their consent. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d Cir. 2020). However, the parties have already agreed to reallocate to the members of the proposed settlement class the amount of any reduction in the proposed fee award. *See* Revised Settlement ¶ 5.2.B. As a result, if the court accepts the foregoing recommendations, it is already empowered to order the fee reduction as part of its settlement approval rather than merely conditioning its approval on the parties' accession to the reduction.

15

taxi service suffers from a similar defect.[6] I therefore conclude that the meal and taxi bills the plaintiffs' counsel have submitted are not a reliable measure of costs reasonably incurred on the plaintiffs' behalf. The remaining $9,109.07 charged for copying, filing, service, research expenses, and the mediator's fee all appear to have been reasonably incurred. I therefore recommend that the court approve an allocation of $9,109.07 of the settlement fund as reimbursement of the plaintiffs' litigation costs.[7]

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court exercise its authority under the proposed settlement agreement to reduce the proposed award of fees and costs to $198,888.07 (consisting of $189,890.00 in fees and $9,109.07 in costs), with the remainder to be allocated to class members, and, with that change, grant the motions.

IV.    Objections

Any objections to this Report and Recommendation are due by March 27, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to

---

[6] For example, the claimed costs include a paralegal assistant's meal on January 20, 2017, when no one at the plaintiffs' counsel's firm billed any work. Likewise, another paralegal assistant billed for meals on February 20 and 26, 2018 even though she did not bill for any work on this case on either of those days. Similarly, an attorney claimed reimbursement for taxi service on January 21, 2018, despite billing for no work that day, and a paralegal assistant did likewise on February 26, 2018. *See id.* at 2; Billing Records at 6, 20, 21; Expense Invoice at 3, 6, 21.

[7] As with the recommended reduction of attorneys' fees, the parties have already provided the court with authority to reduce the proposed award of costs and allocate the remainder to class members on a pro rata basis. *See* Revised Settlement ¶ 5.2B.

appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C*, 596 F.3d 84, 92 (2d Cir. 2010).

      SO ORDERED.

Dated: Brooklyn, New York
       March 13, 2020

                                                          /s/
                                              James Orenstein
                                              U.S. Magistrate Judge